UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA           :

   - v. -                            :

                                                                      23 Cr. 10 (AS)

AVRAHAM EISENBERG,                 :

   Defendant.                      :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


## OPPOSITION OF THE UNITED STATES OF AMERICA TO THE MOTIONS *IN LIMINE* OF AVRAHAM EISENBERG

 

DAMIAN WILLIAMS
United States Attorney
Southern District of New York
One St. Andrews Plaza
New York, New York 10007

Thomas Burnett
Peter J. Davis
Assistant United States Attorneys

Tian Huang
Special Assistant United States Attorney
- Of Counsel -

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT ...................................................................................................................................1

I. THE COURT SHOULD DENY THE DEFENDANT'S MOTION TO PRECLUDE THE GOVERNMENT'S USE OF ACCURATE STATEMENTS IN ITS JURY ADDRESSES..1

II. THE GOVERNMENT WILL NOT INTRODUCE NEEDLESSLY CUMULATIVE EVIDENCE ........................................................................................................................5

CONCLUSION...............................................................................................................................7

**PRELIMINARY STATEMENT**

The Government will prove that the defendant stole over $110 million worth of cryptocurrency from the Mango Markets platform. He kept $40 million worth of his illegal proceeds for himself and left the Mango DAO to pay its customers $40 million to make them whole. The defendant's victims included, at minimum, the Mango Markets customers who had their cryptocurrency stolen, and the Mango DAO, which paid $40 million of its own funds. Defendant's motion *in limine*, Dkt. No. 76, attempts to impose an artificial and legally incorrect limitation on the language that the Government may use to describe the defendant's victims. This motion should be denied. Defendant also foreshadows a future objection to the Government's experts to the extent they offer "duplicative" testimony. The Government's experts, however, will offer different opinions on different issues from different perspectives and will not offer needlessly duplicative testimony. Accordingly, this motion will fail as well.

**ARGUMENT**

**I.   THE COURT SHOULD DENY THE DEFENDANT'S MOTION TO PRECLUDE THE GOVERNMENT'S USE OF ACCURATE STATEMENTS IN ITS JURY ADDRESSES**

The defendant fraudulently stole over $110 million worth of cryptocurrency off of the Mango Markets platform. He did so through a cascade of lies and deceit. (*See, e.g.*, Dkt. 77 at 2-7.) And he did so at the expense of Mango Markets customers and the Mango DAO. Nonetheless, the defendant moves to preclude the Government from using the term "victim" in its jury addresses without "specifying who the alleged victims are in this case." (Def. Mot. at 1.) The Court should not impose this artificial and unnecessary limitation.

As background, the defendant purported to "borrow" approximately $110 million worth of different cryptocurrencies from other depositors on Mango Markets, which was effectively all of

the funds on the platform. But the defendant did not "borrow" this cryptocurrency—he stole it and drained the funds that were deposited by other Mango Markets customers. Then, the defendant negotiated a deal with representatives of the Mango DAO so that he could—in his words—"[g]et[] rid of sympathetic victims." But the defendant agreed to return only a portion of what he stole—keeping approximately $40 million in stolen cryptocurrency for himself and returning approximately $67 million. The Mango DAO provided over $40 million worth of cryptocurrency to cover the losses to Mango Markets customers. The Mango DAO has never been reimbursed for those losses and some Mango Markets customers still have not been made whole. The victims of the defendant's crimes therefore included, at minimum, Mango Markets customers (including those who were reimbursed) and the Mango DAO.

      Defendant's motion is legally incorrect and factually unnecessary. To start, courts recognize that the Government must be permitted to describe the crime and communicate its theory of the case to the jury: "[T]here is no basis to preclude the Government from using words that are central to the case." *United States v. Ahmed*, 94 F. Supp. 3d 394, 435–36 (E.D.N.Y. 2015). Far from irrelevant, words that are used to describe offense conduct, like "victims," are part of narrating the crime to the jury. Indeed, the defendant's own text messages described the users of Mango Markets as "sympathetic victims," presumably because in his mind the Mango DAO was an *unsympathetic* victim. Given that the defendant used the term "victims" in text messages, the Government should be allowed to do so before the jury.

