UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

                Plaintiff,

       -against-

AVRAHAM EISENBERG,

                Defendant.

Case No.: 23 Cr. 10 (AS)

---

## DEFENDANT AVRAHAM EISENBERG'S OPPOSITION TO THE GOVERNMENT'S MOTIONS *IN LIMINE*

Brian E. Klein
Ashley E. Martabano
Riley P. Smith
Waymaker LLP
515 S. Flower Street, Suite 3500
Los Angeles, California 90071
(424) 652-7800

Sanford N. Talkin
Noam B. Greenspan
Talkin, Muccigrosso & Roberts, LLP
40 Exchange Place, 18th Floor
New York, New York 10005
(212) 482-0007

*Attorneys for Avraham Eisenberg*

## TABLE OF CONTENTS

I. PRELIMINARY STATEMENT ................................................................................. 1

II. THE GOVERNMENT'S UNSUBSTANTIATED AND UNPROVEN "BACKGROUND" SECTION ................................................................................................................... 2

III. LEGAL STANDARD ............................................................................................... 4

IV. ARGUMENT ............................................................................................................ 5

   A. Motion *In Limine* No. 1: The Court Should Deny the Government's Request to Exclude Evidence and Argument that Cryptocurrency is Unregulated or that the Charges Against the Defendant are Novel ................................................................................................ 5

   B. Motion *In Limine* No. 2: The Court Should Reject the Government's Request to Exclude Evidence and Arguments that Mango Markets was not Regulated in the United States ..... 8

   C. Motion *In Limine* No. 3: The Court Should Deny the Government's Effort to Exclude "Code is Law" Arguments ...................................................................................................... 9

      1. The Government's Irrelevant Technological Feasibility Discussion........................ 10

      2. Evidence Regarding the Mango Markets Code and Terms of Service is Plainly Relevant and Admissible ............................................................................................ 10

   D. Motion *In Limine* No. 4: The Court Should Reject the Government's Request to Preclude Evidence about Mango Markets' Terms of Service Implemented After the Defendant's Alleged Trading .............................................................................................................. 14

   E. Motion *In Limine* No. 5: The Court Should Deny the Government's Request to Preclude Argument that the Defendant's Partial Repayment is a Defense to the Charged Crimes.. 17

   F. Motion *In Limine* No. 6: Motion to Preclude the Defendant From Introducing Allegedly Self-Serving Exculpatory Statements Should be Denied.................................................. 20

V. CONCLUSION ....................................................................................................... 24

i

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Baxter Diagnostics, Inc. v. Novatek Med., Inc.*,
    No. 94 Civ. 5220 (AJP),
    1998 WL 665138 (S.D.N.Y. Sep. 25, 1998) .........................................................................4, 5

*Diehl v. Blaw-Knox*,
    360 F.3d 426 (3d. Cir. 2004) ..................................................................................................16

*Dixon v. Int'l Harvester Co.*,
    754 F.2d 573 (5th Cir. 1985) ..................................................................................................16

*In re Foreign Exch. Benchmark Rates Antitrust Litig.*,
    No. 13 CV 7789 (LGS),
    2022 WL 4087842 (S.D.N.Y. Sep. 6, 2022) ...........................................................................17

*Lolie v. Ohio Brass Co.*,
    502 F.2d 741 (7th Cir. 1974) ..................................................................................................16

*Luce v. United States*,
    469 U.S. 38 (1984) ....................................................................................................................4

*Mehojah v. Drummond*,
    56 F.3d 1213 (10th Cir. 1995) ................................................................................................16

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. L.E. Myers Co. Grp.*,
    937 F. Supp. 276 (S.D.N.Y. 1996) .......................................................................................4, 5

*O'Dell v. Hercules, Inc.*,
    904 F.2d 1194 (8th Cir. 1990) ................................................................................................16

*Pau v. Yosemite Park and Curry Co.*,
    928 F.2d 880 (9th Cir. 1991) ..................................................................................................16

*Perry v. City of New York*,
    552 F. Supp. 3d 433 (S.D.N.Y. 2021) ......................................................................................4

*R.M. Perlman, Inc. v. New York Coat, Suit, Dresses, Rainwear & Allied Workers' Union Local
    89-22-1, I.L.G.W.U., AFL-CIO*,
    33 F.3d 145 (2d Cir. 1994) ......................................................................................................17

*Raymond v. Raymond Corp.*,
    938 F.2d 1518 (1st Cir. 1991) ................................................................................................16

*SEC v. Geon Indus., Inc.*,
   531 F.2d 39 (2d Cir. 1976)................................................................................... 17

*Singh v. Knuckles, Komosinski & Manfro, LLP*,
   18 CV 3213 (NSR),
   2022 WL 862251 (S.D.N.Y. March 23, 2022) ..................................................... 13

*TLT-Babcock, Inc. v. Emerson Elec. Co.*,
   33 F.3d 397 (4th Cir. 1994) ................................................................................. 16

*United States v. Afriyie*,
   929 F.3d 63 (2d Cir. 2019).................................................................................... 9

*United States v. Borrero*,
   No. 13 Cr. 58 (KBF),
   2013 WL 6020773 (S.D.N.Y. Nov. 1, 2013) ........................................................ 7

*United States v. Castro*,
   813 F.2d 571 (2d Cir. 1987).................................................................................. 21

*United States v. Cline*,
   188 F. Supp. 2d 1287 (D. Kan. 2002) .................................................................. 16

*United States v. Figueroa*,
   23 Cr. 161 (MAD),
   2023 WL 8258735 (S.D.N.Y. Nov. 29, 2023) ...................................................... 4

United States v. Henry,
   888 F.3d 58 (2d Cir. 2018).................................................................................... 6

*United States v. Htut*,
   No. 22 Cr. 671 (NSR),
   2023 WL 4399049 (S.D.N.Y. July 7, 2023) ..................................................... 5, 23

United States v. Kosinski,
   976 F.3d 135 (2d Cir. 2020).................................................................................. 6

United States v. Kukushkin,
   61 F.4th 327 (2d Cir. 2023) .................................................................................. 6

*United States v. Lange*,
   834 F.3d 58 (2d Cir. 2016).............................................................................. 22, 23

*United States v. Ozsusamlar*,
   428 F. Supp. 2d 161 (S.D.N.Y. 2017).................................................................. 4

*United States v. Paredes*,
   176 F. Supp. 2d 179 (S.D.N.Y. 2001)....................................................................... 4, 8, 12

