**TALKIN, MUCCIGROSSO & ROBERTS, L.L.P.**
ATTORNEYS AT LAW
40 EXCHANGE PLACE
18TH FLOOR
NEW YORK, NEW YORK 10005

(212) 482-0007 PHONE
(212) 482-1303 FAX
WWW.TALKINLAW.COM
EMAIL: INFO@TALKINLAW.COM

MARYLAND OFFICE:
5100 DORSEY HALL DRIVE
SUITE 100
ELLICOTT CITY, MD 21042

410-964-0300

NEW JERSEY OFFICE:
2500 PLAZA 5
HARBORSIDE FINANCIAL CENTER
JERSEY CITY, NJ 07311

201-342-6665

March 6, 2024

Honorable Arun Subramanian
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

**VIA ECF**

          Re:    <u>United States v. Avraham Eisenberg</u>
                23 Cr. 10 (AS)

Dear Judge Subramanian:

Defendant Avraham Eisenberg moves the Court to exclude the government's proposed rebuttal expert testimony of Kapil Jain disclosed in a February 22, 2024 notice ("Rebuttal Notice," Exhibit A).[1] Jain is the government's previously disclosed cryptocurrency trading expert, and his proposed rebuttal testimony is inadmissible for a host of reasons pursuant to the Federal Rules of Evidence, including because the opinions are general statements that are extremely vague and not in fact a rebuttal to any of the testimony of Mr. Eisenberg's two proposed experts (whose testimony explicitly ties back to the specific facts of this case) and because the opinions include legal conclusions and suffer from other fatal infirmities.

    **A.**  <u>**Jain's Rebuttal Opinion 1(a) Regarding Asset Manipulation is Vague, Irrelevant, Unsupported, and Usurps the Role of the Court and the Jury**</u>

Jain's Rebuttal Opinion 1(a) is that "it is possible ***to manipulate the price*** of many different assets, including assets that have wide ranges of liquidity, and that the ability to manipulate an asset depends on a number of factors, including the trader's market power, the nature of the platforms on which the asset trades, and the liquidity of the underlying asset." (Ex. A at 1 (emphasis added).) The opinion is improper for a litany of reasons.

---

[1] Mr. Eisenberg does not object to the government's rebuttal disclosure of David Mordecai, although he reserves the right to object to questions and answers that might come up at trial, as well as any government argument that arises from them.

Hon. Arun Subramanian
Page 2

***First,*** the opinion involves a legal conclusion, namely what amounts to asset manipulation, and thus "usurps[] the role of the trial judge in instructing the jury as to the applicable law." *United States v. Lumpkin*, 192 F.3d 280, 289 (2d Cir. 1999). As the Second Circuit noted in reversing a conviction, "manipulation [is not a] self-defining term[] but rather h[as] been the subject of diverse judicial interpretations." *United States v. Scop*, 846 F.2d 135, 140 (2d Cir. 1988). Count two of the indictment charges Mr. Eisenberg with commodities manipulation, and the Court will therefore instruct the jury on the elements of that charge and what manipulation entails. The government's offer to have Jain propound an opinion about the "factors" that go into "manipulat[ing]" the price of certain, undisclosed assets, likely including commodities, inappropriately invades the Court's role.

***Second***, the opinion is a thinly veiled attempt by the government to have its expert testify that Mr. Eisenberg is guilty of commodities manipulation, usurping the role of the jury. *See Lumpkin*, 192 F.3d at 289. While expert testimony about "ordinary practices" can give the jury the opportunity to "evaluate a defendant's conduct against the standards of accepted practice," testimony on an ultimate legal conclusion is inadmissible even though it is "presented in terms of industry practice." *United States v. Bilzerian*, 926 F.2d 1285, 1295 (2d Cir. 1991). While the government here couches the testimony as involving only what is "possible" and neglects to disclose the precise "different assets" about which Jain will testify, the thrust is that the government will offer Jain to testify that a Mr. Eisenberg-like individual could manipulate a MNGO-like asset in circumstances akin to those at issue in this case. Such testimony is blatantly improper.

