

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

March 12, 2024

**By ECF**
The Honorable Arun Subramanian
Southern District of New York
500 Pearl Street
New York, NY 10007

  Re: <u>United States</u> v. <u>Avraham Eisenberg</u>, 23 Cr. 10 (AS)

Judge Subramanian:

  On February 9, 2024, the Government moved to preclude Mr. Sheridan's proposed testimony. Mr. Sheridan's improper opinions included a guess that Mr. Eisenberg intended to conduct a "Strategic Utilization of Market Mechanics without Code Violation" and a blanket conclusion that "the trades allegedly executed by Mr. Eisenberg were not prohibited by the Mango Markets protocol (including the Mango DAO), as well as the Solana blockchain." (Notice at 2-33.) Additionally, the Government moved to preclude a swath of blame-the-victim opinions that "[l]osses were a natural consequence of Mango Markets having created a token with little utility" and that "[t]he inability of Mango Markets to effectively manage these oracle pricing strategies and liquidity issues unveiled critical deficiencies in the platform's risk management." (*Id.*)

  On February 22, 2024, the Government provided notice of potential testimony that Mr. Jain may provide in anticipation or response to Mr. Sheridan's testimony if the Court denies the Government's motion to preclude (the "Jain Rebuttal Notice"). The defense's attempt to preclude that rebuttal testimony is meritless and exposes the flaws in Mr. Sheridan's proposed testimony.

  **A. Mr. Jain's Response to Mr. Sheridan's Low Liquidity Opinion**

  Mr. Jain intends to respond to Mr. Sheridan's opinions that "Eisenberg's alleged trading actions brought to light the significant impact of low liquidity of certain tokens, notably MNGO"; "[l]osses were a natural consequence of Mango Markets having created a token with little utility"; and "[t]he inability of Mango Markets to effectively manage these oracle pricing strategies and liquidity issues unveiled critical deficiencies in the platform's risk management and market stability framework." (Notice at 3.) As explained in the *Daubert* motion, this proposed testimony impermissibly blames Mango Markets, speculates about the defendant's intent, and miscasts Mango Markets as uniquely susceptible to the type of manipulation the defendant employed. If Mr. Sheridan is permitted to offer these opinions—basically suggesting that Mango Markets had it coming—it is essential that the Government is able to show the jury that market manipulation is feasible across assets to rebut the inference that MNGO was uniquely susceptible because of low liquidity. Mr. Jain intends to do that by explaining that in addition to liquidity, other factors, such as the trader's market power, impact the ability for a trader to manipulate assets with wide ranges

of liquidity.

None of the defense's arguments warrant exclusion, and many apply with equal force to Mr. Sheridan's initial opinion. *First*, the defense faults Mr. Jain for using the term "manipulation." But Mr. Sheridan does that, too, stating that the alleged conduct "required no manipulation of Mango Markets or Solana code" and, more subtly, suggesting that manipulation was a "natural consequence" of MNGO's design. (*Id.*) In any event, the defense argument is wrong. Mr. Jain is not opining that Mr. Eisenberg engaged in manipulation (a legal conclusion) but is instead explaining that manipulation is feasible across an array of assets, and that liquidity is only one factor—rebutting the suggesting that the defendant's trading was a "natural consequence" of a thin market for MNGO. To the extent the Court has concern about the use of the word "manipulation," Mr. Jain can also easily avoid that problem by not using the word and instead expressing his opinion in terms of how traders could control or rig prices, or a similar term. This is not a reason to exclude his opinion altogether.

*Second*, the defense claims that the rebuttal testimony is "a thinly veiled attempt by the government to have its expert testify that Mr. Eisenberg is guilty of commodities manipulation." (Letter at 2.) This is not true. Mr. Sheridan's proposed testimony, if allowed, will leave the jury with the impression that the defendant's trading was somehow the natural result of MNGO being illiquid. Mr. Jain's testimony will rebut that by showing the jury that MNGO is by no means unique in terms of its susceptibility to being controlled or rigged by traders. Again, if the problem is the use of the term "manipulation," that is easily cured without exclusion.

