UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>-against-<br><br>AVRAHAM EISENBERG,<br>                                            Defendant. | 23-cr-10 (AS)<br><br>ORDER & OPINION |

ARUN SUBRAMANIAN, United States District Judge:

The Government moves to exclude Defendant Avraham Eisenberg's expert witnesses, Jeremy Sheridan and John Montgomery. Dkts. 80, 91. Eisenberg moves to exclude the proposed rebuttal opinions of the Government's expert, Kapil Jain. Dkt. 90. The Court largely resolved these motions during a hearing on March 14, 2024, but reserved ruling on whether to limit Mr. Sheridan's opinions regarding Mango Markets' vulnerabilities or Mr. Jain's first rebuttal opinion.

## BACKGROUND

On October 30, 2023, Eisenberg served his expert witness disclosure. Dkt. 80-1. On January 12, 2024, Eisenberg provided a supplemental disclosure. Dkt. 80-2. As relevant here, the supplemental disclosure offered proposed testimony by Mr. Sheridan regarding Mango Markets' vulnerabilities and its notice of those vulnerabilities under the following headings:

- Strategic Utilization of Market Mechanics without Code Violation:
- Terms of Service Analysis
- Platform Vulnerabilities Acknowledgment
- Lack of Risk Management and Governance Frameworks

On February 22, 2024, the Government served rebuttal expert disclosures for Mr. Jain. Mr. Jain offered two rebuttal opinions. As relevant here, the first rebuttal opinion was offered "[i]n response to or anticipation of Mr. Sheridan's proposed testimony regarding 'low liquidity impact and oracle price strategy challenges.'" Dkt. 90-1 at 2.

## ANALYSIS

The Government argues that Mr. Sheridan should be excluded from providing testimony on Mango Markets' vulnerabilities because the testimony constitutes improper victim blaming. The Court agrees in part and provides two limitations on Mr. Sheridan's testimony.

First, Mr. Sheridan may not testify regarding the May 2022 security audit, the result of the audit, or the fact that Mango Markets and its users were otherwise on notice of Mango Markets' alleged vulnerabilities. In his brief, Eisenberg states that this proposed testimony is relevant to whether there was a scheme to defraud. Dkt. 86 at 14. And during the hearing, Eisenberg stated that the information was relevant to the materiality and intent elements of wire fraud. But the

Second Circuit has made clear that a victim's negligence is not relevant to either materiality or intent. *See United States v. Isola*, 548 F. App'x 723, 725 (2d Cir. 2013); *United States v. Thomas*, 377 F.3d 232, 243 (2d Cir. 2004). In fact, "[a] victim's negligence negates none of [the] elements" of wire fraud. *United States v. Frenkel*, 682 F. App'x 20, 22 (2d Cir. 2017); *see also United States v. Amico*, 486 F.3d 764, 780 (2d Cir. 2007) (holding that defendant was properly prohibited from arguing "that it is a defense to mail fraud to demonstrate that the victim could have discovered based on external sources that the representation was false").

Under this precedent, the Court sees no relevance in the fact that Mango Markets or its users were on notice of Mango Markets' alleged flaws. And this testimony threatens to confuse the jury by implying that Mango Markets or its users could have and should have prevented Eisenberg's conduct. So Mr. Sheridan cannot testify to these facts, contained in his expert disclosure under "Platform Vulnerabilities Acknowledgment" or in the final bullet point under "Lack of Risk Management and Governance Frameworks."

Second, Mr. Sheridan may not describe Mango Markets as having "vulnerabilities," "systematic vulnerabilities," a "vulnerable ecosystem," "potential vulnerabilities," "critical deficiencies," or "gaps in vulnerability identification, prevention, and response mechanisms." Dkt. 80-2 at 3–5. Nor may he say that losses were a "natural consequence" of Mango Markets' design or that Mango Markets "failed to have" frameworks in place to prevent losses. *Id.* at 3, 5. These descriptions unnecessarily suggest that Mango Markets or its users bear responsibility for any harm because they should have prevented Eisenberg's conduct. But as the Government points out, "a victim's negligence is not a defense under the federal fraud statutes." *Frenkel*, 682 F. App'x at 22.

That said, Eisenberg can introduce the underlying facts related to these alleged vulnerabilities to the extent such facts are relevant to explaining what Eisenberg did. For example, Mr. Sheridan may not testify that "[l]osses were a natural consequence of Mango Markets having created a token with little utility, because there was therefore no other offsetting market or use for the token." Dkt. 80-2 at 3. But Mr. Sheridan may testify that Mango Markets experienced losses, that Mango Markets created a token with little utility, and that there was no offsetting market or use for the token. This testimony may be necessary to help the jury understand Eisenberg's conduct and why his conduct had certain results. But Mr. Sheridan will not be permitted to imply that Mango Markets invited Eisenberg's conduct, that Eisenberg's conduct was an inevitable result of Mango Markets' own weaknesses, or that Mango Markets itself was responsible for falling victim to any alleged fraud. As explained, such implications would be both legally irrelevant and misleading.

Turning to Mr. Jain, the Government represented at the March 14, 2024 hearing that it would withdraw Mr. Jain's first rebuttal opinion if the Court precluded Mr. Sheridan's so-called "victim blaming" testimony. In light of this order, the Government should consider and advise the Court no later than at the final pretrial conference whether it plans to offer any portion of Mr. Jain's first rebuttal opinion.

## CONCLUSION

For the reasons stated above and on the record at the March 14, 2024 hearing, Eisenberg's motion to preclude Mr. Jain's rebuttal opinion is DENIED without prejudice as to Mr. Jain's first rebuttal opinion and GRANTED as to Mr. Jain's second rebuttal opinion. The Government's motions are DENIED insofar as they seek to exclude Mr. Sheridan or Dr. Montgomery from testifying. But Mr. Sheridan's testimony is limited as explained above.

In addition, as addressed at the hearing and based on the understandings and representations made by counsel at the hearing, the experts will not be permitted to offer the following testimony at trial:

- Testimony suggesting that Mango Markets protocol designers had a certain intent (such as to permit or prohibit certain conduct or trades);
- Testimony suggesting that USDC was designed for a certain purpose;
- Testimony that Eisenberg "strategically utilized" Mango Markets' mechanics or code;
- Testimony that Eisenberg or any other traders had a certain intent (*e.g.*, by stating that Eisenberg's conduct "brought to light," "exposed," or "highlighted" vulnerabilities);
- Testimony suggesting that Eisenberg's conduct was lawful because it was permitted by Mango Markets' system or protocols, or because of the lack of terms of service;
- Testimony that offers a definition of "swap" other than the one given in the CEA;
- Testimony as to whether MNGO perpetuals are similar to or different than "conventional" or "traditional" swaps. If the Government opens the door by Mr. Jain comparing MNGO perpetuals to traditional or conventional swaps, then Eisenberg's experts will be allowed to respond in kind; and
- Testimony describing market activity as "natural" or a price as "artificial."

The Clerk of Court is directed to terminate the motions at Dkts. 80, 90, and 91.

SO ORDERED.

Dated: March 19, 2024
New York, New York

ARUN SUBRAMANIAN
United States District Judge