UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

                                :

UNITED STATES OF AMERICA          :

                                :

          - v. -               :              23 Cr. 10 (AS)

                                :

AVRAHAM EISENBERG,          :

                                :

                Defendant.    :

                                :

-------------------------------------------------------------X

<br/>

## <u>THE GOVERNMENT'S REQUESTS TO CHARGE</u>

<br/><br/>

                                          DAMIAN WILLIAMS
                                          United States Attorney for the
                                          Southern District of New York
                                          26 Federal Plaza
                                          New York, New York 10007

<br/><br/>

Thomas S. Burnett
Peter Davis
Assistant United States Attorneys

Tian Huang
Special Assistant United States Attorney
      -Of Counsel-

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

                                 :

UNITED STATES OF AMERICA         :

                                 :

          - v. -             :          23 Cr. 10 (AS)

                                 :

AVRAHAM EISENBERG,         :

                                 :

          Defendant.       :

                                 :

-------------------------------------------------------------X

## REQUESTS TO CHARGE

      Pursuant to Rule 30 of the Federal Rules of Criminal Procedure, the Government respectfully requests that the Court include the following in its charge to the jury.

## TABLE OF CONTENTS

REQUEST NO. 1:      General Requests...................................................................................................1

REQUEST NO. 2:      Summary of the Indictment...................................................................................2

REQUEST NO. 3:      Multiple Counts .....................................................................................................3

REQUEST NO. 4:      Count One – Commodities Fraud – General Instruction and Elements ..............4

REQUEST NO. 5:      Count One – Commodities Fraud – First Element Overview ...............................5

REQUEST NO. 6:      Count One – Commodities Fraud – First Element – Manipulation........................6

REQUEST NO. 7:      Count One – Commodities Fraud – First Element – Misstatements and Fraud ...............8

REQUEST NO. 8:      Counts One – Commodities Fraud – Second Element .......................................11

REQUEST NO. 9:      Count One – Commodities Fraud – Second Element – Mixed Swap (If Applicable)............14

REQUEST NO. 10:     Count One – Commodities Fraud – Third Element – Intent ................................15

REQUEST NO. 11:     Count Two – Swap Manipulation – General Instruction and Elements ..............18

REQUEST NO. 12:     Count Two – Swap Manipulation – First Element – Ability to Influence Prices.............19

REQUEST NO. 13:     Count Two – Swap Manipulation – Second Element – Artificial Price ...............20

REQUEST NO. 14:     Count Two – Swap Manipulation – Third Element – Causation .........................22

REQUEST NO. 15:     Count Two – Swap Manipulation – Fourth Element – Intent .............................23

REQUEST NO. 16:     Count Two – Swap Fraud – Attempted Swap Manipulation - Elements ...........24

REQUEST NO. 17:     Count Two – Swap Fraud – Attempted Swap Manipulation – First Element .............25

REQUEST NO. 18:     Count Two – Swap Fraud – Attempted Swap Manipulation – Second Element............26

REQUEST NO. 19:     Count Three – Wire Fraud – General Instruction and Elements ........................27

REQUEST NO. 20:     Count Three – Wire Fraud – First Element........................................................28

REQUEST NO. 21:     Count Three – Wire Fraud – Second Element....................................................31

REQUEST NO. 22:     Count Three – Wire Fraud – Third Element.......................................................34

REQUEST NO. 23:     Terms of Service (If Applicable) ........................................................................36

REQUEST NO. 24:     Venue ....................................................................................................................37

REQUEST NO. 25:     Presence of Counsel .............................................................................................39

REQUEST NO. 26:     False Exculpatory Statements ..............................................................................40

REQUEST NO. 27:     Variance in Dates .................................................................................................41

REQUEST NO. 28:     Expert Witness ......................................................................................................42

REQUEST NO. 29:     Law Enforcement Witnesses.................................................................................43

REQUEST NO. 30:     Preparation of Witnesses......................................................................................44

REQUEST NO. 31:     Uncalled Witnesses – Equally Available To Both Sides.....................................45

REQUEST NO. 32:     Other Individuals Not on Trial ............................................................................46

REQUEST NO. 33:     Defendant's Testimony.........................................................................................47

REQUEST NO. 34:     Defendant's Right Not to Testify .........................................................................48

REQUEST NO. 35:     Particular Investigative Techniques Not Required...............................................49

REQUEST NO. 36:     Use of Evidence Obtained Pursuant to Searches.................................................50

REQUEST NO. 37:     Use of Charts and Summaries ..............................................................................51

REQUEST NO. 38:   Stipulations ................................................................................................... 52

REQUEST NO. 39:   Transcripts ..................................................................................................... 53

REQUEST NO. 40:   Redactions ...................................................................................................... 54

REQUEST NO. 41:   Concluding Remarks ...................................................................................... 55

REQUEST NO. 1:   General Requests

The Government respectfully requests that the Court give its usual instructions to the jury on the following matters:

a.   Function of Court and Jury.

b.   Indictment Not Evidence.

c.   Statements of Court and Counsel Not Evidence.

d.   Rulings on Evidence and Objections.

e.   Burden of Proof and Presumption of Innocence.

f.   Reasonable Doubt.

g.   Government Treated Like Any Other Party.

h.   Definitions, Explanations, and Example of Direct and Circumstantial Evidence.

i.   Inferences.

j.   Credibility of Witnesses.

k.   Jury's Recollection Controls.

l.   Right to See Exhibits and Have Testimony Read During Deliberations.

m.   Sympathy: Oath of Jurors.

n.   Punishment is Not to Be Considered by the Jury.

o.   Verdict of Guilt or Innocence Must Be Unanimous.

REQUEST NO. 2:   Summary of the Indictment

The defendant, AVRAHAM EISENBERG, has been charged in what is called an Indictment. An Indictment is simply an accusation. It is not evidence. The Indictment contains three counts, or charges. In a few moments, I will instruct you on each of these charges in more detail. At the outset, however, let me instruct you that in your deliberations and in reaching your verdict, you must consider each count separately. You must return a separate verdict as to each count.

Count One charges the defendant with committing commodities fraud by engaging in a scheme to fraudulently steal cryptocurrency from the cryptocurrency exchange known as Mango Markets, including through market manipulation that deceptively inflated the value of his assets and by misrepresenting his intentions to borrow cryptocurrency from the platform. Count Two charges the defendant with committing swap manipulation by artificially inflating price of MNGO perpetuals on Mango Markets. And Count Three charges the defendant with committing wire fraud by engaging in a scheme to fraudulently steal cryptocurrency from Mango Markets, including by deceptively misrepresenting the value of his assets on Mango Market and misrepresenting his intentions to borrow cryptocurrency from the platform.

<u>REQUEST NO. 3:</u>    <u>Multiple Counts</u>

Each count charges a different crime.  You must consider each count of the Indictment separately, and you must return a separate verdict as to each Count.  The case on each count stands or falls upon the proof or lack of proof with respect to that count.  Your verdict on one count should not control your decision as to any other count.  I am now going to discuss the counts of the Indictment.

Adapted from Sand, <u>Modern Federal Jury Instructions</u>, Instr. 3-8.

3

<u>REQUEST NO. 4:</u>   <u>Count One – Commodities Fraud – General Instruction and Elements</u>

As I said, Count One charges AVRAHAM EISENBERG with committing commodities fraud by engaging in a scheme to fraudulently obtain cryptocurrency from Mango Markets, including through market manipulation that deceptively inflated the value of his assets and by misrepresenting his intentions to borrow cryptocurrency from the platform.  To sustain its burden of proof with respect to the offense charged in Count One, the Government must prove beyond a doubt the following three elements:

*First*, the defendant did any one or more of the following: (i) employed a manipulative device, scheme, or artifice to defraud; or (ii) made an untrue statement of a material fact or omitted to state a material fact which made what said, under the circumstances, misleading; or (iii) engaged in an act, practice, or course of business that operated, or would operate, as a fraud or deceit.

*Second*, the scheme, untrue statement, act, practice, or course of conduct was in connection with a swap, or a contract of sale of any commodity in interstate or foreign commerce.

*Third*, that the defendant acted knowingly, willfully, and with an intent to defraud.

> Adapted from 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1, and the Honorable Lewis A. Kaplan in <u>United States</u> v. <u>Bankman-Fried</u>, 22 Cr. 673 (Nov. 2, 2023), as well as from the Honorable Jack B. Weinstein's statement of the elements in <u>Commodity Futures Trading Comm'n</u> v. <u>McDonnell</u>, 332 F. Supp. 3d 641, 717 (E.D.N.Y. 2018).

4

<u>REQUEST NO. 5:</u>   Count One – Commodities Fraud – First Element Overview

The first element of commodities fraud is that the defendant did any one or more of the following: (1) employed a manipulative device, scheme, or artifice to defraud; (2) made an untrue statement of a material fact or omitted to state a material fact which made what was said, under the circumstances, misleading; or (3) engaged in an act, practice, or course of business that operated, or would operate, as a fraud or deceit.

In proving Count One, it is not necessary for the Government to prove all three types of fraudulent conduct I have described.  Any one will be sufficient to satisfy this element of the offense.  You must, however, be unanimous as to which type of unlawful conduct the defendant committed.

I will now explain a number of terms used in this provision.