      Although the defendant argues that the term "victims" would "substantially mislead and confuse the jury about the requirements of the specific intent element for each of the charged crimes," Def. Mot. at 2, he ignores that this Court will instruct the jury on the Government's burden at trial. Indeed, courts have repeatedly acknowledged that the Government's use of a term is not

2

unfairly prejudicial when the jury is instructed about the Government's burden of proof. *See, e.g.*, *United States v. Edwards*, No. CR 16-103-BLG-SPW-1, 2017 WL 4159365, at *1 (D. Mont. Sept. 19, 2017) (explaining that "use of the term 'victim' is not prejudicial to the defendant's rights when the presentation of evidence taken as a whole clarifies the government's burden of proving all of the elements of the crime" and finding that the "jury will not be unduly prejudiced against [the defendant] if the government refers to certain witnesses as victims" (citing *United States v. Washburn*, 444 F.3d 1007, 1013 (8th Cir. 2006) ("[A] number of courts have determined that the use of the term 'victim' in jury instructions is not prejudicial to a defendant's rights when, as is the case here, the instructions taken as a whole clarify the government's burden of proving all elements of the crime"))); *Server v. Mizell*, 902 F.2d 611, 615 (7th Cir. 1990) ("No logical argument can be made that the mere use of the term 'victim' [in jury instructions] somehow shifted the burden of proof."). Moreover, "[t]he term 'victim' is not inherently prejudicial. It is a term commonly used in the English language that does not by its nature connote guilt." *United States v. Lussier*, No. 18-CR-281 (NEB), 2019 WL 2489906, at *5 (D. Minn. June 15, 2019). To the extent that the defendant disagrees with the Government's use of the term "victim" at trial, he may point that out to the jury. Accordingly, there is no risk of jury confusion.

Of course, the Government does not anticipate indiscriminately using the term "victim" in its jury addresses without context or explanation. Lack of clarity does not benefit the Government, given the burden of proof, and the Government expects that it will inform the jury that Mango Markets customers (including those whose money was eventually returned), and the Mango DAO, were victims of the defendant's crime. But the Court should not, in the abstract and prior to any presentation to the jury, cabin the precise way that the Government uses the term "victim" before

3

the jury: to the extent the Government does it imprecisely, defense will be more than able to point that out in its summation.

Most concerningly, the defense's effort to police the Government's use of the term "victim" appears to rely on a legally incorrect understanding of the term. The defense claims that, "[g]iven the requirement that the government prove a deception, it naturally follows that the government must explain to the jury who was deceived." Def. Mot. at 3. This view—that the "victim" must be the person or entity that was deceived—is one that the Second Circuit has rejected. The Circuit has made clear that wire fraud does not require that the defendant make misrepresentations directly to any victim: "[W]ire fraud does not require convergence between the parties intended to be deceived and those whose property is sought in a fraudulent scheme." *United States v. Greenberg*, 835 F.3d 295, 306-07 (2d Cir. 2016). Accordingly, the Court should not impose a technical and artificial restriction on the Government's use of the word "victim" that does not align with controlling law in this Circuit.