*United States v. Phillips*,
   22 Cr. 138 (LJL) (S.D.N.Y.) ................................................................................. 3, 7

*United States v. Ray*,
   20 Cr. 110 (LJL),
   2022 WL 558146 (S.D.N.Y. Feb. 24, 2022).......................................................... 20

*United States v. Sidona*,
   636 F.2d 79 (2d Cir. 1980)..................................................................................... 19

*United States v. Stewart*,
   No. 03 Cr. 717 (MGC),
   2004 WL 113506 (S.D.N.Y. Jan. 26. 2004) ............................................................ 7

*United States v. Ulbricht*,
   79 F. Supp. 3d 466 (S.D.N.Y. 2015)....................................................................... 12

*United States v. Vargas*,
   18 Cr. 76 (PAC),
   2018 WL 606120 (S.D.N.Y. Nov. 20, 2018) .......................................................... 23

*United States v. Vincent*,
   416 F.3d 593 (7th Cir. 2005) .................................................................................. 19

*United States v. Wagner*,
   20 Cr. 410 (NSR),
   2022 WL 19179 (S.D.N.Y. Jan. 3, 2022) ............................................................... 12

*United States v. Williams*,
   930 F.3d 44 (2d Cir. 2019)................................................................................. 21, 23

*Wechsler v. Hunt Health Sys., Ltd.*,
   381 F. Supp. 2d 135 (S.D.N.Y. 2003)..................................................................... 12

*Wechsler v. Hunt Health Sys., Ltd.*,
   94 CV 8294 (PKL),
   2003 WL 21998980 (S.D.N.Y. Aug. 22, 2003)....................................................... 16

**Other Authorities**

3 Michael H. Graham, *Handbook of Federal Evidence* § 407:1 (9th ed.)..................................... 17

**Rules**

Federal Rule of Evidence 407 ................................................................................................ 16, 17

Federal Rule of Evidence 106 ........................................................................... 20, 21, 23, 24

Federal Rule of Evidence 611(a) .......................................................................... 21, 23, 24

Federal Rule of Evidence 401 ...................................................................................... 3

Federal Rule of Evidence 403 ................................................................................. 3, 16

# I.       PRELIMINARY STATEMENT

The Court should deny all of the government's motions *in limine*.  (*See* Dkt. 77

("Mot.").)  For starters, they are improperly premised on the assumption that the narrative the

government intends to advance at trial is binding on defendant Avraham Eisenberg and this

Court and has already been established as uncontroverted fact.  This, of course, is wrong.  The

"Background" in the government's motion is not substantiated with cites to any evidence, and

much of it was not even alleged in the indictment and will be refuted at trial.  Additionally, most

of the government's motions relate to categories of evidence the government concedes are

relevant—in several, it actually intends to use the evidence affirmatively as part of its case—but

the government nevertheless moves to restrict the defense from advancing certain arguments or

deny it the opportunity to question government witnesses about that same evidence.  The

government's motions are varying combinations of premature, vague, so broadly drawn that the

defense currently is not in a position to fairly respond (and the Court in a position to fairly rule),

and improperly seek to prevent the defense from presenting relevant evidence and arguments that

contradict the government's misleading narrative and flawed legal theories.

As an example, the government inaccurately contends that whether the alleged conduct

took place on cryptocurrency exchanges and involved digital assets matters little because, it

asserts, this case is nothing more than a run-of-the-mill pump and dump and moves the Court to

strictly enforce (ambiguously delineated) limits around defense questioning and arguments about

the terms of service and extent of regulation of Mango Markets.  (*See id.* at 1.)  The very fact that

the government intends to rely on a highly paid expert to explain cryptocurrency mechanics and

concepts and the Mango Markets terms of service to the jury entirely undercuts its position

regarding the marginal relevance of cryptocurrency to this case.  The defense intends to

demonstrate to the jury that the type of trading that allegedly occurred and the practices and

procedures inherent in cryptocurrency trading and on Mango Markets are central to the jury understanding this case and prove Mr. Eisenberg did not act deceptively and lacked the requisite *mens rea* to commit the charged offenses.  The government's proffered concern that the case will turn "into a referendum on the regulation of cryptocurrency" is wrong and nothing more than a straw man argument.  (*See id.*)

The Court should deny the government's motions *in limine*, which attempt to restrict Mr. Eisenberg's right to defend himself against the charges and permit the jury to hear all of the relevant evidence and argument so that it can arrive at a just verdict, which would be to acquit Mr. Eisenberg of all counts.

## II.  THE GOVERNMENT'S UNSUBSTANTIATED AND UNPROVEN "BACKGROUND" SECTION

The government's "Background" section is nothing more than a rendering of the case as the government sees it without reference to any evidentiary support.  Mr. Eisenberg disputes many of the purported facts and the inferences the government draws and submits that such a skewed narrative should not serve as a valid basis for granting any of the government's motions *in limine*.  Mr. Eisenberg did not commit any crimes—all of his conduct at issue was legal—as will be demonstrated at trial.  Although Mr. Eisenberg is not required to disclose his defenses at this time, what follows is a high-level response to some of the government's misleading or inaccurate assertions, which undercuts the government's flawed case and supports Mr. Eisenberg's innocence.

According to the government, Mr. Eisenberg conducted a series of trades on Mango Markets and other exchanges resulting in substantial profits when the value of MNGO increased on October 11, 2022.  (Mot. at 3-4, 6.)  At no time, however, did Mr. Eisenberg make any affirmative misrepresentations to anyone regarding the value of MNGO or the trades he was

transacting.  Given this weakness in its case, the government alleges that Mr. Eisenberg was deceptive because he failed to disclose his identity or intention to withdraw assets against his trading gains, without identifying any duty he had to make such disclosure or who the government believes was actually misled.  (*See id.* at 3-5.)

The government further asserts, without proof, that Mr. Eisenberg must have known that his conduct was impermissible based on his attempts to research the area of commodities law without identifying any prior criminal conviction or judicial opinion remotely similar to the facts of this case, let alone any that Mr. Eisenberg would have known about.  (*See id.* at 6.)  Nor does the government explain why it believes that Mr. Eisenberg would have been aware that trades affecting the price of MNGO, which the government concedes is not a commodity, could result in commodities fraud and commodities manipulation charges.  Instead, the government alleges that Mr. Eisenberg was aware of *United States v. Phillips*,[1] a factually dissimilar case that was undecided at the time, and that he was aware of one or more civil commodities fraud cases involving the price movements of actual commodities bearing no relation to the current charges. (*See id.*)[2]

The government's allegations regarding the supposed failure by Mr. Eisenberg to identify himself are misleading and will be rebutted at trial.  (*See id.* at 3, 6.)  Mr. Eisenberg did, in fact, identify himself in some certain instances, and the defense will present compelling and credible explanations for the remainder.  Finally, the government alleges that Mr. Eisenberg made certain statements about his alleged trades after they were completed on October 11, 2022 that

---

[1] Case No. 22 Cr. 138 (LJL).