***Third***, the opinion is a hopelessly vague general statement about unidentified assets that would be of no assistance to the jury. "General statements without adequate factual support are inadmissible." *In re Blech Sec. Litig.*, No. 94 Civ. 7696 (RWS), 2003 WL 1610775, at *65 (S.D.N.Y. Mar. 27, 2003). As the *Blech* court held, market manipulation testimony unrelated to "particular trades or categories of trade" is inadmissible. *Id.* Here, the government fails to identify the specific assets about which Jain will opine, whether they are commodities or are similar in any way to the assets at issue in this case, and which factors he plans to present to the jury to show manipulation. His testimony that some unspecified asset could be manipulated has no relevance to this case. Nor is the testimony at all responsive, as the government asserts, to the testimony of defense expert Jeremy Sheridan regarding "low liquidity impact," Ex. A at 1, which relates to the effects of Mr. Eisenberg's alleged trading of MNGO in a thin, highly volatile market and has nothing to do with asset manipulation. The testimony is thus neither relevant nor rebuttal.

***Fourth***, the government has identified no discernable background or experience upon which Jain would testify about the manipulation of any particular asset in violation of Federal Rule of Evidence 702. While a general industry background may at times be coupled with an analysis of deviation from industry practice to form opinions regarding price artificiality, *see In re Blech Sec. Litig.*, 2003 WL 1610775, at *19, Jain's testimony does not relate to any such standard industry practice. His prior disclosed general background in cryptocurrency and his newly disclosed general experience with researching and trading commodity derivatives provide no explicit support for his opinion regarding possible manipulation. (*See* Dkt. 87 Ex. 1 at Appendix A; Ex. A at 1.)

***Finally***, even if Jain's testimony were relevant and not problematic for the other reasons

Hon. Arun Subramanian
Page 3

discussed above, it would essentially duplicate the rebuttal testimony of the government's other expert, David Mordechai (factually disputed by the defense) that the trading price of MNGO Perpetuals was artificial as a result of Mr. Eisenberg's alleged trading. (Ex. A at 2.) To the extent that the government wishes for the jury to infer that price artificiality was possible in MNGO, Mordecai is addressing that topic.

### B. Jain's Rebuttal Opinion 1(b) Regarding an Oracle Is Vague and Irrelevant

The government's disclosure states that Jain may opine regarding "(i) various impacts of the use of Oracles to relay information to a blockchain, (ii) the various impacts of exchanges as an input to an Oracle, and (iii) how using multiple exchange inputs for an Oracle may mitigate the risk of market manipulation." (Ex A at 2.) Like opinion 1(a), this opinion is vague and not actually responsive to Sheridan's testimony that Mr. Eisenberg's alleged trades could be accomplished with no hacking or manipulation of the Mango Markets code because of weaknesses in, among other things, the manner in which the oracle reported pricing information. (*See* Dkt. 80 Ex. 2 at 3.)

Jain's proposed testimony regarding the "***various impacts*** of the use of an Oracle to relay information to a blockchain" and "***the various impacts*** of the use of exchanges as an input to an Oracle" is so vague as to be indecipherable. (*See* Ex. A at 1 (emphasis added).) The government fails to disclose what impacts Jain will discuss, let alone whether he is specifically referring to the Mango Markets Oracle like Sheridan or some hypothetical oracle. The government has thus failed to establish the relevance of this proposed testimony as required by Federal Rule of Evidence 401 or how it actually rebuts Sheridan's opinions.