*Third*, the defense's vagueness argument is not a basis for exclusion. For one, Mr. Sheridan's opinion suffers from the same problem by failing to offer any point of comparison for his claims that MNGO was a "low liquidity" token or particularly susceptible to the defendant's scheme. Low liquidity compared to what? Susceptible compared to which other platform? As for Mr. Jain's rebuttal, as disclosed, he intends to explain the economic factors—including and beyond liquidity—that make asset prices susceptible to being controlled by traders. This phenomenon is not confined to any particular type of assets, such that it would require a list of assets he intends to use as an example. The principles are what matters.

*Finally*, the defendant argues that Mr. Jain's research and experience in the field of commodity and financial derivatives as well as his prior experience trading derivative products is not explicitly tied to his knowledge of asset manipulation. That is wrong, and in fact, Mr. Jain's background in trading, market strategies, and modeling, outlined in his curriculum vitae, is far more closely tied to the topic of asset manipulation than Mr. Sheridan's purported reliance on his knowledge, experience, and training in cybersecurity and blockchain technology (including cryptocurrencies). In sum, Mr. Jain's rebuttal testimony is a fair response to Mr. Sheridan's opinions.

### B. Mr. Jain's Response to Sheridan's Oracle Weaknesses Opinion

In another impermissible opinion, Mr. Sheridan intends to testify that there are "inherent weaknesses in the oracle based pricing system" and that Mango Markets had "oracle weaknesses." (Notice at 3.) If Mr. Sheridan is permitted to make those assertions, Mr. Jain intends to rebut that testimony by explaining how the way an oracle is designed can affect the way prices appear on a

platform and mitigate the risk of market manipulation.

The defense's primary basis for excluding this opinion is that it is vague. But the notice regarding Mr. Jain's testimony is a consequence of Mr. Sheridan's notice. Mr. Sheridan refers generally to "weakness in the oracle based pricing system" and "oracle weaknesses," without any explanation of what that means. Mr. Jain intends to explain how oracles can be a strength, not a weakness, in terms of guarding against the type of scheme the defendant deployed. But it is essentially impossible to have a more detailed rebuttal given the lack of specificity in Mr. Sheridan's notice.

The defense is also wrong to claim that there is no relevant testimony about how using multiple oracle inputs reduces the risk of manipulation. Mr. Sheridan intends to testify about oracle weaknesses. In rebuttal, Mr. Jain intends to explain how oracles that rely on multiple pricing inputs are, rather, a strength. That is directly responsive to Mr. Sheridan's testimony, particularly because, as the jury will hear from fact witnesses, the oracle Mango Markets used drew from three different exchanges. If Mr. Sheridan is allowed to testify about what makes an oracle weak, Mr. Jain should be allowed to say what makes one strong.

### C. Mr. Jain's Response to Mr. Sheridan's Opinion that the Code Did Not Prohibit These Trades

Finally, Mr. Sheridan intends to opine that the Mango Markets protocol and Solana blockchain did not "prohibit" these trades and that "Mango Markets could have implemented thorough terms of service addressing actions that were allowed by the code but prohibited by the Protocol's policies." (Notice at 4.) As explained in the Government's motions *in limine* and *Daubert* motions, this testimony is deeply misleading because it inevitably implies that if a prohibition is not in terms of service or computer code, it does not exist. That is simply wrong: Laws and regulations also prohibit conduct. Mr. Jain has extensive experience trading in, studying, and teaching about many markets where trades happen without terms of service that bar manipulation, or computer code that makes it impossible. He is, therefore, qualified to rebut Mr. Sheridan's proposed testimony by explaining that terms of service and code are not the be all and end all of prohibitions. He does not intend to explain legal details about the relevant laws and regulations. But it would be exceptionally misleading for jury to hear from Mr. Sheridan that the defendant's conduct was not prohibited by terms of service or computer code, but not be told the full story that those are not the only things that can govern trading practices.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

by: __/s/ *Thomas Burnett*_____
Thomas Burnett / Peter J. Davis
Assistant United States Attorneys

Tian Huang
Special Assistant United States Attorney