> Adapted from 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1, and the Honorable Lewis A. Kaplan in <u>United States</u> v. <u>Bankman-Fried</u>, 22 Cr. 673 (Nov. 2, 2023), as well as from the Honorable Jack B. Weinstein's statement of the elements in <u>Commodity Futures Trading Comm'n</u> v. <u>McDonnell</u>, 332 F. Supp. 3d 641, 717 (E.D.N.Y. 2018).

REQUEST NO. 6:   Count One – Commodities Fraud – First Element – Manipulation

As I just instructed you, the first type of conduct that can constitute commodities fraud is employing a manipulative device, scheme, or artifice to defraud.

Manipulation refers to intentional or willful conduct designed to deceive or defraud by controlling or artificially affecting some type of price.  Here, the Government alleges that the defendant intentionally manipulated the relative value of MNGO and USDC, in order to manipulate the price of MNGO perpetuals on Mango Markets.  Because market participants ordinarily assume that prices, such as the prices of cryptocurrencies or perpetuals, are determined by the natural interplay of supply and demand, an act is manipulative if it is designed to deceive or defraud others by sending a false pricing signal to the market.  Consequently, conduct that is designed to deceive or defraud others by controlling or artificially affecting those prices is prohibited.

An act can be manipulative even if it is conducted on the open market or through ordinary market activity, such as by placing an order to buy or sell, or by actually buying and selling.  In some cases, a defendant's "scienter," that is, a defendant's intent to manipulate a price, is what distinguishes legitimate trading from manipulative trading.  Similarly, in some cases, the determination of whether activity is manipulative can be made only by placing the activity in context and considering whether it is part of a pattern of trading activity.  What matters is whether the defendant intended to inject a false price signal into the market or to mislead others by artificially affecting market activity.  The question you should ask is whether the defendant acted with the intent to deceive or defraud others by sending a false pricing signal into the market.

In assessing this issue, you may consider whether, absent an intent to deceive, the defendant would have conducted the transactions at issue in this case at the times and in the amounts that he did.  If the answer is "no," that is evidence that those transactions were manipulative.

> Adapted from the charge of the Honorable Denise L. Cote in SEC v. Vali Management Partners, 17 Cv. 1789 (S.D.N.Y. Nov. 7, 2019), the charges of the Honorable Edgardo Ramos in United States v. Cole, 19 Cr. 869 (Nov. 22, 2022), the Honorable Jed S. Rakoff in United States v. Petit, 19 Cr. 850 (Nov. 16, 2020), and the Honorable Lewis L. Liman in United States v. Phillips, 22 Cr. 138 (Oct. 24, 2023).

> "Open-market transactions that are not inherently manipulative may constitute manipulative activity when accompanied by manipulative intent."  Set Capital LLC v. Credit Suisse Group AG, 996 F.3d 64, 77 (2d Cir. 2021) (); see ATSI Commc'ns Inc. v. Shaar Fund, Ltd., 493 F.3d 87 (2d Cir. 2007) ("The deception arises from the fact that investors are misled to believe that prices at which they purchase and sell securities are determined by the natural interplay of supply and demand, not rigged by manipulators."); United States v. Royer, 549 F.3d 886, 899 (2d Cir. 2008) (affirming jury instruction that "any conduct designed to deceive or defraud investors by controlling or artificially affecting the price of securities is prohibited"). See also Loginovskaya v. Batratchenko, 764 F.3d 266, 272 (2d Cir. 2014) ("[C]ourts have looked to the securities laws when called upon to interpret similar provisions of the Commodity Exchange Act."); C.F.T.C. v. Amaranth Advisors, 554 F. Supp. 2d 523, 533-34 (S.D.N.Y. 2008) (applying law finding open-market transactions manipulative to CEA context); United States v. Phillips, 2023, WL 5671227, at *11 (S.D.N.Y. Sept. 1, 2023) (same).

> The language regarding a "but for" test is adapted from S.E.C. v. Masri, 523 F. Supp. 2d 361, 372 (S.D.N.Y. 2007) and the instructions of the Honorable Lewis L. Liman in United States v. Phillips, 22 Cr. 138 (Oct. 24, 2023).

<u>REQUEST NO. 7:</u>    <u>Count One – Commodities Fraud – First Element – Misstatements and Fraud</u>

 Recall that, for the first element of Count One, there are three ways the government can prove the element.  I have just described the first way: a manipulative scheme to defraud.  There are two other ways the Government can establish the first element: By proving that the defendant made an untrue statement of material fact, or omitted to state a material fact which made what was said misleading.  Or by proving that the defendant engaged in an act, practice, or course of business that operated, or would operate, as a fraud or deceit.

 A statement, representation, claim, or document is false if it is untrue when made and was then known to be untrue by the person making it or causing it to be made.  A representation or statement is fraudulent if it was made with the intention to deceive.  A statement may also be false if it contains half-truths or if it conceals material facts in a manner that makes what is said or represented deliberately misleading.  This includes statements that may be literally true but that nevertheless create a materially misleading impression.  The deception need not be based upon spoken or written words alone.  The arrangement of the words, or the circumstances in which they are used, may convey the false and deceptive appearance.  If there is deception, the manner in which it is accomplished does not matter.

 As for acts, practices, or courses of business that operate as a fraud or deceit, fraud is a general term that embraces all efforts and means that individuals devise to deceive and take advantage of others.  It includes all kinds of manipulative and deceptive acts, whether by making false statements or otherwise.  The fraud or deceit need not involve a specific oral or written statement.

The fraud, fraudulent representation, or omission must relate to a material fact or matter. We use the word "material" to distinguish between the kinds of statements we care about and those that are of no real importance. Matters that are "material" may also include fraudulent half-truths or omissions of material fact. A material fact is one that a reasonable person would have considered important in making a decision. That means that if you find a particular statement of fact or omission to have been untruthful or misleading, before you can find that statement or omission to be material, you must also find that the statement or omission was one that would have mattered to a reasonable person.

Any testimony that you may have heard from any witness with respect to whether a particular fact would or would not have been important reflects that witness's individual views. Although you may consider such testimony, it is not controlling. It is for you to determine whether a particular fact would have been significant to a reasonable person.

In considering whether a statement or omission was material, let me caution you that it is not a defense if the material misrepresentation or omission would not have deceived a person of ordinary intelligence. Once you find that the offense involved the making of material misrepresentations or omissions of material facts, it does not matter whether the intended victims were careless, gullible, or even negligent, or that they might have uncovered the scheme on their own had they probed more deeply, because the law protects the gullible and unsophisticated as well as the experienced investor.

I have now instructed you on the three forms of conduct that can establish the first element of Count One. Now that I have gone through them, I remind you that any one will be sufficient to satisfy this element of the offense. You must, however, be unanimous as to which type of unlawful conduct the defendant committed.

With respect to all three forms of conduct, it is not necessary for the Government to prove that a fraudulent or deceptive scheme actually succeeded, that any person was actually deceived, or that any person lost money or property.  Nor do you need to find that the defendant profited from the scheme.  You must focus on whether there was such a fraudulent scheme, not the consequences of the scheme, although proof concerning accomplishment of the goals of the scheme may be persuasive evidence of the existence of the scheme itself.

> Adapted from the charges of the Honorable Edgardo Ramos in United States v. Milton, 21 Cr. 478 (Sept. 12, 2022); the Honorable Edgardo Ramos in United States v. Cole, 19 Cr. 869 (Nov. 22, 2022); the Honorable Lewis A. Kaplan in United States v. Gatto, 17 Cr. 686 (Oct. 1, 2018), the Honorable Raymond J. Dearie in United States v. Khalupsky, 15 Cr. 381 (July 6, 2018), the Honorable Lewis A. Kaplan in United States v. Bankman-Fried, 22 Cr. 673 (Nov. 2, 2023), and the Honorable Jed S. Rakoff in United States v. Petit, 19 Cr. 850 (Nov. 16, 2020).

REQUEST NO. 8:   Counts One – Commodities Fraud – Second Element

The second element of commodities fraud is that the defendant committed his scheme in connection with a "swap" or a contract of sale of a "commodity" in interstate commerce.  Here, the Government has argued that MNGO Perpetual is a "swap" and that the defendant's sales of USDC to purchase MNGO were contracts of sale of a "commodity" in interstate commerce.

Let me define the relevant terms for you.

A "commodity" is any good, article, service, right, or interest in which contracts for future delivery are dealt.  A "contract for future delivery," which is also called a "futures contract," is an agreement to buy or sell a particular commodity at a specific price in the future.  A virtual currency or cryptocurrency may qualify as a "commodity."

A "swap" is an agreement between two parties to exchange payments with each other based on the value of one or more rates, commodities, indices, or other financial or economic interests.  A swap transfers between the two parties, in whole or in part, the risk of changes in value of the things underlying the swap, without actually exchanging those things.

A "contract of sale" of a commodity is a sale or agreement to sell a commodity.

The requirement that the fraudulent conduct be "in connection with" a "swap," or contract of sale of a "commodity" is satisfied so long as there was some nexus or relation between the allegedly fraudulent or manipulative conduct and the swap or contract of sale of a commodity.  A fraudulent scheme may be "in connection with" a "swap" or a contract of sale of a "commodity" if you find the scheme coincides with a "swap" or a contract of sale of a "commodity," or if the scheme's accomplishment necessarily involves a "swap" or a contract of sale of a "commodity." The manipulative scheme need not relate to the purchase or sale of the swap.