In the same way, Mango Markets customers are victims of the defendant's crimes even though the defendant returned some of the stolen funds. This is because the Second Circuit has held that "the Government need not prove 'that the victims of the fraud were *actually* injured,' but only 'that defendants *contemplated* some actual harm or injury to their victims.'" *Greenberg*, 835 F.3d at 305-306 (quoting *United States v. Novak*, 443 F.3d 150, 156 (2d Cir. 2006)). Courts have recognized that a defendant's repayment of victims does not impact this analysis: "The offense occurred and was complete when the misapplication took place. What might have later happened as to repayment is not material and could not be a defense." *United States v. Sindona*, 636 F.2d 792, 800-801 (2d Cir. 1980 (quoting *United States v. Acree*, 466 F.2d 1114, 1118 (10th Cir. 1972)); s*ee, e.g.*, *United States v. Bankman-Fried*, No. 22-cr-673 (LAK), 2023 WL 4194773, at *9

4

(S.D.N.Y. June 27, 2023) ("[I]t is immaterial as a matter of law whether the defendant intended to repay the misappropriated funds because the offense is 'complete' where, as alleged here, there is an 'immediate intent to misapply and defraud.'"). Accordingly, Mango Markets customers, even those who received their money back, are victims of the defendant's crime.

In short, the defendant's motion is an attempt to sanitize the evidence by preventing the Government from describing it. Courts routinely reject such an artificial and unnecessary restriction, and it should not be imposed here.

## II. THE GOVERNMENT WILL NOT INTRODUCE NEEDLESSLY CUMULATIVE EVIDENCE

The defendant next preserves his right to object to certain of the Government's expert testimony as unnecessarily duplicative at trial. (Def. Mot. at 5.) The Government does not intend to offer unnecessarily duplicative expert testimony. Instead, the Government noticed two experts that will offer different opinions on different issues. (*See* Exhibit A (Expert Notices).)

One expert, a former fund manager who modeled, traded, and risk managed a $20 billion notional portfolio, will offer opinions about, among other things, the economic features of USD Coin ("USDC"), the financial products, trading tools, borrowing and lending functions, and investing options on Mango Markets, and the existence of futures contracts and other derivatives based on USDC. The second expert, co-founder of Risk Economics and an Adjunct Professor of Econometrics and Statistics at the University Chicago Booth School of Business, will offer opinions about, among other things, the size, structure and economics of the defendant's long and short perpetual positions, the economic implications of those positions, the historical trading patterns and prices and corresponding observed volume of orders for MNGO-USDC perpetuals on

Mango Markets, and the value of MNGO to USDC, the defendant's trading, the defendant's borrowing, and the defendant's liquidation of one of the defendant's Mango Markets accounts.

Accordingly, these experts will not offer "identical conclusions on identical issues," as the defendant suggests. *United Sates v. Walker*, 910 F. Supp. 861 (N.D.N.Y. 1995). To be sure, the experts will provide background testimony necessary to allow the jury to understand their opinions. And this background information may overlap as each expert sets the stage for their opinions. But, far from needless, that is to be expected, and it is necessary to allow the jury to understand the experts' opinions and to weigh the experts' credibility. *See, e.g.*, *Rodriguez v. Cnty. of Stanislaus*, No. 1:08-CV-00856 OWW, 2010 WL 2720940, at *2 (E.D. Cal. July 8, 2010) ("The reports vary in conclusions, and while some overlap is certainly present, overlap is an insufficient basis upon which to impose the extraordinary remedy Defendants seek."). Moreover, courts have recognized that "[t]estimony on the same topic by different experts, however, is not needlessly cumulative where the experts will testify from different professional perspectives." *Royal Bahamian Ass'n, Inc. v. QBE Ins. Corp.*, No. 10-21511, 2010 WL 4225947, at *2 (S.D. Fl. Oct. 21, 2010). Here, the two experts will provide different opinions on distinct issues from distinct perspectives—there will not be needlessly cumulative evidence. *See* Fed. R. Evid. 403. In any event, nothing prevents the defense from making a contemporaneous objection to the offer of particular testimony or evidence that may be excludable under the Rules of Evidence.

## CONCLUSION

For the reasons set forth above, the Government respectfully requests that the Court deny the defendant's motions *in limine*.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney
Southern District of New York

Dated: New York, New York
      January 18, 2024

By:   /s/
Thomas Burnett
Peter J. Davis
Assistant United States Attorneys

Tian Huang
Special Assistant United States Attorney