[2] The defense would object to any discussion of the verdict in *Phillips*, which was rendered well after Mr. Eisenberg's arrest, under Federal Rules of Evidence 401 and 403 as irrelevant and prejudicial.

demonstrate that he was concerned about criminal prosecution.  (*Id.* at 6-7.)  The government, however, fails to disclose that Mango Markets had publicly stated that it had contacted law enforcement.  It is therefore no wonder then that Mr. Eisenberg worried that he might be the target of what he considered a meritless criminal investigation and set about to defend himself, including by seeking a legal help and publicly explaining why his actions were lawful.

## III.   LEGAL STANDARD

"The purposes of a motion *in limine* is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence." *United States v. Paredes*, 176 F. Supp. 2d 179, 181 (S.D.N.Y. 2001).  To achieve that end, motions *in limine* must be specific "with respect to the evidence to be excluded." *Baxter Diagnostics, Inc. v. Novatek Med., Inc.*, No. 94 Civ. 5220 (AJP), 1998 WL 665138, at *3 (S.D.N.Y. Sep. 25, 1998).  When a motion *in limine* lacks that required specificity, judgment on the motion should be reserved until trial "when admission of particular pieces of evidence is in an appropriate factual context." *Id.* Denial of a motion *in limine* is appropriate when the motion "lacks the necessary specificity with respect to the evidence to be excluded or the purported reason for the introduction of such evidence." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. L.E. Myers Co. Grp.*, 937 F. Supp. 276, 287 (S.D.N.Y. 1996).

"'The trial court should exclude evidence on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds.'" *Perry v. City of New York*, 552 F. Supp. 3d 433, 444 (S.D.N.Y. 2021) (quoting *United States v. Ozsusamlar*, 428 F. Supp. 2d 161, 164 (S.D.N.Y. 2017); *see also United States v. Figueroa*, 23 Cr. 161 (MAD), 2023 WL 8258735, at *2 (S.D.N.Y. Nov. 29, 2023).  Courts often reserve judgment on a motion *in limine* "until trial, so that the motion is placed in the appropriate factual context." *Paredes*, 176 F. Supp. 2d at 181. Rulings on motions *in limine* are "subject to change [as] the case unfolds . . . ." *Luce v. United*

*States*, 469 U.S. 38, 41 (1984); *see also United States v. Htut*, No. 22 Cr. 671 (NSR), 2023 WL 4399049, at *3 (S.D.N.Y. July 7, 2023) ("Because a ruling on a motion *in limine* is subject to change as the case unfolds, this ruling constitutes a preliminary determination in preparation for trial.").

## IV.   ARGUMENT

### A.   Motion *In Limine* No. 1: The Court Should Deny the Government's Request to Exclude Evidence and Argument that Cryptocurrency is Unregulated or that the Charges Against the Defendant are Novel

In its first motion, the government requests that "[t]he defendant [] be precluded from arguing or adducing evidence that cryptocurrency is unregulated or that the charges in this case are somehow novel." (Mot. at 7.)  This request is problematic because it fails to articulate what specifically the government wishes to exclude, conflating separate, though tangentially related, concepts regarding the state of regulation of cryptocurrency broadly and whether there is precedent for the particular charges levied against Mr. Eisenberg.  Such a sweeping request devoid of clarity or context is not proper at the motion *in limine* stage and should be denied.  *See, e.g., Baxter Diagnostics, Inc.*, 1998 WL 665138, at *3 (denying motion *in limine* to exclude all evidence of the plaintiff's financial condition because it was "too sweeping in scope to be decided *in limine*" (quoting *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 937 F. Supp. at 287)).

The defense has never stated any intention to argue that all cryptocurrency is unregulated and does not intend to do so at trial.  Rather, the defense intends to argue that the application of the commodities laws as to MNGO and Mango Markets was unclear at the time of the relevant conduct.  As the Court noted in its order denying the motion to dismiss, a central factual issue in this case is whether the Commodities Exchange Act ("CEA") applies to the alleged conduct, including the nature of the alleged manipulation and whether the MNGO Perpetuals are swaps. (*See* Dkt. 67 at 4.)  As an example, the Court held that whether the MNGO Perpetuals and USDC

can serve as the predicate swap and commodity, respectively, under the CEA are factual issues to be decided at trial.  (*Id.*)  That is very much a live issue at trial and is discussed in greater detail below with regard to the government's second motion *in limine*.

Turning to the second aspect of the government's motion, the fact that the charges against Mr. Eisenberg are novel is likely to become relevant to the issue of his intent.  The government tacitly acknowledges this, noting that the jury will be asked "to determine . . . whether the defendant acted in good faith."  (Mot. at 8.)  Among other things, the government will have to prove beyond a reasonable doubt that Mr. Eisenberg acted willfully.  Mr. Eisenberg will ask the Court to instruct the jury that "willfully" means that he acted voluntarily and with knowledge that his conduct was unlawful.  *See United States v. Henry*, 888 F.3d 589, 599 (2d Cir. 2018) (explaining that defining willfulness to require "'knowledge that one's conduct is unlawful' . . . correctly and clearly state[s]" the law); *United States v. Kukushkin*, 61 F.4th 327, 332 (2d Cir. 2023) ("'[To] establish a willful violation of a statute, the Government must prove that the defendant acted with knowledge that his conduct was unlawful.'") (internal citation omitted); *United States v. Kosinski*, 976 F.3d 135, 154 (2d Cir. 2020) (same).