The third subpoint of this opinion, that Jain would testify regarding "how using multiple exchange inputs for an Oracle may mitigate the risk of manipulation," *id.*, is similarly vague and irrelevant. Once again, the government proposes that Jain offer a general, theoretical point with seemingly no connection to the specific facts of this case. Moreover, this portion of the opinion is made all the more objectionable because it connects the vague testimony to "the risk of market manipulation." *Id.* As noted above, market manipulation is a legal term of art and a criminal charge in this case. To the extent that expert testimony regarding market manipulation could ever be admissible, that evidence would have to be very carefully tailored to both the facts of the case and the expert's background. Jain's proposed testimony is neither. Theoretical testimony about the manner in which exchange inputs could be used bears no defined connection to this case's specific facts, and, even if it did, there is nothing in the government's initial or rebuttal disclosures relating to Jain's having ever designed an oracle or otherwise having a basis to opine on oracle design.

### C. Jain's Opinion 2 Would Improperly Instruct the Jury on the Law and is Irrelevant

In response to Sheridan's opinion that Mr. Eisenberg's purported trading did not violate the Mango Markets terms of service, the government proposes rebuttal testimony from Jain that "United States laws and regulations [] govern counterparties' actions with respect to commodities derivatives." (Ex. A at 1.) Initially, having Jain attempt to explain the relevant legal framework to the jury would improperly "usurp . . the role of the trial judge in instructing the jury as to the applicable law." *Lumpkin*, 192 F.3d 280 at 289. The Court is the appropriate source of instruction on which laws and regulations are applicable and what they mean, not Jain.

Hon. Arun Subramanian
Page 4

Relatedly, Jain has no disclosed legal or compliance experience and thus no apparent basis for the proposed testimony. The government states that the opinion is based on Jain's "research and experience in the field of commodity derivatives, as well as prior experience trading derivative products." (Ex. A at 1.) A review of his previously disclosed curriculum vitae, however, shows he had a career as a trader and consultant with no research or experience pertaining to legal and regulatory requirements. (*See* Dkt. 87 Ex. 1 at Appendix A.) While no expert should be allowed to offer the proposed legal conclusions, Jain is particularly unqualified to do so.

An equally fundamental flaw regarding this opinion is its vagueness. The government fails to explain which laws or regulations, or, indeed, even the categories of laws or regulations about which it proposes to have Jain testify. Without such information, there is no clear link between the proffered testimony and the facts of this case. Opinion 2 includes no mention of Mango Markets or anything relating to the charged allegations. Instead, the opinion seems to consist of Jain's musings regarding (undisclosed) assets, traded in (undisclosed) capacities, on (undisclosed) markets, all of which appear to be distinctly different from what allegedly transpired on Mango Markets. The proposed testimony is therefore excludable because it is irrelevant and of no utility to the jury.

Further, a detour into the legal and regulatory framework of the over-the-counter derivatives and/or equities markets, and the various other unspecified markets alluded to but not specified in the government's disclosure would amount to a substantial waste of time and sow confusion. As one example, over-the-counter trading is, by definition, not done on an exchange and would therefore represent an, at best, awkward comparison for the significance of the terms of service of the Mango Markets exchange. Because the proposed testimony has minimal probative value and would carry a substantial risk of confusion, it should also be precluded under Federal Rule of Evidence 403.

Lastly, it appears that the government has once again introduced this testimony to rebut the straw man "code is law" argument it has incessantly railed against despite the defense's repeated explanation that it has no intention of advancing such a defense. The defense's focus at trial will be on the specific facts and characteristics surrounding the alleged trading, including whether it complied with the rules promulgated by Mango Markets and the manner in which such compliance would have affected Mr. Eisenberg's state of mind and the materiality of his alleged misrepresentations. The government's attempt to introduce expert testimony about (unspecified) laws and regulations applying to other products on other markets with no apparent connection to the assets at issue has no connection to this case and should be rejected.

For all these reasons the Court should exclude Jain's proposed rebuttal testimony.

Respectfully submitted,

*Noam Greenspan*

Noam Greenspan
Sanford Talkin

Hon. Arun Subramanian
Page 5

                                        – and –

                                        Brian Klein
                                        Ashley Martabano
                                        Riley Smith
                                        Waymaker LLP


cc:     all counsel of record (by ECF)