Adapted from the definitions of "commodities" and "swaps" as defined in 7 U.S.C. § 1a(9), and from the instructions of the

11

Honorable Lewis A. Kaplan in United States v. Bankman-Fried, 22 Cr. 673 (Nov. 2, 2023), and the Honorable Lewis J. Liman in United States v. Phillips, 22 Cr. 138 (Oct. 24, 2023). Courts have repeatedly held that virtual currencies qualify as "commodities." See, e.g., United States v. Reed, No. 20 Cr. 500 (JGK), 2022 WL 597180, at *4 (S.D.N.Y. Feb. 28, 2022) ("under the plain language of the CEA, cryptocurrencies fall within the definition of commodities"); Commodity Futures Trading Comm'n v. Gelfman Blueprint, Inc., No. 17-7181 (PKC), 2018 WL 6320656, at *8 (S.D.N.Y. Oct. 16, 2018) ("Virtual currencies such as Bitcoin are encompassed in the definition of 'commodity' under Section 1a(9) of the Act"). Therefore, it is appropriate to instruct the jury that a virtual currency may be a "commodity." The CFTC has also concluded that perpetual futures contracts, like those at issue in this case, are "swaps," as Judge Kaplan has done. See CFTC v. HDR Global Trading Ltd., et al., 20 Cv. 8132 (LTS), Dkt. 91 (S.D.N.Y. May 5, 2022) ("In accordance with Section 1(a)(47)(iii) and (vi) of the Act . . . the swap solicited or accepted by BitMEX included 'perpetual swaps' or 'perpetual contracts,'" and that BitMEX "operated a facility for the trading of swaps").

Interpreting the "in connection with" language in Rule 10b-5, Courts have held that there is such a connection when a scheme "coincides" with, or "necessarily" involves, a purchase or sale of securities. See S.E.C. v. Zandford, 535 U.S. 813, 322 (2002) (Stevens, J.) ("It is enough that the scheme to defraud and the sale of securities coincide."); Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit, 547 U.S. 71, 89 (2006) (Stevens, J.) ("Under our precedents, it is enough that the fraud alleged 'coincide' with a securities transaction—whether by the plaintiff or by someone else."); United States v. O'Hagan, 521 U.S. 642, 655-56 (1997) (holding "in connection with" element "satisfied because the fiduciary's fraud is consummated, not when the fiduciary gains the confidential information, but when, without disclosure to his principal, he uses the information to purchase or sell securities"); see also S.E.C. v. Pirate Investor LLC, 580 F.3d 233, 244 (4th Cir. 2009) ("Of course, to say that a fraud is 'in connection with' a securities transaction where it 'coincides' with that transaction hardly clarifies the matter. We find direction in several factors. . . . Those factors include, but are not limited to . . . whether a securities sale was necessary to the completion of the fraudulent scheme[.]"); Rowinski v. Salomon Smith Barney Inc., 398 F.3d 294, 302 (3d Cir. 2005) ("For this purported scheme to work, investors must purchase the misrepresented securities."). This law is persuasive in the context of the Commodity Exchange Act, with the exception that there is no

purchase or sale requirement under that statute.  <u>Loginovskaya</u> v.
<u>Batratchenko,</u> 764 F.3d 266, 272 (2d Cir. 2014); <u>see</u> 76 Fed. Reg.
41, 398, 41,406 (recognizing no purchase and sale requirement).

REQUEST NO. 9:   Count One – Commodities Fraud – Second Element – Mixed Swap
(If Applicable)

During the trial, you have heard the defense argue that MNGO Perpetuals are not swaps subject to the commodities-fraud laws because MNGO is a "security."  I instruct you that, if you find the Government has proven beyond a reasonable doubt that MNGO Perpetuals are "swaps" as I defined that term a moment ago, then whether or not MNGO is a "security" is irrelevant if you find either of the following:

First, that MNGO Perpetuals are based, in part, on the value of USDC, and that USDC is a commodity, currency, or a financial or economic interest or property of any kind; or

Second, that MNGO Perpetuals are based, in part, on any rate, index, or quantitative measure other than the price of MNGO, including a "funding" rate that is calculated based on the mid-price of bids and asks on Mango Markets.

If you find either of these two things beyond a reasonable doubt, then the argument that MNGO is a "security" is irrelevant to whether MNGO Perpetuals are "swaps" subject to the commodities-fraud statute.

As I instructed you earlier, the defendant's conduct may also be subject to the commodities-fraud laws if you find that the Government has proven, beyond a reasonable doubt, that the alleged fraud and manipulation was in connection with a contract of sale of a commodity.  This is separate from the question whether MNGO Perpetuals are swaps.

Adapted from the definitions of "mixed swap" as defined in 7 U.S.C.
§ 1a(47)(D).

14

REQUEST NO. 10:  Count One – Commodities Fraud – Third Element – Intent

The third element of commodities fraud is that the defendant participated in the manipulative scheme knowingly, willfully, and with the intent to defraud.

To act "knowingly" means to act voluntarily and deliberately, rather than mistakenly or inadvertently.

To act "willfully" means to act voluntarily and with a wrongful purpose.

To act with "intent to defraud" means to act knowingly and with an intent to deceive.

In order for you to find the defendant guilty of commodities fraud, the Government need only prove that the defendants acted with an intent to deceive, manipulate or defraud. The Government need not show that the defendant acted with an intent to cause harm.

Because the defendant must have acted willfully and with intent to defraud, it follows that good faith on the part of the defendant is a complete defense to the charge.  As I have instructed you, one aspect of Count One alleges that the defendant engaged in manipulation, which is conduct designed to deceive or defraud by controlling or artificially affecting some type of price.  If the defendant honestly believed that his actions were not to control or artificially affect a price, but were instead solely for some other, lawful purpose, that would be acting in good faith, which is a complete defense to the charge of commodities fraud.  Similarly, an honest belief on the part of the defendant that his representations or conduct were true or not deceptive is a complete defense, however inaccurate or deceptive the representations or conduct may turn out to be.  A defendant has no burden to establish a defense of good faith.  The burden is on the Government to prove fraudulent intent and consequent lack of good faith beyond a reasonable doubt.

However, in considering whether or not the defendant acted in good faith, you are instructed that an honest belief on the part of the defendant, if such a belief existed, that ultimately

15

everything would work out does not necessarily mean the defendant acted in good faith.  No amount of honest belief on the part of the defendant that others ultimately would not be harmed, or would get their money back, will excuse his conduct.  In addition, the Government need not prove that the intent to defraud was the only intent of the defendant.  A defendant may have the required intent to defraud even if the defendant was motivated by other lawful purposes as well.

Direct proof of knowledge and fraudulent intent is almost never available.  It would be a rare case where it could be shown that a person wrote or stated that as of a given time in the past he committed an act with fraudulent intent.  Such direct proof is not required.  Instead, the ultimate facts of knowledge and intent, though subjective, may be established by circumstantial evidence, based upon a person's words, his conduct, his acts, and all the surrounding circumstances disclosed by the evidence and the rational or logical inferences that may be drawn from them. You may also infer, but are not required to infer, that people intend the natural and probable consequences of their actions.  As I instructed you earlier, circumstantial evidence, if believed, is of no less value than direct evidence.

> Adapted from the charges of the Honorable Edgardo Ramos in United States v. Milton, 21 Cr. 478 (Sept. 12, 2022); the Honorable Edgardo Ramos in United States v. Cole, 19 Cr. 869 (Nov. 22, 2022); the Honorable Lewis A. Kaplan in United States v. Gatto, 17 Cr. 686 (Oct. 1, 2018), the Honorable Lewis A. Kaplan in United States v. Bankman-Fried, 22 Cr. 673 (Nov. 2, 2023), and the Honorable Jed S. Rakoff in United States v. Petit, 19 Cr. 850 (Nov. 16, 2020).
>
> In the context of securities fraud, "intent to deceive, manipulate or defraud" does not require showing "intent to harm."  See United States v. Litvak, 808 F.3d 160, 178 (2d Cir. 2015).
>
> Proving "willfulness" does "not require a showing that the defendant had awareness of the general unlawfulness of his conduct, but rather that he had an awareness of the general wrongfulness of his conduct."  United States v. Kaiser, 609 F.3d 556, 569 (2d Cir.

16

2010); accord United States v. Dixon, 536 F.2d 1388, 1395 (2d Cir. 1976) ("A person can willfully violate an SEC rule even if he does not know of its existence."); United States v. Petit, 2022 WL 3581648, at *4 (2d Cir. 2022) (upholding instruction that "willfully" means "acted deliberately and with a bad purpose" because "willfulness in a criminal securities fraud case requires proof that a defendant had an awareness of the general wrongfulness of his conduct, not that he knew he was committing a specific legal violation"); United States v. George, 386 F.3d 383, 393 (2d Cir. 2004) ("[T]he criminal statutory *mens rea* term 'willful' is interpreted to require only the minimum *mens rea* necessary to separate innocent from wrongful conduct."); see also United States v. Tarallo, 380 F.3d 1174, 1188 (9th Cir. 2004) (holding that "willfully" means "that one knows [his conduct] to be wrongful[,]" not "that the conduct was unlawful"). "[C]ourts have looked to the securities laws when called upon to interpret similar provisions of the Commodity Exchange Act." See Loginovskaya v. Batratchenko, 764 F.3d 266, 272 (2d Cir. 2014); Commodity Futures Trading Comm'n v. Oystacher, 203 F. Supp. 3d 934, 950 (N.D. Ill. 2016) (applying the *scienter* standard for securities fraud to Rule 180.1).