The government has indicated that it will introduce and attempt to disprove the contents of Mr. Eisenberg's post on Twitter three days after the trading that he had profited from "'a highly profitable trading strategy' that involved 'legal open market actions'" by introducing evidence that: (1) Mr. Eisenberg "filed a market-manipulation lawsuit under the Commodities Exchange Act against another cryptocurrency platform; [(2)] posted on Twitter about the market-manipulation prosecution of Neil Phillips; [(3)] conducted online searches about fraud and market manipulation;" and (4) asked a friend for a recommendation of "a lawyer who knew about the Commodities Exchange Act."  (Mot. at 6.)  In other words, the government will

attempt to prove that Mr. Eisenberg was knowledgeable about the CEA and the charges in this case.  Should it do so, Mr. Eisenberg must be permitted to respond with evidence that he was not and could not have the knowledge of the CEA the government appears to attribute to him because no amount of research or prior experience in CEA litigation would have uncovered a case such as this as none existed.

The government's cited authority is inapposite because those cases do not involve a legal element of willfulness that includes an understanding of the illegality of the defendant's conduct or attempts by the government to paint the defendant as having had particularized knowledge regarding the crimes charged.  (*See* Mot. at 8 (citing *United States v. Stewart*, No. 03 Cr. 717 (MGC), 2004 WL 113506, at *2 (S.D.N.Y. Jan. 26. 2004) (holding that "whether the defendant knew that she was violating the law is irrelevant")).)  Likewise, the government's citation to cases regarding argument into the propriety of the charging decisions misses the point that evidence of the lack of precedent in this case is relevant to Mr. Eisenberg's *mens rea,* an element the government is required to prove beyond a reasonable doubt.  (*See id.* (citing *United States v. Borrero*, No. 13 Cr. 58 (KBF), 2013 WL 6020773, *2 (S.D.N.Y. Nov. 1, 2013) (allowing testimony regarding misidentification by cooperating witness but precluding testimony regarding government's subsequent decision to obtain a *nolle prosequi* as to the misidentified individual)).)

The government asserts that the probative value of the contested evidence would be outweighed by the prejudice because "[c]laims about the novelty of the prosecution would [] require a detour into the similarities and dissimilarities between this case and others charging fraud and market manipulation."  (Mot. at 9.)  But it is the government that has stated an intention to introduce evidence regarding other commodities fraud and manipulation cases, including evidence regarding the *Phillips* case and regarding civil cases filed by Mr. Eisenberg,

necessitating comparisons between those cases and this one.[3]  Additionally, evidence refuting criminal intent, a critical issue in the upcoming trial, is highly probative and far outweighs the vaguely identified and highly speculative prejudice asserted by the government.

In sum, this motion should be denied because it is unclear what precisely the government wishes to exclude and because, in any event, the government's "Background" section and arguments in this motion reveal that its case in chief will open the door to the admission of some, and perhaps all, of the evidence it now asserts irrelevant and overly prejudicial.

### B.   Motion *In Limine* No. 2: The Court Should Reject the Government's Request to Exclude Evidence and Arguments that Mango Markets Was not Regulated in the United States

The government's second motion is as flawed as the first one but for different reasons. The government contends that any evidence and argument that Mango Markets was not regulated by the SEC or CFTC should be excluded because: (1) whether Mango Markets was regulated is not relevant, as the government need not prove it was regulated to establish the jurisdictional elements of the charged crimes, and (2) it would be a waste of time and could potentially cause a trial-within-a-trial.  (Mot. at 9.)  The government's argument fails to account for the fact that the evidence is highly relevant for other, non-jurisdictional purposes, including whether Mr. Eisenberg understood his conduct to be wrongful and/or illegal.

"[E]vidence should be excluded on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds."  *Paredes*, 176 F. Supp. 2d at 181.  Whether Mango

---

[3] The government further expresses, without explanation, a concern that a discussion of other cases—the very discussion that it apparently intends to advance—"would risk . . . misleading jurors into believing the case was a referendum on cryptocurrency writ large."  (Mot. at 9.)  This concern is speculative in the extreme.  However, should this issue present itself at trial, the defense would request that the government not be allowed to impermissibly argue to the jury that convicting Mr. Eisenberg serves the purpose of helping to regulate the cryptocurrency industry.

Markets was regulated by the SEC and/or the CFTC is relevant to intent.  Demonstrating that Mango Markets was not a regulated platform will be part of the evidence Mr. Eisenberg intends to marshal to demonstrate that he believed his trading lawful and thus he should be acquitted. This is particularly relevant given the government's intent to introduce evidence regarding Mr. Eisenberg's alleged research into the CEA and its application.  Evidence that MNGO is not a commodity and that Mango Markets was not a regulated market is probative to show how difficult (impossible perhaps) it would have been for Mr. Eisenberg to research the application of the CEA to this case, let alone to conclude that his trading in MNGO was unlawful.  In other words, it would be relevant and highly probative of whether Mr. Eisenberg's alleged actions were willful or, stated conversely, whether he had a good faith belief that his alleged actions were proper.  *See United States v. Afriyie*, 929 F.3d 63, 68 (2d Cir. 2019) ("[T]he law is not violated if the defendant held an honest belief that his acts were proper and not [in] furtherance of any unlawful scheme.  A person who acts on a belief or reason honestly held that turns out to be wrong is not punishable under these statutes.") (second alteration in original).  The government's second motion *in limine* should thus be denied.

  **C.**  **Motion *In Limine* No. 3: The Court Should Deny the Government's Effort to Exclude "Code is Law" Arguments**

   The defense is not asserting a so-called "code is law" defense.  Mr. Eisenberg argued in his motion to dismiss that his trades were made within the parameters of Mango Markets' smart contracts and that his actions were fully permissible under the rules of the protocol, as set forth in its open-source code.  (*See* Dkt. 28 at 5-6.)  From this the government extrapolates, citing nothing, that Mr. Eisenberg must have been asserting a defense of "'code is law': namely, that because the Mango Markets code did not prevent the defendant's attack, and because the platform did not have terms of service, his conduct was legal."  (Mot. at 10.)  The government

9

then proceeds to attack this straw man and ambiguously requests that the Court therefore restrict "how the defense is permitted to use evidence about the Mango Markets code and the absence of terms of service." (*Id.*)  The government's motion should be denied because, among other reasons, it is hopelessly vague, premature, and misconstrues the relevance of the evidence.

1.  The Government's Irrelevant Technological Feasibility Discussion

Within the auspices of this motion, the government devotes almost five pages of its brief to a discussion of the charges in Counts 1 and 2 and various securities and commodities fraud and manipulation cases with no identifiable connection to the facts of this case and without a discernable request from the Court.  (*See* Mot. at 10-14.)  Indeed, it bears little explanation that technological feasibility alone is not a defense.  It is axiomatic that every fraud or manipulation that ever succeeded was feasible, and the government contends this one was very successful. Given the absence of any government request for a specific ruling, no response appears to be required to this section of the motion, but the defense reserves the right to respond should the government later attempt to clarify this section into a specific application.