For specific intent crimes, such as those charged in the Indictment, a defendant forms the requisite intent if the intent to commit the crime was any of his objectives . Anderson v. United States, 417 U.S. 211, 225-26 (1974). The forbidden "specific intent need not be the actor's sole, or even primary, purpose." United States v. Technodyne LLC, 753 F.3d 368, 385 (2d Cir. 2014) (collecting cases); accord United States v. Gatto, 986 F.3d 104, 129 n.12 (2d Cir. 2021); United States v. Pizarro, 7 Cr. 151 (AJN), 2019 WL 3406603, at *10 (S.D.N.Y. July 29, 2019).

17

<u>REQUEST NO. 11:</u>  <u>Count Two – Swap Manipulation – General Instruction and Elements</u>

I will now turn to Count Two, which charges AVRAHAM EISENBERG with committing swap manipulation and attempted swap manipulation.  Count Two charges that the defendant engaged in swap manipulation and attempted swap manipulation by artificially inflating the price of MNGO perpetuals on Mango Markets.

Let me begin with swap manipulation and then turn later to attempted swap manipulation. With respect to swap manipulation, to sustain its burden of proof with respect to the offense charged in Count Two, the Government must prove beyond a doubt the following four elements:

*First*, the defendant possessed an ability to influence the price of a swap, which here refers to prices of MNGO perpetuals on Mango Markets;

*Second*, an artificial price of a swap existed;

*Third*, the defendant caused the artificial price; and

*Fourth*, the defendant specifically intended to manipulate.

I will discuss each in turn.

> Adapted from the text of Title 7, United States Code, Section 13(a)(2) and <u>In re Amaranth Natural Gas Commodities Litig.</u>, 730 F.3d 170 (2d Cir. 2013).
>
> Willfulness is not an element of commodities manipulation. <u>Compare</u> 7 U.S.C. § 13(a)(2) (criminalizing manipulation and attempted manipulation), <u>with</u> 7 U.S.C. § 13(a)(4) and (5) (criminalizing "willful" violations of regulations and "willful" misrepresentations).

18

<u>REQUEST NO. 12:</u>  <u>Count Two – Swap Manipulation – First Element – Ability to Influence Prices</u>

The first element of swap manipulation is that the defendant had the ability to influence the price of a swap.  Here, this means that the Government must prove beyond a reasonable doubt that the defendant had the ability to influence the prices of MNGO perpetuals on Mango Markets. There are many ways that a person can have the ability to influence prices.  Factors that you may consider include, but are not limited to: the size of the defendant's positions; the liquidity in the relevant markets; the magnitude and timing of the defendant's trading, including whether the defendant engaged in trading in a concentrated manner; and whether the defendant's trading in fact influenced prices.

> Adapted from the text of Title 7, United States Code, Section 13(a)(2) and <u>In re Amaranth Natural Gas Commodities Litig.</u>, 730 F.3d 170 (2d Cir. 2013).
>
> There are many ways that a person or entity can have the ability to influence prices, and courts consider a number of factors about the size of the defendant's positions, the magnitude and timing of its trading, conditions in the market, and the actual effect on prices.  <u>See e.g.</u>, <u>C.F.T.C.</u> v. <u>Parnon Energy Inc.</u>, 875 F. Supp. 2d 233 (S.D.N.Y. 2012) (explaining that ability to influence prices is "fact-intensive"); <u>C.F.T.C.</u> v. <u>Enron Corp.</u>, 2004 WL 594752, at *5-6 (S.D. Tex. Mar. 10, 2004) (finding that concentrated trading can give the ability to influence prices); <u>C.F.T.C.</u> v. <u>Kraft Food Grp.</u>, 153 F. Supp. 3d 996, 1018-19 (N.D. Ill. 2015) (collecting cases regarding different ways in which defendants may have the ability to influence prices).

REQUEST NO. 13:  Count Two – Swap Manipulation – Second Element – Artificial Price

The second element of swap manipulation that the Government must prove beyond a reasonable doubt is that there was an artificial price—here, an artificially inflated price for MNGO perpetuals on Mango Markets.  An artificial price is a price that does not reflect the natural forces of supply and demand.  A price may be artificial if it is higher or lower than it would have been otherwise, such as absent the defendant's conduct.  In assessing whether the price is different than it would have been otherwise, you may consider factors such as historical prices, historical trading volumes, and other factors that bear on normal supply and demand.

However, the fact that the price is different than it would have been otherwise is not, by itself, sufficient to prove the existence of an artificial price.  Prices in markets are supposed to be determined by the natural interplay of supply and demand, which means people buying and selling for legitimate reasons.  When a price is affected by a factor that is not legitimate—such as the activity of an individual buying or selling to control or distort a price—the resulting price may be artificial.  Thus, in establishing that an artificially inflated price existed for MNGO Perpetuals, the Government must prove not only that those prices were higher than they otherwise would have been, but also whether they were higher because the defendant traded with the intention to control or distort the price, rather than for a legitimate reason.

> Adapted from the text of Title 7, United States Code, Section 13(a)(2) and In re Amaranth Natural Gas Commodities Litig., 730 F.3d 170 (2d Cir. 2013).

> "[A] price may be artificial if it is higher than it would have been absent Defendants' conduct." C.F.T.C. v. Parnon Energy Inc., 875 F. Supp. 2d 233, 247 (S.D.N.Y. 2012); accord C.F.T.C. v. Kraft Food Grp., 153 F. Supp. 3d 996, 1022 (N.D. Ill. 2015); In re Commodity Exchange, Inc., 213 F. Supp. 3d 631, 669-70 (S.D.N.Y. 2016) (finding allegation that defendant moved price sufficient to support artificiality).

"[W]hen a price is affected by a factor which is not legitimate, the resulting price is necessarily artificial.  Thus, the focus should not be as much on the ultimate price as on the nature of the factors causing it." C.F.T.C. v. Kraft Food Grp., 153 F. Supp. 3d 996, 1022 (N.D. Ill. 2015) (quoting Indiana Farm Bureau Coop. Ass'n, 1982 WL 30249, at *6 (C.F.T.C. Dec. 17, 1982)); accord Mish Int'l Monetary Inc. v. Vega Capital London, Ltd., 596 F. Supp. 3d 1076, 1095-96 (N.D. Ill. 2022); C.F.T.C. v. Enron Corp., 2004 WL 594752, at *5-6 (S.D. Tex. Mar. 10, 2004); see C.F.T.C. v. Parnon Energy Inc., 875 F. Supp. 2d 233, 247 (S.D.N.Y. 2012) (finding allegation of artificiality sufficient when "prices did not reflect the legitimate forces of supply and demand because they resulted, at least in part, from the defendant's price-distorting conduct"); In re Term Commodities Cotton Futures Litig., 2020 WL 5849142, at *31 (S.D.N.Y. Sept. 30, 2020) ("When determining if a price is artificial, courts must search for those factors which are extraneous to the pricing system, are not a legitimate part of the economic pricing of the commodity, or are extrinsic to that commodity market").

"Open-market transactions that are not inherently manipulative may constitute manipulative activity when accompanied by manipulative intent."  Set Capital LLC v. Credit Suisse Group AG, 996 F.3d 64, 77 (2d Cir. 2021); accord United States v. Regan, 937 F.2d 823, 829 (2d Cir. 1991); United States v. Royer, 549 F.3d 886, 900 (2d Cir. 2008); ATSI Commc'ns Inc. v. Shaar Fund, Ltd., 493 F.3d 87 (2d Cir. 2007); Gurary v. Winehouse, 190 F.3d 37, 45 (2d Cir. 1999); see C.F.T.C. v. Amaranth Advisors, 554 F. Supp. 2d 523, 533-34 (S.D.N.Y. 2008) (applying case law finding open-market transactions manipulative to CEA context); United States v. Phillips, 2023, WL 5671227, at *11 (S.D.N.Y. Sept. 1, 2023) (same).

<u>REQUEST NO. 14:</u>  <u>Count Two – Swap Manipulation – Third Element – Causation</u>

The third element of swap manipulation that the Government must prove beyond a reasonable doubt is that the defendant caused the artificial prices.  To find that the defendant caused the artificial prices, you must find that those prices would not have existed on the date at issue, but for the defendant's conduct.  To make this finding, you do not need to find that the defendant's conduct was the only factor that brought about the artificial prices.  It can be sufficient if the defendant's conduct caused the artificial prices in combination with other factors, so long as you find that the artificial prices would not have existed on the date they did, absent the defendant's conduct.

> Adapted from the text of Title 7, United States Code, Section 13(a)(2) and <u>In re Amaranth Natural Gas Commodities Litig.</u>, 730 F.3d 170 (2d Cir. 2013).
>
> "It is enough, for purposes of a finding of manipulation . . . that [defendants'] action contributed to the price movement."  <u>C.F.T.C.</u> v. <u>Parnon Energy Inc.</u>, 875 F. Supp. 2d 233, 248 (S.D.N.Y. 2012); <u>accord In re Term Commodities Cotton Futures Litig.</u>, 2020 WL 5849142, at *31 (S.D.N.Y. Sept. 30, 2020).
>
> This charge is adapted from charges instructing juries on when death results from a narcotics offense, which involves an analogous causation inquiry.  <u>See</u> <u>Burrage</u> v. <u>United States</u>, 134 S. Ct. 881 (2014) (discussing requirement for "but-for" causation in criminal law, in the context of death-resulting narcotics offenses).  The specific language is adapted from the charge of the Honorable Katherine B. Forrest in <u>United States</u> v. <u>Morales</u>, 15 Cr. 879 (KBF) (S.D.N.Y. 2017) and the Honorable Richard M. Berman in <u>United States</u> v. <u>Beqiraj</u>, 17 Cr. 315 (RMB) (S.D.N.Y. 2018).