2.  Evidence Regarding the Mango Markets Code and Terms of Service Is Plainly Relevant and Admissible

In the second portion of the government's "code is law" motion, the government makes two requests.  First, the government asserts that "the Court should prevent the defense from arguing to the jury that the defendant is not guilty if the code or the lack of terms of service did not bar the scheme." (Mot. at 14.)  As noted above, the defense has not and will not argue that the jury must acquit Mr. Eisenberg solely because his conduct complied with Mango Markets' rules.  Instead, the defense will demonstrate that the government has failed to meet the elements of the offenses charged because, among other reasons, there is no evidence that Mr. Eisenberg made any deceptive statement or undertook any deceptive action toward any alleged victim, and

he had no intent to deceive or manipulate the relevant market.  Mr. Eisenberg's compliance with the rules of the exchange is highly relevant to these issues.

Second, the government asserts that "the Court should restrict the presentation o[f] evidence about the Mango Markets code and lack of terms of service to prevent [] an improper suggestion" that this is a legal defense to the charges.  (*Id.* at 14.)  The government, however, fails to explain the precise contours of its application other than one request that the Court exclude "[q]uestions about what is 'allowed' or 'prohibited' on Mango Markets" because such questions "misleadingly blur the distinction between the legal prohibitions at issue in the case . . . and may suggest, misleadingly, some intention by Mango Markets to permit the defendant's conduct."  (See *id*. at 15.)

There are a host of deficiencies with this request: it is vague, speculative, and premature.  The government acknowledges that evidence regarding the rules of Mango Markets is relevant to "support[] a defense that [Mr. Eisenberg] had a good faith belief that his conduct was not wrongful."  (*Id.*)  The relevance of evidence regarding the terms of service and the nature of the smart contract on Mango Markets, however, goes well beyond Mr. Eisenberg's intent.  For example, the evidence is also relevant to whether Mr. Eisenberg engaged in a scheme to defraud and/or materially misled the alleged victims.  Had Mr. Eisenberg's alleged conduct violated the terms of the marketplace, the government surely would have used this as evidence against Mr. Eisenberg.[4]

---

[4] The government indicates that it might introduce evidence that it contends demonstrates that Mr. Eisenberg's trading violated the terms of service of exchanges other than Mango Markets. (Mot. at 15 n.2.)  Should the Court consider the government's request—now or at trial—of an instruction delineating between guilt and innocence and the violation of private market rules, the defense would ask for a corresponding instruction that Mr. Eisenberg cannot be deemed guilty on the basis of his violation of market rules.

It is also difficult to conceive of the precise phrasing of the questions the government

fears in the abstract.  The proper time for such an objection (and a corresponding ruling) would

be at trial in response to actual questions or lines of questioning that are alleged to be improper,

not in a motion *in limine*.  *See*, *e.g.*, *United States v. Wagner*, 20 Cr. 410 (NSR), 2022 WL

19179, at *4 (S.D.N.Y. Jan. 3, 2022) (denying motion *in limine* to limit scope of cross-

examination as premature because whether a line of questioning is improper depends on the

scope of direct examination); *United States v. Ulbricht*, 79 F. Supp. 3d 466, 488 (S.D.N.Y. 2015)

(denying motion *in limine* because it was premature; whether the government could meet the

standard for authentication "[was] a question best answered at trial"); *Wechsler v. Hunt Health*

*Sys., Ltd.*, 381 F. Supp. 2d 135, 153 (S.D.N.Y. 2003) (denying motion *in limine* as "premature"

because the evidence objected to had not yet been admitted and the court refused to speculate

regarding its use).  Moreover, the government's objection is premised on a fact—that Mango

Markets intended to prohibit the trading—that the government has not yet even attempted to

prove and will be in dispute at trial.

In addition, the government's conclusory claim that using the words "allowed" or

"prohibited" would mislead the jury is unconvincing speculation and defies common sense.  Jury

instructions have yet to be issued or even proposed by the parties.  The jury pool has yet to be

selected.  The government will have ample opportunity to address its concern about "code is

law" in opening and closing arguments.  In other words, there is no way of knowing at this

juncture how nomenclature will be received.  Without the benefit of knowing how words will

impact the jury, the request is nothing more than an attempt to curtail the defense's ability to use

highly probative evidence the government does not like and should be denied.  *See*, *e.g.*,

*Paredes*, 176 F. Supp. 2d at 181 ("[C]ourts considering a motion *in limine* may reserve judgment

until trial, so that the motion is placed in the appropriate factual context."); *Singh v. Knuckles, Komosinski & Manfro, LLP*, 18 CV 3213 (NSR), 2022 WL 862251, at *3-*4 (S.D.N.Y. March 23, 2022) (finding that motion *in limine* to preclude a lay witness from using the terms "anxiety" and "IBS" during testimony because they are medical terms was premature—"the permissibility of the use of such terms is based on the counsel's line of questioning and the context of the use of the words 'anxiety' and 'IBS' by [the witness]").

Lastly, the government's request for a limiting instruction should be rejected as well. In an asserted effort to limit confusion, the government does exactly the opposite, proposing that: "evidence about the code and lack of terms of service are relevant only to a particular issue—such as whether the defendant acted in good faith—and not to whether the conduct constituted fraud or market manipulation."[5] (Mot. at 16.) At this stage, the government cannot (and does not) identify the precise relevance and prejudice it wishes the limiting instruction to prevent and crafting an appropriate legal instruction, in the unlikely scenario that one is necessary at all, is impossible. In the improbable event that there is any confusion regarding the relevance of the evidence, the Court could consider including an instruction in its charge to the jury. At this stage, the government's attempt to parse the relevance of the evidence (which it concedes is substantial) and exclude the asserted prejudice (the contours of which it cannot clearly articulate) is premature and unnecessary, and the issue, assuming one exists, should be reserved for trial.

---

[5] It is unclear whether the government wants the quoted language to be the instruction or simply that it wants an instruction based on that premise. Either way, such an instruction would be impermissibly confusing and legally inaccurate as explained above.