<u>REQUEST NO. 15:</u>  <u>Count Two – Swap Manipulation – Fourth Element – Intent</u>

The fourth element of swap manipulation that the Government must prove beyond a reasonable doubt is that the defendant acted with the specific intent to manipulate.  To satisfy this element, the Government must prove that the defendant acted with the purpose of causing a price that did not reflect the legitimate forces of supply and demand.  Mere knowledge on the part of the defendant that his actions might affect prices is not sufficient.  Rather, the Government must prove that the defendant acted with the purpose of causing a price that would not otherwise have existed through the natural interplay of supply and demand.

In assessing this issue, you may consider whether, absent an intent to manipulate the price of MNGO perpetuals, the defendant would have conducted the MNGO transactions at the times and in the amounts that he did.  If the answer is "no," that is evidence that those transactions were manipulative.

> Adapted from the text of Title 7, United States Code, Section 13(a)(2) and <u>In re Amaranth Natural Gas Commodities Litig.</u>, 730 F.3d 170 (2d Cir. 2013).  The scienter requirement is that the defendant acted "with the purpose or conscious objective of causing or effecting a price or price trend in the market that did not reflect the legitimate forces of supply and demand."  <u>C.F.T.C.</u> v. <u>Parnon Energy Inc.</u>, 875 F. Supp. 2d 233, 248 (S.D.N.Y. 2012); <u>accord</u> <u>In re Commodity Exchange, Inc.</u>, 213 F. Supp. 3d 631, 669-70 (S.D.N.Y. 2016); <u>In re Term Commodities Cotton Futures Litig.</u>, 2020 WL 5849142, at *27 (S.D.N.Y. Sept. 30, 2020); <u>C.F.T.C.</u> v. <u>Kraft Food Grp.</u>, 153 F. Supp. 3d 996, 1020-21 (N.D. Ill. 2015).
>
> "[M]ere knowledge that certain actions might have an impact on [price] is not sufficient," so "what separates lawful business conduct from unlawful manipulative activity."  <u>C.F.T.C.</u> v. <u>Kraft Food Grp.</u>, 153 F. Supp. 3d 996, 1020 (N.D. Ill. 2015); <u>see also</u> <u>C.F.T.C.</u> v. <u>Parnon Energy Inc.</u>, 875 F. Supp. 2d 233, 249 (S.D.N.Y. 2012) ("[A]n expectation of profits and inevitably market movement . . . do not constitute intent to manipulate.").  The language regarding a "but for" test is adapted from <u>S.E.C.</u> v. <u>Masri</u>, 523 F. Supp. 2d 361, 372 (S.D.N.Y. 2007).

23

REQUEST NO. 16:  Count Two – Swap Fraud – Attempted Swap Manipulation - Elements

The instructions I just gave you were for swap manipulation.  As I previously instructed you, the defendant is also charged in Count Two with attempted swap manipulation.  Accordingly, you may separately find the defendant guilty of the offense charged in Count Two if you find the Government has proved beyond a reasonable doubt that the defendant committed attempted swap manipulation, even if no artificial price was in fact created.

With respect to attempted swap manipulation, to sustain its burden of proof with respect to the offense charged in Count Two, the Government must prove beyond a doubt the following two elements:

*First*, the defendant specifically intended to manipulate the price of a swap, which here refers to manipulating the price of MNGO perpetuals on Mango Markets; and

*Second*, that the defendant took a substantial step towards committing that crime.

I will discuss each in turn.

> Adapted from the text of Title 7, United States Code, Section 13(a)(2) and C.F.T.C. v. Amaranth Advisors LLC, 554 F. Supp. 2d 5t23, 532 (S.D.N.Y. 2008) (collecting cases); accord C.F.T.C. v. Parnon Energy Inc., 875 F. Supp. 2d 233, 248 (S.D.N.Y. 2012); see also Sand, Modern Federal Jury Instructions, 10.01.

<u>REQUEST NO. 17</u>:  <u>Count Two – Swap Fraud – Attempted Swap Manipulation – First Element</u>

The first element of attempted swap manipulation that the Government must prove beyond a reasonable doubt is that the defendant acted with the specific intent to manipulate.  I have previously instructed you on the meaning of intent to manipulate, in connection with my instruction on the fourth element of swap manipulation.  You should follow those same instructions when considering the first element of attempted swap manipulation.

> Adapted from the text of Title 7, United States Code, Section 13(a)(2) and <u>In re Amaranth Natural Gas Commodities Litig.</u>, 730 F.3d 170 (2d Cir. 2013).  The scienter requirement is that the defendant acted "with the purpose or conscious objective of causing or effecting a price or price trend in the market that did not reflect the legitimate forces of supply and demand."  <u>C.F.T.C.</u> v. <u>Parnon Energy Inc.</u>, 875 F. Supp. 2d 233, 248 (S.D.N.Y. 2012); <u>accord</u> <u>In re Commodity Exchange, Inc.</u>, 213 F. Supp. 3d 631, 669-70 (S.D.N.Y. 2016); <u>In re Term Commodities Cotton Futures Litig.</u>, 2020 WL 5849142, at *27 (S.D.N.Y. Sept. 30, 2020); <u>C.F.T.C.</u> v. <u>Kraft Food Grp.</u>, 153 F. Supp. 3d 996, 1020-21 (N.D. Ill. 2015).

> "[M]ere knowledge that certain actions might have an impact on [price] is not sufficient," so "what separates lawful business conduct from unlawful manipulative activity."  <u>C.F.T.C.</u> v. <u>Kraft Food Grp.</u>, 153 F. Supp. 3d 996, 1020 (N.D. Ill. 2015); <u>see also</u> <u>C.F.T.C.</u> v. <u>Parnon Energy Inc.</u>, 875 F. Supp. 2d 233, 249 (S.D.N.Y. 2012) ("[A]n expectation of profits and inevitably market movement . . . do not constitute intent to manipulate.").  The language regarding a "but for" test is adapted from <u>S.E.C.</u> v. <u>Masri</u>, 523 F. Supp. 2d 361, 372 (S.D.N.Y. 2007).

REQUEST NO. 18:  Count Two – Swap Fraud – Attempted Swap Manipulation – Second Element

The second element of attempted swap manipulation is that the defendant took an overt act in furtherance of carrying out the crime.  Mere intention to commit a crime does not amount to an attempt.  To convict the defendant of an attempt, you must find beyond a reasonable doubt that he also took some overt action that was a substantial step toward the commission of that crime.

In determining whether the defendant's actions amounted to a substantial step toward the commission of the crime, it is necessary to distinguish between mere preparation on the one hand, and the actual doing of the criminal deed on the other.  Mere preparation, which may consist of planning the offense, or devising, obtaining or arranging a means for its commission, is not an attempt, although some preparations may amount to an attempt.  The acts of a person who intends to commit a crime will constitute an attempt when the acts themselves clearly indicate an intent to commit the crime, and the acts are a substantial step in the course of conduct planned to culminate in the commission of the crime.

Adapted from Sand, Modern Federal Jury Instructions, 10.01; see also United States v. Anderson, 747 F.3d 51, 73-74 (2d Cir. 2014).

26

<u>REQUEST NO. 19:</u>  <u>Count Three – Wire Fraud – General Instruction and Elements</u>

I will now turn to Count Three, which charges AVRAHAM EISENBERG with committing wire fraud.  As I said earlier, Count Three charges that the defendant devised and participated in a scheme to fraudulently obtain cryptocurrency from Mango Markets by deceptively misrepresenting the value of his assets on Mango Market and misrepresenting his intentions to borrow cryptocurrency from the platform.

To sustain its burden of proof with respect to the offense charged in Count Three, the Government must prove beyond a doubt the following three elements:

*First*, that there was a scheme or artifice to defraud or to obtain money or property by materially false and fraudulent pretenses, representations or promises.

*Second*, that the defendant knowingly participated in the scheme or artifice to defraud, with knowledge of its fraudulent nature and with specific intent to defraud.

*Third*, that in execution of that scheme, the defendant used or caused the use of interstate wires.

I will discuss each in turn.

> Adapted from the charges of the Honorable Lewis A. Kaplan in <u>United States</u> v. <u>Gatto</u>, 17 Cr. 686 (Oct. 1, 2018), <u>United States</u> v. <u>Bankman-Fried</u>, 22 Cr. 673 (Nov. 2, 2023) and <u>United States</u> v. <u>Blaszczak</u>, 17 Cr. 357 (Apr. 27, 2018), and the charges of the Honorable Edgardo Ramos in <u>United States</u> v. <u>Milton</u>, 21 Cr. 478 (Sept. 12, 2022); <u>See</u> Sand, <u>Modern Federal Jury Instructions</u>, Instr. 44-3.