**D.      Motion *In Limine* No. 4: The Court Should Reject the Government's Request to Preclude Evidence about Mango Markets' Terms of Service Implemented After the Defendant's Alleged Trading**

The government's fourth motion seeks to preclude evidence about Mango Markets implementing Terms of Service after October 11, 2022 that would have arguably prohibited Mr. Eisenberg's trading.  (Mot. at 16.)  The government asserts that this evidence is "not relevant to any issue in this case" because it relates to events post-dating the trading and could not have informed Mr. Eisenberg's *mens rea*.  (*Id*. at 17.)  The government is incorrect both because the evidence is relevant to proving that the terms of service prior to Mr. Eisenberg's trades did not prohibit his conduct—otherwise, they would not have needed to be amended—which is relevant to his scienter, and because this evidence is relevant to issues beyond Mr. Eisenberg's state of mind, such as whether his actions were material and deceitful.  Moreover, Federal Rule of Evidence 407, upon which the government's argument rests, is inapplicable here.

Mr. Eisenberg will establish at trial that the terms of service at the time of his trades did not forbid his actions and that enacting such terms of service was both possible and practicable. The fact that Mango Markets implemented such terms of service shortly after his trading is powerful evidence that supports this proposition, which, in turn, is relevant to Mr. Eisenberg's good-faith belief that his conduct was not wrongful, and certainly not illegal.

The belated implementation of terms of service is relevant to both the intent of Mango Markets and to the materiality of any deception by Mr. Eisenberg.  As previously discussed, the government has indicated that it intends to prove that Mango Markets did not wish to permit such trading, opening the proverbial door.  Evidence that Mango Markets could have, but did not, take steps to prevent such trading is relevant to the jury's determination of Mango Markets' intention at the time of the charged crimes, particularly if evidence is presented, as is expected, that Mango Markets appreciated that such trading was a risk faced by the platform.

Similarly, as noted above, the evidence is relevant to whether Mr. Eisenberg's trading involved material misrepresentations to any alleged victim.  Without identifying who was deceived, the government suggests that the trading was deceptive and that Mango Markets or others were victimized.  Mr. Eisenberg had a self-executing smart contract with Mango Markets that operated under the terms of the underlying code.  That contract required Mango Markets to pay Mr. Eisenberg if MNGO increased, without regard to the reason for the increase.  Even had Mr. Eisenberg fully disclosed every aspect of his trading to Mango Markets, which he had no obligation to do, it would still have been obligated under the contract to pay him.  Thus, the terms of the agreement, and the fact that Mango Markets later elected to change those terms, are highly relevant to the issue of materiality.

The government's argument that the relevance of the evidence is outweighed by the risk of prejudice is similarly unpersuasive.  (*See* Mot. at 18-19.)  Once again, the government asserts speculatively and without explanation that evidence regarding the terms of service "is highly likely to give jurors the misimpression that [Mr. Eisenberg's] conduct was legal."  (*Id.*)  The defense disagrees.  First, surely the government will vigorously argue the contrary.  Second, the defense believes that the jury will follow the Court's instructions and render verdicts on the charges based on the application of the elements to the legal instructions the Court provides.

The government further contends that it "may have to offer evidence about the reasons for implementing the terms of service, which is an unnecessary departure from the relevant facts and may implicate privilege issues."  (*Id.* at 19.)  This argument is vague in the extreme and should not be credited.  The government offers no explanation of what it believes Mango Markets' reasons were for implementing the terms of service, why those reasons are (or are not) relevant, or why it could not establish its points without implicating "privilege issues."  Such

general and speculative "prejudice" is not a proper basis for granting a motion *in limine* under Rule 403.  *See, e.g.*, *Wechsler v. Hunt Health Sys., Ltd.*, 94 CV 8294 (PKL), 2003 WL 21998980, at *3 (S.D.N.Y. Aug. 22, 2003) ("A district court is well within its discretion to deny a motion *in limine* that fails to . . . present arguments with specificity." (quoting *United States v. Cline*, 188 F. Supp. 2d 1287, 1292 (D. Kan. 2002)).

The government also seeks to preclude evidence of the post-conduct terms of service under Rule 407 as a subsequent remedial measure because it asserts that the evidence would be offered to show "Mango Markets acted negligently," or that there was a "'defect' in [Mango Market's] platform or 'a need for a warning or instruction'" at the time of the alleged conduct. (Mot. at 18.)  Mr. Eisenberg does not intend to prove that Mango Markets was negligent or that its product was defective.  Indeed, the opposite is true: Mango Markets functioned exactly as it was designed, as the government well knows.

Moreover, Rule 407 is inapplicable because Mango Markets is not a party to this litigation.  While the Second Circuit has yet to address this specific issue, all circuit courts that have addressed it have concluded that "Rule 407 does not apply to subsequent remedial measures taken by a non-party."  *Diehl v. Blaw-Knox*, 360 F.3d 426, 430 (3d. Cir. 2004); *see also Raymond v. Raymond Corp.*, 938 F.2d 1518, 1524 (1st Cir. 1991); *O'Dell v. Hercules, Inc.*, 904 F.2d 1194, 1204 (8th Cir. 1990); *Dixon v. Int'l Harvester Co.*, 754 F.2d 573, 583 (5th Cir. 1985); *Lolie v. Ohio Brass Co.*, 502 F.2d 741, 744 (7th Cir. 1974); *Mehojah v. Drummond*, 56 F.3d 1213, 1215 (10th Cir. 1995) (Rule 407 "does not apply to subsequent remedial measures by non-defendants"); *Pau v. Yosemite Park and Curry Co.*, 928 F.2d 880, 888 (9th Cir. 1991) ("[R]ule 407 applies to a *defendant's* voluntary actions." (emphasis in original)); *TLT-Babcock, Inc. v. Emerson Elec. Co.*, 33 F.3d 397, 400 (4th Cir. 1994) ("The courts of appeals, therefore, have

held that evidence of subsequent repairs may be admitted where those repairs have been performed by someone other than the defendant.  We agree with the logic and conclusion of our sister circuits." (citations omitted)); 3 Michael H. Graham, *Handbook of Federal Evidence* § 407:1 (9th ed.) ("Subsequent measures taken by a person not a party to the litigation are outside the scope of Rule 407.  The policy of not discouraging the taking of corrective measures is not undermined by admission of such evidence relevant to negligence or culpable conduct.").