REQUEST NO. 20:  Count Three – Wire Fraud – First Element

As to the first element of wire fraud, a "scheme or artifice" is simply a plan for the accomplishment of an object.  Fraud is a general term.  It includes all the possible means by which a person seeks to gain some unfair advantage over another person by false representations, false suggestion, false pretenses, or concealment of the truth.

A device, scheme, or artifice to defraud is any plan, device, or course of action to deprive another of money or property by means of false or fraudulent pretenses, representations, or promises.  It is, in other words, a plan to deprive another person of money or property by trick, deceit, deception, swindle, or overreaching.

Money or property includes not only fiat currency, such as U.S. dollars, but also cryptocurrencies.

A pretense, representation, or promise is false if it is untrue when made and was then known to be untrue by the person making it.  A pretense, representation, or promise is fraudulent if it was falsely made with the intent to deceive.

Deceitful statements of half truths and the concealment of materials facts may also constitute false or fraudulent statements under the statute.  The deception need not be premised upon spoken or written words alone.  The arrangement of the words or the circumstances in which they are used may convey the false and deceptive appearance.  If there is deception, the manner in which it is accomplished is unimportant.

The false or fraudulent pretense, representation or promise must relate to a material fact or matter.  A material fact is one that reasonably would be expected to be of importance to a reasonable and prudent person in making a decision.  This means that, if you find the Government has proven the defendant made a fraudulent pretense, representation, or promise, you must also

determine whether it was one that a reasonable person would have considered important in making a decision.

As I previously instructed you, in considering whether a statement or omission was material, let me caution you that it is not a defense if the material misrepresentation or omission would not have deceived a person of ordinary intelligence. Once you find that the offense involved the making of material misrepresentations or omissions of material facts, it does not matter whether the intended victims were careless, gullible, or even negligent, or that they might have uncovered the scheme on their own had they probed more deeply.

The Government is not required to prove that the scheme or artifice actually succeeded – that is, that an intended victim actually relied upon any false statement or suffered any loss or that a defendant realized any gain.

In addition to proving that a pretense, representation, or promise was false or fraudulent and related to a material fact, in order to establish a scheme to defraud, the Government must prove that the alleged scheme contemplated wrongly depriving another of money or property, even if only temporarily. It is not necessary, however, that the person or entity whose money or property was targeted be the same person or entity that the defendant sought to deceive through the scheme. The Government is also not required to prove that the defendant personally originated the scheme to defraud. Furthermore, as I have noted, it is not necessary that the Government prove that the defendant actually realized any gain from the scheme or that the intended victim actually suffered any loss.

A scheme to defraud need not be shown by direct evidence, but may be established by all the circumstances and facts in the case. If you find beyond a reasonable doubt that a scheme to defraud did exist, you next should consider the second element of wire fraud.

29

Adapted from the charges of the Honorable Jesse M. Furman in United States v. Chastain, 22 Cr. 305 (May 1, 2023) and in United States v. Avenatti, 19 Cr. 374 (Feb. 1, 2022), the charges of the Honorable Lewis A. Kaplan in United States v. Gatto, 17 Cr. 686 (Oct. 1, 2018), United States v. Blaszczak, 17 Cr. 357 (Apr. 27, 2018), and United States v. Bankman-Fried, 22 Cr. 673 (Nov. 2, 2023), the charges of the Honorable Edgardo Ramos in United States v. Milton, 21 Cr. 478 (Sept. 12, 2022), and the charges of the Honorable J. Paul Oetken in United States v. Middendorf, 18 Cr. 36.

See also United States v. Trapilo, 130 F.3d 547, 550 n.3 (2d Cir. 1997) ("The term 'scheme to defraud' is measured by a 'nontechnical standard. It is a reflection of moral uprightness, of fundamental honesty, fair play and right dealing in the general [and] business life of members of society. . . . The scheme exists although no misrepresentation of fact is made'"); United States v. Von Barta, 635 F.2d 999, 1005 & n.12 (2d Cir. 1980) (same); United States v. Greenberg, 835 F.3d 295, 306 (2d Cir. 2016) ("[W]ire fraud does not require a convergence between the parties intended to be deceived and those whose property is sought in a fraudulent scheme.").

<u>REQUEST NO. 21</u>:  <u>Count Three – Wire Fraud – Second Element</u>

The second element that the Government must prove beyond a reasonable doubt is that the defendant participated in the scheme to defraud knowingly and with specific intent to defraud.

As I have instructed you previously, to act "knowingly" means to act voluntarily and deliberately, rather than mistakenly or inadvertently.

In the context of "wire fraud," the meaning of "intent to defraud" is somewhat different than in the context of commodities fraud.  Specifically, in the context of wire fraud only, "intent to defraud" means to act knowingly and with specific intent to deceive, for the purpose of causing some financial or property loss to another.  Thus, the defendant acted with intent to defraud in the context of wire fraud if he engaged or participated in the fraudulent scheme with awareness of its fraudulent or deceptive character, with an intention to be involved in the scheme to defraud and help it succeed, and with a purpose of obtaining money or property from a victim or depriving a victim of money or property, even temporarily.

The Government, however, need not prove that any intended victim was actually harmed, only that such harm, as I have just described it, was intended by the defendant.  Actual financial harm includes depriving someone of the real and immediate control over the use of assets.  Thus, even if the defendant believed the money obtained by fraudulent means would one day be repaid and therefore believed that ultimately no harm would come to the owner of the funds, his intention eventually to repay is no defense.

Because an essential element of wire fraud is intent to defraud, it follows that good faith on the part of the defendant is a complete defense to a charge of wire fraud.  I have previously instructed you on the meaning of "good faith" in instructing you on Count One, and you should use the same definition with respect to Count Three.  As I previously instructed you, the defendant

has no burden to establish a defense of good faith.  The burden is on the Government to prove fraudulent intent and the consequent lack of good faith beyond a reasonable doubt.  If the defendant participated in the scheme to defraud, then a belief by the defendant, if such a belief existed, that ultimately everything would work out so that no one would lose any money does not mean that the defendant acted in good faith.

As I have mentioned before, direct proof knowledge and fraudulent intent is almost never available.  It would be a rare case where it could be shown that a person wrote or stated that as of a given time in the past, he committed an act with fraudulent intent.  Such direct proof is not required.  Instead, the ultimate facts of knowledge and intent, though subjective, may be established by circumstantial evidence, based upon a person's words, his conduct, his acts, and all the surrounding circumstances disclosed by the evidence and the rational or logical inferences that may be drawn from them.

To conclude on this element, if you find that the defendant was not a knowing or willful participant in the scheme or that he lacked the specific intent to defraud, you should find the defendant not guilty.  On the other hand, if you find that the defendant has established beyond a reasonable doubt not only on the first element—namely, the existence of the scheme to defraud— but also the second element, you next should consider the third and final element of wire fraud.

> Adapted from the charges of the Honorable Jesse M. Furman in United States v. Chastain, 22 Cr. 305 (May 1, 2023) and in United States v. Avenatti, 19 Cr. 374 (Feb. 1, 2022), the charges of the Honorable Lewis A. Kaplan in United States v. Gatto, 17 Cr. 686 (Oct. 1, 2018), United States v. Blaszczak, 17 Cr. 357 (Apr. 27, 2018), and United States v. Bankman-Fried, 22 Cr. 673 (Nov. 2, 2023), the charges of the Honorable Edgardo Ramos in United States v. Milton, 21 Cr. 478 (Sept. 12, 2022), and the charges of the Honorable J. Paul Oetken in United States v. Middendorf, 18 Cr. 36. See Sand, Modern Federal Jury Instructions, Instr. 44-5.

32

The applicable *mens rea* for wire fraud is "specific intent to harm or defraud the victims of the scheme." United States v. Rybicki, 354 F.3d 124, 150 (2d Cir. 2003); see also United States v. Gole, 21 F. Supp. 2d 161, 167-68 (E.D.N.Y. 1997) ("'Willfully' appears nowhere in the mail fraud statute, and the Second Circuit has expressly held that the only scienter requirement for a violation of § 1341 is that the acts proscribed be carried out 'knowingly.'"); United States v. Blagojevich, 794 F.3d 729, 739 (7th Cir. 2015) ("The wire-fraud statute requires a specific intent to defraud but not willfulness or any other proxy for knowledge of the law."); United States v. Dockray, 943 F.2d 152, 156 (1st Cir. 1991) (holding that "willfulness" is "not synonymous with the intent to defraud requirement in the mail and wire fraud statutes"); United States v. DiRoberto, 686 F. App'x 458, 461 (9th Cir. 2017) ("The mail and wire fraud statutes do not require proof of willfulness.").

See United States v. Technodyne LLC, 753 F.3d 368, 385 (2d Cir. 2013) ("It is commonplace that the law recognizes that there may be multiple motives for human behavior; thus, a specific intent need not be the actor's sole, or even primary, purpose.").

See United States v. Jabar, 19 F.4th 66, 77 (2d Cir. 2021) ("Proof of actual injury to the victim is not required . . . .").

See United States v. Calderon, 944 F.3d 72, 90 (2d Cir. 2019) ("A 'no ultimate harm' instruction advises the jury that where some immediate loss to the victim is contemplated by a defendant, the fact that the defendant believes (rightly or wrongly) that he will ultimately be able to work things out so that the victim suffers no loss is no excuse for the real and immediate loss contemplated to result from defendant's fraudulent conduct.").