The government's cited cases are inapposite; in each, the excluded evidence was of subsequent remedial measures taken *by the defendant*.  *See R.M. Perlman, Inc. v. New York Coat, Suit, Dresses, Rainwear & Allied Workers' Union Local 89-22-1, I.L.G.W.U., AFL-CIO*, 33 F.3d 145, 156 (2d Cir. 1994) (excluding evidence of subsequent remedial measure taken by defendant International Ladies' Garment Workers' Union); *SEC v. Geon Indus., Inc.*, 531 F.2d 39, 52 (2d Cir. 1976) (excluding evidence of subsequent remedial measure taken by defendant Edwards & Hanly); *In re Foreign Exch. Benchmark Rates Antitrust Litig.*, No. 13 CV 7789 (LGS), 2022 WL 4087842, at *4 (S.D.N.Y. Sep. 6, 2022) (granting motion *in limine* to exclude evidence of subsequent remedial measures taken by co-conspirator because "conspirators are jointly and severally liable").

Put simply, Rule 407 is not a basis to exclude the terms of service Mango Market's implemented after the alleged conduct, and this motion should be denied.

**E.** **Motion *In Limine* No. 5: The Court Should Deny the Government's Request to Preclude Argument that the Defendant's Partial Repayment Is a Defense to the Charged Crimes**

In its fifth motion, the government notes that the defendant returned approximately $67 million in cryptocurrency assets as part of a settlement he negotiated with the Mango Markets DAO shortly after October 11, 2022.  (Mot. at 19.)  The government indicates that it plans to introduce evidence of this repayment and that it will argue to the jury that the repayment is

actually evidence of Mr. Eisenberg's guilt because he did not return all of the assets he had

taken, he negotiated with the DAO only after he had left the country, and the agreement called

for Mango Markets not to pursue any litigation, including criminal investigation, against Mr.

Eisenberg.[6]  (*Id.*)  While Mr. Eisenberg has no objection at this time to the government's

admission of the repayment evidence, the defense believes that the government's

characterization of the evidence's import is wrong, will be disproven at trial, and the jury will

conclude that Mr. Eisenberg always intended to return a portion of the proceeds.

 The government concedes that evidence of Mr. Eisenberg's repayment is relevant when it

indicates that it will offer this evidence in its own case.  (*Id.* ("Although evidence regarding these

events may be admissible for other purposes at trial—and, indeed, the [g]overnment may offer

such evidence . . . .").)  Nevertheless, the government states that "it would be legally incorrect

for the defense to argue that the defendant's repayment shows that he is not guilty."  (*Id.* at 20.)

Given the government's concession that the repayment evidence is relevant and that it will offer

evidence of repayment at trial, the precise contours of its request are unclear and it appears the

government impermissibly wants to have it both ways.  (*See id.* at 19.)  To the extent that the

government argues that repayment is not an affirmative defense or some other legal bar to a

claim of fraud, the defense agrees and has no intention of arguing otherwise.  However, the

government's application that evidence of repayment cannot be used to show good faith, should

be denied.  (*See id.* at 20 (government asserts that "there is no legal basis to use the repayment of

---

[6] The government's stated intention to apprise the jury of Mr. Eisenberg's $67 million repayment
stands in stark contrast to the misleading impression the government gave the public in its press
release announcing Mr. Eisenberg's arrest and initial appearance.  The government stated once in
the headline and thrice in the body that Mr. Eisenberg obtained over $100 million in
cryptocurrency without disclosing that he had repaid the majority of this sum.  *See
https://www.justice.gov/usao-sdny/pr/alleged-perpetrator-100-million-crypto-market-
manipulation-scheme-make-initial.*

funds as a basis for asserting . . . good faith").)  In support, the government avers that "the defendant returned only a portion of the stolen funds, and the Mango DAO was forced to spend nearly $40 million worth of cryptocurrency to repay unrecouped customer losses."  (*Id.*)  This request should be denied because the premise relies on facts the government has yet to prove and is therefore premature.

Further, even assuming the truth of these allegations, evidence of repayment is still relevant and admissible to a defendant's lack of culpability.  As the government's own cited case states, "a partial recovery might be relevant to a defendant's intent to defraud."  *United States v. Vincent*, 416 F.3d 593, 601 (7th Cir. 2005).  The two cases cited do not show otherwise because they are factually distinguishable.  In *Vincent*, the Seventh Circuit affirmed exclusion of the repayment evidence because the repayment was involuntary and made not by defendant but by the trustee in the related bankruptcy action upon court order.  *Id.*  In *United States v. Sidona*, 636 F.2d 792, 800 (2d Cir. 1980), the Second Circuit affirmed the exclusion of evidence of a partial repayment that occurred three years after the alleged fraud and in response to a lawsuit by a government agency.  In neither case did the court endorse the government's request here: that repayment evidence should be admitted to advance the government's narrative of the intent behind the repayment but excluded as to Mr. Eisenberg's.

The government's motion should thus be denied.  Intent is a factual question for the jury to decide.  Once the factual evidence of the repayment has been submitted, the parties should be free to argue to the jury what that evidence means, consistent with the Court's legal instructions, including why Mr. Eisenberg returned the funds and what that means regarding his *mens rea*.

F.    <u>**Motion *In Limine* No. 6: Motion to Preclude the Defendant From Introducing Allegedly Self-Serving Exculpatory Statements Should Be Denied**</u>

The government indicates in its final motion that it intends to introduce a substantial amount of evidence regarding Mr. Eisenberg's conduct after the trades were completed on October 11, 2022, including various statements Mr. Eisenberg made after the alleged conduct as party-opponent admissions.  (Mot. at 21.)  Nevertheless, the government moves to preclude as hearsay post-trading statements Mr. Eisenberg made that reflect an asserted belief that his conduct was legitimate and legal; in other words, statements Mr. Eisenberg made contemporaneously with and directly contradicting those statements the government intends to admit.  (*See id.*)

This is a textbook example for the application of the rule of completeness, Federal Rule of Evidence 106.  The motion is also premature because the full scope of the statements the government intends to submit and the statements the defense believes would be admissible for completeness is currently unknown.  The defense therefore suggests that the Court require the government to designate Mr. Eisenberg's statements it intends to introduce, permit Mr. Eisenberg to counter-designate statements the defense believes admissible for completeness (or otherwise), and then rule upon any objection the parties have to those designations.  *See United States v. Ray*, 20 Cr. 110 (LJL), 2022 WL 558146, at *15 (S.D.N.Y. Feb. 24, 2022) (reserving prior ruling on motion *in limine* regarding rule of completeness "[u]ntil the Court sees the statement and the portions that the [g]overnment seeks to offer as well as the portions that the defense seeks to offer").