33

REQUEST NO. 22:  Count Three – Wire Fraud – Third Element

The third and final element the Government must establish beyond a reasonable doubt with respect to Count Three is that an interstate wire (including, for example, transactions or communications over the internet) was used in furtherance of the scheme to defraud within the period of the scheme charged in Count Three.

A wire communication need not itself be fraudulent.  Indeed, it may be completely innocent, as long as it was made in furtherance of the fraudulent scheme.  To be in furtherance of the scheme, the wire communication must be incident to an essential part of the scheme to defraud and must have been caused, directly or indirectly, by the defendant.  The wire communication requirement can be satisfied, however, even if the wire communication was done by the person being defrauded or some other innocent party.  When a person does an act with knowledge that the use of the wires will follow in the ordinary course or where such use can reasonably be foreseen by that person, even though he does not actually intend such use, that nonetheless causes the wires to be used.  Thus, there is no requirement that the defendant specifically authorize others to make a communication by wire.

The Government must prove beyond a reasonable doubt that the wire communication was interstate or international.  To do so, the Government may prove that a wire communication whose origin and destination were within one state was routed through another state, or that the wire communication passed between two or more states or between the United States and a foreign country.  The Government is not required to prove that the defendant knew or could foresee the interstate or international nature of the wire communication.

> Adapted from the charges of the Honorable Denise L. Cote in United States v. Lavidas, 19 Cr. 716 (Jan. 14, 2020), the charges of the Honorable Jesse M. Furman in United States v. Chastain, 22 Cr. 305

(May 1, 2023) and in <u>United States</u> v. <u>Avenatti</u>, 19 Cr. 374 (Feb. 1, 2022), the charges of the Honorable Lewis A. Kaplan in <u>United States</u> v. <u>Gatto</u>, 17 Cr. 686 (Oct. 1, 2018), <u>United States</u> v. <u>Blaszczak</u>, 17 Cr. 357 (Apr. 27, 2018), and <u>United States</u> v. <u>Bankman-Fried</u>, 22 Cr. 673 (Nov. 2, 2023), the charges of the Honorable Edgardo Ramos in <u>United States</u> v. <u>Milton</u>, 21 Cr. 478 (Sept. 12, 2022), and the charges of the Honorable J. Paul Oetken in <u>United States</u> v. <u>Middendorf</u>, 18 Cr. 36.. <u>See</u> Sand, <u>Modern Federal Jury Instructions</u>, Instr. 44-5.

REQUEST NO. 23:  Terms of Service
(If Applicable)

Before I move on, I will address one point related to terms of service.  You have heard evidence in this case that, at the time of the events at issue, Mango Markets did not have terms of service.  You have also heard evidence that various platforms the defendant allegedly used, including FTX, AscendEx, Jupiter Aggregator, and Switchboard, did have terms of service.

Terms of service are civil contracts.  This, of course, is a criminal case.  It is not a civil case for breach of contract.  In considering whether the defendant's conduct was manipulative, fraudulent, or deceptive in violation of the criminal laws at issue in this case, let me caution you that the lack of terms of service cannot render any fraudulent or manipulative conduct legal or immaterial as a matter of law.  Similarly, if you find that the defendant violated terms of service on certain platforms, that does not, by itself, mean that the defendant has committed a crime.  In determining whether the defendant has committed any of the charged offenses, you are to apply the instructions I have given you today.  Terms of service, or lack thereof, are simply evidence that you may give as much, or as little weight, as you see appropriate.

> Adapted from the charges of the Honorable Edgardo Ramos in United States v. Milton, 21 Cr. 478 (Sept. 12, 2022) and the Honorable Lewis A. Kaplan in United States v. Bankman-Fried, 22 Cr. 673 (Nov. 2, 2023).

36

REQUEST NO. 24:  Venue

Finally, you must separately decide whether an act in furtherance of each alleged crime occurred within the Southern District of New York.  The Southern District of New York includes Manhattan, the Bronx, Westchester, and parts of Dutchess County, including Poughkeepsie.  This requirement is called "venue."  Venue refers to the fact that the Government must prove that a charge was properly brought in this court as opposed to a different federal court.  You'll determine the satisfaction of the venue requirement separately for each count.

The Government does not have to prove that a completed crime was committed within the Southern District of New York, or that the defendant was ever in the Southern District of New York.  With respect to both Count One and Count Two, it is sufficient to satisfy the venue requirement if any act in furtherance of the crime charged occurred in this district.  The act itself need not be a criminal act.  It could include, for example, the transmission of a communication or a wire in furtherance of the scheme into or out of the district.  And the act need not have been taken by the defendant, so long as the act was part of the crime that you find he committed.

For the wire fraud charge in Count Three, it is sufficient to establish venue if the defendant caused any interstate wire, such as an e-mail, phone call, or financial transaction to be transmitted into or out of the district.  The wire need not itself be criminal so long as it was transmitted or caused to be transmitted as part of the scheme.  The act need not have been taken by the defendant so long as the act was part of the crime that you find he committed.

Unlike the elements of the offenses, which must be proven beyond a reasonable doubt, the Government is only required to prove venue by a preponderance of the evidence.  A preponderance of the evidence means that it is more probable than not that some act in furtherance of the crime you are considering occurred in this district.  Thus, the Government has satisfied its venue

37

obligations if you conclude that it is more likely than not that any act in furtherance of the crime charged occurred within this district, even if other acts in furtherance of the crime charged occurred outside of this district.

> Adapted from the charges of the Honorable Lewis A. Kaplan in United States v. Dumitru, 18 Cr. 243 (Nov. 6, 2018), and of the Honorable Edgardo Ramos in United States v. Milton, 21 Cr. 478 (Sept. 12, 2022). See also United States v. Lange, 834 F.3d 58, 70-72 (2d Cir. 2016) ("[W]here a crime consists of distinct parts which have different localities the whole may be tried where any part can be proved to have been done.").

REQUEST NO. 25:  Presence of Counsel
(If Applicable)

You have heard evidence that the defendant had lawyers. A lawyer's involvement with an individual or entity does not itself constitute a defense to any charge in this case. The defense has not claimed, and cannot claim, that the defendant's conduct was lawful because he acted in good faith on the advice of a lawyer.

> Adapted from the charges of the Honorable Edgardo Ramos in United States v. Milton, No. 21 Cr. 478 (Sept. 12, 2022), and the Honorable Analisa Torres in United States v. Shea, No. 20 Cr. 412 (May 23, 2022).

39

REQUEST NO. 26:  False Exculpatory Statements
(If Applicable)

You have testimony claiming that the defendant had conversations or communications with others, in which he claimed that his conduct was consistent with innocence and not guilt. The Government claims that those statements in which he exonerated or exculpated himself were false. If you find that the defendant gave a false statement in order to divert suspicion from himself, you may infer that the defendant believed that he was guilty. You may not, however, infer on the basis of this alone that the defendant is, in fact, guilty of the crimes for which he is charged. Whether or not the evidence as to a defendant's statements shows that the defendant believed that he was guilty, and the significance, if any, to be attached to any such evidence, are matters for you the jury to decide.

> Adapted from the charges of the Honorable Lewis A. Kaplan in United States v. Blaszczak, 17 Cr. 357 (Apr. 27, 2018) and the Honorable Richard J. Sullivan in United States v. Brennerman, 17 Cr. 337 (Dec. 6, 2017).

REQUEST NO. 27:  Variance in Dates

As I have described the Indictment, you may have noticed that it refers to various dates or times.  It does not matter if the evidence you heard at trial indicates that a particular act occurred on a different date, and it is not essential that the Government prove that the charged offenses started and ended on any specific dates.  The law requires only a substantial similarity between the dates alleged in the Indictment and the dates established by the evidence.

> Adapted from Sand, et al., Modern Federal Jury Instructions, Instr. 3-12 and the charges of the Honorable Lewis A. Kaplan in United States v. Jones, 17 Cr. 791 (Dec. 16, 2019).

REQUEST NO. 28:  Expert Witness

You heard the testimony of certain witnesses who I certified as experts. An expert is a witness who, by education or experience, has acquired knowledge in a specialized area.  Such witnesses are allowed to give their opinions as to relevant matters in which they profess to be an expert, and to give the reasons for their opinions.  Expert testimony is presented to you on the theory that someone who is experienced and knowledgeable in a field can assist you in understanding the evidence or in reaching an independent decision on the facts.

In weighing expert testimony, you may consider the expert's qualifications, the opinion given, the witness's reasons for testifying, as well as all the other considerations that ordinarily apply when you are deciding whether or not to believe a witness. You may give expert testimony whatever weight, if any, you find it deserves in light of all the evidence before you. You should not, however, accept a witness's testimony merely because he or she is an expert in a field. Nor should you substitute it for your own reason, judgment, and common sense. The determination of the facts in this case rests solely with you, the jury.

> Adapted from the charge of the Honorable Lewis L. Liman in United States v. Ray, 20 Cr. 110 (Apr. 5, 2022), the Honorable Richard J. Sullivan in United States v. Brennerman, No. 17 Cr. 337 (Dec. 6, 2017), and from the Honorable J. Paul Oetken in United States v. Middendorf, No. 18 Cr. 36 (Feb. 1, 2022).

REQUEST NO. 29:  Law Enforcement Witnesses

You have heard the testimony of law enforcement witnesses and other Government employees.  The fact that a witness may be employed by the federal Government as a law enforcement agent or employee does not mean that his or her testimony is deserving of more or less consideration or greater or lesser weight than that of an ordinary witness.  As with all other witnesses, it is up to you to decide, after reviewing all the evidence, what weight to give the testimony of law enforcement witnesses.