Rule 106 provides: "When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require him at that time to introduce any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously

with it."  "Under this rule, the omitted portion of a statement must be placed in evidence if

necessary to explain the admitted portion, to place the admitted portion in context, to avoid

misleading the jury, or to ensure fair and impartial understanding of the admitted portion."

*United States v. Castro*, 813 F.2d 571, 575-76 (2d Cir. 1987) (citations omitted); *see also United*

*States v. Williams*, 930 F.3d 44, 58-60 (2d Cir. 2019).  Rule 106 and Rule 611(a), which restates

common law principles, codify "the overarching principle that it is the trial court's responsibility

to exercise common sense and a sense of fairness to protect the rights of the parties while

remaining ever mindful of the court's obligation to protect the interest of society in the

'ascertainment of the truth.'"  *Castro*, 813 F.2d at 576 (quoting Fed. R. Evid. 611(a)).

Statements admitted under Rule 106 are not offered for their truth, but instead for "a valid,

*nonhearsay* purpose: to explain and ensure the fair understanding of the evidence that has

already been introduced."  *Williams*, 930 F.3d at 60 (emphasis in original).

  As examples of statements, the government refers—without attaching the actual

statements or providing Bates numbers or other methods of identification—to alleged text

messages between Mr. Eisenberg and an (unidentified) acquaintance made after the trades that

the government contends are inculpatory evidence regarding Mr. Eisenberg's state of mind.

(Mot. at 6-7.)  In other words, the government wants to use statements made after October 11,

2022 it thinks probative that Mr. Eisenberg understood his prior trading was unlawful at the time

he undertook those trades.  At the same time, the government, while conceding that Mr.

Eisenberg made such statements in multiple settings, including public interviews, asks the Court

to preclude the defense from offering any after-the-fact statements in which Mr. Eisenberg

explained his belief that the trades were legitimate because the government alleges that such

statements are "self-serving" and hearsay.  (*Id.* at 20-21.)  Because the government is putting at

issue Mr. Eisenberg's state of mind after the alleged conduct by cherry-picking *post hoc* statements it likes, it has opened the door to the defense's use of contemporaneous contradictory statements.

The government anticipates the completeness problem but unpersuasively argues that "the defendant's false exculpatory statements are not necessary to place the Government's anticipated evidence in context or to avoid a risk that the jury will be misled; rather, they are post-hoc explanations for prior conduct."  (Mot. at 22 (citations omitted).)  The fundamental flaw in the government's argument is its failure to recognize that it also wishes to admit after-the-fact statements for the purpose of proving prior intent, rendering it necessary to admit contradictory statements.  The case to which the government cites, *United States v. Lange*, 834 F.3d 58, 79 (2d Cir. 2016), involved a procedural process in which the district court allowed the parties to designate and object to specific statements from the defendant's grand jury testimony—the very procedure the defense requests—but ultimately excluded cross-designated exculpatory portions the defendant wished to admit because his explanations of why he had allowed his father to impersonate him and that he had assumed another co-conspirator to be an honest person did not provide context for admitted statements regarding the defendant's job responsibilities and awareness of his father's conduct.[7]  By contrast, the statements the government wishes to admit and preclude here relate to the same issue—namely, whether, in the days after the trading, Mr. Eisenberg believed what he had done on October 11, 2022 was legal—and therefore do provide helpful context.  Moreover, the statements the government seeks to preclude would alter the

---

[7] While the Circuit Court's opinion is summary in nature regarding this issue and does not address the underlying facts, the parties' appellate briefing offers a fuller recitation of the dispute.  *See United States v. Lange*, No. 14-2442, Doc. 122 (Gov. Reply), at 81-82, filed Oct. 26, 2015 (2d Cir.).

meaning of and provide context for the government's proffered statements, and preclusion would therefore be inappropriate because it would mislead the jury into believing that Mr. Eisenberg did not believe what he did was legal.  *See*, *e.g.*, *Lange*, 834 F.3d at 79 (explaining that admission is required under rule of completeness if the statements place the admitted statements in context or help avoid misleading the jury); *Htut*, 2023 WL 4399049, at *9 (explaining that it would "paint[] a misleading picture" if the government was permitted "to admit testimony that [d]efendant made a generalized confession to 'participating in a conspiracy' while excluding [d]efendant's repeated statements that he feigned his participation"); *United States v. Vargas*, 18 Cr. 76 (PAC), 2018 WL 6061207, at *2 (S.D.N.Y. Nov. 20, 2018) (admitting under Rule 106 to avoid jury being misled defendant's post-arrest statements "that he never paid patients, and that his boss was always present when he filled out medical charts" as context for post-arrest statements about "his practicing dentistry without a license . . . and his awareness about the office's kickback payments").

Rules 106 and 611 are designed to prevent the precise tactics the government seeks to employ here: using the hearsay rules as a sword to admit statements it asserts demonstrate Mr. Eisenberg' guilty conscience while using those same rules as a shield precluding contemporaneous statements by Mr. Eisenberg demonstrating that he believed that his trading had been appropriate.  *See Williams*, 930 F.3d at 60 ("With respect to the government's suggestion that evidence proffered under the rule of completeness may be excluded whenever not independently admissible due to the hearsay rule, this is simply not correct.").  Were the government permitted to admit after-the-fact statements Mr. Eisenberg made regarding extradition or conditions of incarceration while the defense was precluded from offering contemporaneous statements demonstrating that Mr. Eisenberg believed his trading permissible

under both the rules of the exchange and the law, the jury would be left with a fundamentally misleading impression of Mr. Eisenberg's perception of the propriety of his prior actions.

The government's motion to preclude Mr. Eisenberg's post-conduct statements should be denied under Rules 106 and 611.  Moreover, as noted above, the Court should permit the parties to designate and counter-designate defendant's statements so that it can properly rule on any objections as to relevance, completeness and hearsay in advance of trial on a statement-by-statement basis.

## V.    CONCLUSION

For the foregoing reasons, the Court should deny the government's motions *in limine*.


DATED:    January 18, 2023                                 Respectfully Submitted,


                                                By:*/s/ Brian E. Klein*
                                                     Brian E. Klein
                                                     Ashley E. Martabano
                                                     Riley P. Smith
                                                     Waymaker LLP

                                                     -and-

                                                     Sanford N. Talkin
                                                     Noam B. Greenspan
                                                     Talkin, Muccigrosso & Roberts, LLP

                                                     *Attorneys for Avraham Eisenberg*