> Adapted from the charges of the he Honorable Lewis L. Liman in United States v. Ray, 20 Cr. 110 (Apr. 5, 2022), the Honorable Jesse M. Furman in United States v. Avenatti, No. 19 Cr. 374 (Feb. 1, 2022), and the Honorable J. Paul Oetken in United States v. Matthews, 18 Cr. 124 (Sept. 24, 2018).

REQUEST NO. 30:  Preparation of Witnesses
(If Applicable)

You have heard evidence during the trial that some witnesses have discussed the facts of the case and their testimony with lawyers before the witnesses appeared in court. Although you may consider that fact when you evaluate a witness's credibility, I should tell you that there is nothing unusual or improper about a witness meeting with lawyers before testifying so that the witness can be aware of the subjects he or she will be questioned about, focus on those subjects, and have the opportunity to review relevant exhibits before being questioned about them. Such consultation helps conserve your time and the Court's time. In fact, it would be unusual for a lawyer to call a witness without such consultation. Again, the weight you give to the fact or the nature of the witness's preparation for his or her testimony and what inferences you draw from such preparation are matters completely within your discretion.

> Adapted from the charge of the Honorable Lewis L. Liman in United States v. Ray, 20 Cr. 110 (Apr. 5, 2022), and the Honorable Lewis A. Kaplan in United States v. Gatto, 17 Cr. 686 (Oct. 1, 2018).

44

REQUEST NO. 31:  Uncalled Witnesses – Equally Available To Both Sides

There are people whose names you have heard during the course of trial, but who did not appear here to testify.  I instruct you that each party had an equal opportunity, or lack of opportunity, to call any of these witnesses.  Therefore, you should not draw any inferences or reach any conclusions as to what they would have testified to had they been called.  Their absence should not affect your judgment in any way.

You should, however, remember my instruction that the law does not impose on a defendant in a criminal case the burden or duty of calling any witness or producing any evidence.  The burden of proof remains at all times with the Government.

> Adapted from the charges of the Honorable Lewis L. Liman in United States v. Ray, 20 Cr. 110 (Apr. 5, 2022), and the Honorable Lewis A. Kaplan in United States v. Gatto, 17 Cr. 686 (Oct. 1, 2018).

45

<u>REQUEST NO. 32:</u>  <u>Other Individuals Not on Trial</u>

You may not draw any inference, favorable or unfavorable, toward the Government or the defendant from the fact that any person was not named as a defendant in this case, and you may not speculate as to the reasons why other people are not on trial before you now.  Those matters are wholly outside your concern and have no bearing on your function as jurors in deciding the case before you.

Adapted from the charges of the Honorable Lewis L. Liman in <u>United States</u> v. <u>Ray</u>, 20 Cr. 110 (Apr. 5, 2022), and the Honorable Lewis A. Kaplan in <u>United States</u> v. <u>Gatto</u>, 17 Cr. 686 (Oct. 1, 2018).

<u>REQUEST NO. 33:</u>   Defendant's Testimony
(If Applicable)

As you saw, the defendant took the witness stand and testified.  I have already instructed you on how you should evaluate the credibility of the witnesses you have heard in this case.  You should evaluate the defendant's testimony the same way that you judge the testimony of the other witnesses in this case.

> <u>See</u> <u>United States</u> v. <u>Gaines,</u> 457 F.3d 238, 240 (2d Cir. 2006) ("[I]f the defendant has testified, the trial court should tell the jury to evaluate the defendant's testimony in the same way it judges the testimony of other witnesses."); <u>but</u> <u>see</u> <u>United States</u> v. <u>Solano,</u> 966 F.3d 184, 197 (2d Cir. 2020) (holding that it was error for the district court to instruct that "any" witness with an interest in the outcome of the case, which included the defendant, necessarily has a "motive to testify falsely").

47

REQUEST NO. 34:  Defendant's Right Not to Testify
(If Requested by the Defense)

The defendant did not testify.  Under our Constitution, a defendant never is required to testify or to present any evidence because it is always the Government's burden to prove a defendant guilty beyond a reason doubt. A defendant never is required to prove that he is innocent. You may not attach any significance to the fact that the defendant did not testify. You may not draw any adverse inference against the defendant because the defendant did not take the witness stand. You may not consider this in any way in your deliberations.

Adapted from the charges of the Honorable Lewis L. Liman in United States v. Ray, 20 Cr. 110 (Apr. 5, 2022), and the Honorable Lewis A. Kaplan in United States v. Gatto, 17 Cr. 686 (Oct. 1, 2018).

REQUEST NO. 35:  Particular Investigative Techniques Not Required
(If Applicable)

You have heard reference to certain investigative techniques that were used or not used by the Government in this case.  There is no legal requirement that the Government prove its case through any particular means.  While you are to carefully consider the evidence adduced by the Government, you are not to speculate as to why the Government used the techniques it did or why it did not use other techniques.

Adapted from the charges of the Honorable Lewis A. Kaplan in
United States v. Gatto, 17 Cr. 686 (Oct. 1, 2018).

49

<u>REQUEST NO. 36:</u>  <u>Use of Evidence Obtained Pursuant to Searches</u>
(If Applicable)

You have heard testimony about evidence seized, pursuant to search warrants signed by a judge, from electronic accounts.  Evidence obtained from these searches was properly admitted in this case and may properly be considered by you.  Indeed, searches of online accounts and electronic devices are entirely appropriate law enforcement actions. Whether you approve or disapprove of how it was obtained should not enter into your deliberations because I now instruct you that the Government's use of this evidence is entirely lawful.

Adapted from the charges of the Honorable Lewis A. Kaplan in <u>United States</u> v. <u>Gatto,</u> 17 Cr. 686 (Oct. 1, 2018).

<u>REQUEST NO. 37:</u>  <u>Use of Charts and Summaries</u>

There is evidence before you in the form of charts and summaries.  Those exhibits purport to summarize the underlying evidence that was used to prepare them. I admitted these charts and summaries into evidence in place of or in addition to the underlying documents that they represent in order to save time and avoid unnecessary inconvenience.  They are no better than the documents upon which they are based.  Therefore, you are to give no greater consideration to these charts or summaries than you would give to the evidence upon which they are based.  It is for you to decide whether they correctly present the information contained in the testimony and in the exhibits on which they were based.

> Adapted from the charges of the Honorable Lewis A. Kaplan in <u>United States</u> v. <u>Dumitru</u>, 18 Cr. 243 (Nov. 6, 2018), and the Honorable Jesse M. Furman in <u>United States</u> v. <u>Avenatti</u>, No. 19 Cr. 374 (Feb. 1, 2022).

<u>REQUEST NO. 38:</u>  <u>Stipulations</u>
(If Applicable)

You have heard some stipulations in this case. Generically speaking, there are two kinds.

A stipulation of fact is an agreement between the parties that a certain fact is true. You must regard such agreed-upon facts as true, but it is still for you to determine the weight to be given to that evidence, to that fact.

A stipulation of testimony is an agreement between the parties that, if called as a witness, the person would have given certain testimony. You must accept as true the fact that the witness would have given that testimony. However, it is for you to determine the weight to be given to that testimony.

Adopted from the charge of the Honorable Richard J. Sullivan in
<u>United States</u> v. <u>Brennerman</u>, 17 Cr. 337 (Dec. 6, 2017).

52

<u>REQUEST NO. 39:</u>  <u>Transcripts</u>
(If Applicable)

Audio and video recordings have been admitted into evidence and transcripts of those recordings were provided to use as aids. I instructed you then, and I remind you now, that the transcripts are not evidence.  The transcripts were provided only as an aid to you in listening to the recordings.  It is for you to decide whether the transcripts correctly present the conversations recorded on the recordings that you heard.

Adopted from the charge of the Honorable Richard J. Sullivan in <u>United States</u> v. <u>Brennerman</u>, 17 Cr. 337 (Dec. 6, 2017).

REQUEST NO. 40:  Redactions
(If Applicable)

There are, among the exhibits received in evidence, some documents that are redacted.

"Redacted" means that part of the document or recording was taken out.  You are to concern

yourself only with the part of the item that has been admitted into evidence.  You should not

consider any possible reason why the other part of it has been redacted.

> Adapted from the charges of the Honorable Jesse M. Furman in
> United States v. Avenatti, No. 19 Cr. 374 (Feb. 1, 2022), and from
> the charge of the Honorable Lewis A. Kaplan in United States v.
> Sterling, S4 16 Cr. 488 (Apr. 3, 2017).

<u>REQUEST NO. 41:</u>  <u>Concluding Remarks</u>

The Government respectfully requests that the Court close by instructing the jurors regarding the selection of a foreperson, communications with the Court during deliberations, provision of copies of the Indictment and jury charge, and the procedures regarding requests for particular exhibits or testimony.


Dated: New York, New York
        March 24, 2024

                                        Respectfully submitted,

                                        DAMIAN WILLIAMS
                                        United States Attorney
                                        Southern District of New York


                            By:   /s/_____
                                        Thomas S. Burnett
                                        Peter Davis
                                        Assistant United States Attorneys

                                        Tian Huang
                                        Special Assistant United States Attorney
                                        Southern District of New York

55