

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

March 26, 2024

Hon. Arun Subramanian
United States District Court
500 Pearl Street
New York, NY 10007

      Re:    <u>United States</u> v. <u>Avraham Eisenberg</u>, 23 Cr. 10 (AS)

Dear Judge Subramanian:

      The Government writes in advance of the final pretrial conference to raise three issues that warrant resolution before trial: First, this Court should not adopt the defense's proposed verdict form. Second, this Court should preclude the defense from introducing SEC and CFTC complaints against Avraham Eisenberg, and cross-examining witnesses about those complaints. And third, this Court should preclude the defendant from introducing an October 14, 2022 tweet in which he claimed his actions were legal.

      **I.**    **Special Verdict Form**

      The defense's proposed verdict form states that the jury must agree on the specific means by which the defendant committed commodities and wire fraud. This Court should reject that proposal because it is inconsistent with settled case law and does not accurately characterize the ways in which the Government could prove the defendant committed those crimes.

      On March 19, 2022, the defense submitted its proposed verdict form. With respect to commodities fraud, that verdict form directs the jury to identify that they "unanimously find[] the government proved beyond a reasonable doubt: (1) intentional and artificial manipulation of the relative value of USDC and MNGO and/or the price of MNGO Perpetuals; (2) self-trading to create artificial MNGO Perpetual positions on Mango Markets; (3) misrepresenting an intention to repay borrowed cryptocurrency from Mango Markets; and (4) using false personal identifying and location information." The verdict form proposes a similar instruction for wire fraud, omitting the provision about manipulating the relative value of MNGO and USDC or the price of a MNGO Perpetual.

      Directing the jury to identify the means by which the defendant committed commodities fraud and wire fraud would be legally incorrect. "[A] jury in a federal criminal case cannot convict unless it unanimously finds that the Government has proved each element" beyond a reasonable doubt. *Richardson v. United States*, 526 U.S. 813, 817 (1999). But where a defendant is charged with separate means of violating the same statutory prohibition, a general verdict of guilt is appropriate, without the need for the jury to be unanimous as to the means. *Id.*; *see Schad v. Arizona*, 501 U.S. 624, 649 (1991) (Scalia, J., concurring) ("[I]t has long been the general rule that

when a single crime can be committed in various ways, jurors need not agree upon the mode of commission."); *see also, e.g.*, *id.* at 631-32 (plurality opinion).

The implication of this rule is that the jury "need not always decide unanimously which of several possible sets of underlying brute facts make up a particular element." *Richardson*, 526 U.S. at 817.  For example, "an element of robbery is force or the threat of force." *Id.*  While the jury must unanimously find that the defendant used or threatened force, it need not agree "about means," such as whether "the defendant used a knife to create the threat" or "used a gun." *Id.*

In the context of commodities fraud and wire fraud, the misrepresentations or deceptive acts the defendant employed are the *means* by which the defendant commits the crime, not elements requiring unanimity.  Commodities fraud requires the jury to unanimously find that the defendant employed a "manipulative or deceptive device or contrivance" in violation of a regulation.  7 U.S.C. § 9(1).  Wire fraud requires unanimity on the use of a wire in furtherance of a "scheme or artifice to defraud."  18 U.S.C. § 1343.  The underlying "brute facts" about *how* the defendant acted deceptively—such as the specific misrepresentations or deceptive conduct—are means that need not be found unanimously, just as whether a robbery defendant threatened force with a gun or a knife is the means in that context.  *Richardson*, 526 U.S. at 817.

Indeed, multiple Circuits have explained that, in a wire fraud case, the misrepresentation is merely a means of committing the offense and does not require unanimity.  *United States v. Daniel*, 749 F.3d 608, 613-14 (7th Cir. 2014); *accord United States v. LaPlante*, 714 F.3d 641, 647 (1st Cir. 2013) ("A jury, faced with divergent factual theories in support of the same ultimate issue, may decide unanimously . . . that the government has proven a scheme to defraud even if they may not be unanimous as to the precise manner in which it occurred."); *United States v. Rice*, 699 F.3d 1043, 1048 (8th Cir. 2012) (upholding instruction that jurors "needed to agree that one of the means had been used [to defraud victims], but that not all needed to agree on the same one"); *United States v. Lyons*, 472 F.3d 1055, 1068 (9th Cir. 2007) (holding that, in a scheme to defraud, the jury "need not be unanimous on the particular false promise").  The Second Circuit has reached analogous results with respect to other statutes, finding, for instance, that the jury need not be unanimous on which overt act occurred to support a conspiracy conviction, *United States v. Kozeny*, 667 F.3d 122, 131-32 (2d Cir. 2011), and that the jury need not unanimously decide which company was the target of extortion in an extortion case, *United States v. Mulder*, 273 F.3d 91, 110 (2d Cir. 2001).

The defense's proposed verdict form runs afoul of this settled law.  Asking the jurors to check off which means they unanimously found the defendant used to commit commodities fraud and wire fraud implies that unanimity on that point is necessary.  Because that is not the case, this Court should reject the requested verdict form.

What is more, the defense's proposed verdict form does not accurately characterize some of the Government's theories of the defendant's guilt.  For example, with respect to commodities fraud and wire fraud, one checkbox asks whether the jurors found the defendant "misrepresent[ed] an intention to repay borrowed cryptocurrency from Mango Markets."  That does not faithfully encompass the Government's theory.  The defendant's choice to "borrow" cryptocurrency off of Mango Markets was not fraudulent simply because he lacked an intention to repay, but also because he lacked an intention to maintain the required collateral to support the loan and pay

interest. The defense's statement oversimplifies the set of facts that will establish why the defendant's actions were fraudulent. Similarly, with respect to wire fraud, the defense omits anything about the fact that the defendant fraudulently inflated the value of his assets on Mango Markets to unlock the ability to "borrow" huge sums of cryptocurrency from the platform. This was an important way in which his scheme was deceptive.

These problems with the way the defense characterizes the defendant's scheme are a separate reason to reject its proposed verdict form. A verdict form should not be a place for the parties to advance competing characterizations of the scheme. Indeed, there is a significant risk that the defense's characterization of the deceptive conduct on the verdict form will intrude on the jury's role to assess the evidence and apply that to this Court's instructions on the actual elements of the offenses.

## II.   SEC and CFTC Complaints

The SEC and CFTC have filed complaints against Avraham Eisenberg, charging him, respectively, with securities fraud and commodities fraud. Those complaints contain allegations that relate to jurisdictional issues in this case, such as whether MNGO Perpetuals are swaps and whether MNGO is a security. The defense has expressed that it is still considering whether it plans to introduce those complaints at trial. The defense should not be permitted to do so, nor should it be allowed to introduce the substance of those filings by questioning witnesses about them.

There is no relevant, permissible purpose for which the defense could introduce the SEC and CFTC complaints. Because complaints are allegations, the defense cannot use them to establish the truth of the factual assertions therein. *See United States v. Klein*, No. 16 Cr. 442 (JMA), 2017 WL 1316999, at *2 (E.D.N.Y. Feb. 10, 2017) (finding that SEC complaints are not reasoned factual findings). That would be a clear violation of the rules against hearsay. Moreover, the complaints go beyond mere factual allegations and (like many complaints) apply the facts to the law—for example, in alleging that MNGO is a security. This application of facts to law would go beyond the permissible scope of even a live, expert witness. Just as the experts in this case cannot opine that a particular price is "artificial," the defense cannot introduce the SEC's allegation that MNGO is a "security" as evidence of that fact.

Moreover, even if the complaints had some marginal relevance, that relevance would be substantially outweighed by the danger of unfair prejudice. There is a high likelihood that the jury would defer to the analysis and legal conclusions embedded in the complaints, rather than drawing their own conclusions from the evidence presented at trial. The relevance of the complaints would need to be substantial to overcome that significant danger, and there is no reason to believe the complaints have any such weighty, relevant role at trial.

## III.   The October 14, 2022 Tweet

Finally, this Court should preclude the defense from offering a tweet the defendant wrote on October 14, 2022 (the "October 14 Tweet"), in which he asserted that his attack on Mango Markets was legal. The October 14 Tweet, if offered by the defense, is inadmissible hearsay.

The defendant's attack on Mango Markets took place on October 11, 2022. The next day, he fled the country to Israel. On October 14, the defendant extracted an agreement from members of the Mango DAO that they would not press criminal charges if he agreed to return some of the stolen cryptocurrency. By that point, bloggers in the cryptocurrency community were speculating that the defendant had committed the attack. So on October 14, 2022, the defendant wrote his defense, posting the October 14 Tweet:

> I was involved with a team that operated a highly profitable trading strategy last week. I believe all of our actions were legal open market actions, using the protocol as designed, even if the development team did not fully anticipate all the consequences of setting parameters the way they are. Unfortunately, the exchange this took place on, Mango Markets, became insolvent as a result, with the insurance fund being insufficient to cover all liquidations. This led to other users being unable to access their funds. To remedy the situation, I helped negotiate a settlement agreement with the insurance fund with the goal of making all users whole as soon as possible as well as recapitalizing the exchange. This is similar to how auto deleveraging works on exchanges such as Binance and Bitmex, clawing back some profits from profitable traders in order to ensure all users funds are protected. As a result of this agreement, once the Mango team finishes processing, all users will be able to access their deposits in full with no loss of funds.

The defense should not be permitted to introduce the October 14 Tweet. As the Court is aware, the Government previously moved to exclude the defense from introducing the defendant's self-serving statements. The defense responded that some statements may be admissible under the rule of completeness, and the Court set a process for identifying any such statements.

At the time of the argument on motions *in limine*, the defense was noncommittal about whether it intended to introduce any of the defendant's statements for reasons other than the rule of completeness. The deadline for the defense to make its initial identification of materials it intends to offer in its case, or as non-impeachment material during the Government's case-in-chief, has now passed. The defense has identified only a small handful of materials, and the October 14 Tweet is not among them. Nonetheless, because the defense has not committed to not introducing this Tweet, there is no assurance the defense will not attempt to use it at trial or reference it during opening statements.

The defense should not be permitted to introduce the October 14 Tweet, unless this Court finds that it qualifies for admission under the rule of completeness, pursuant to the procedures discussed at the argument regarding motions *in limine*. *First*, the defense has not marked the October 14 Tweet as an exhibit it intends to use for a non-impeachment purpose. But the October 14 Tweet has no impeachment value. It is the defendant's own statement, and therefore cannot plausibly impeach the testimony of any Government witness. *See* Fed. R. Evid. 608, 613. *Second*, the defense also cannot introduce the October 14 Tweet as substantive evidence, even if it were to supplement its notice. As explained in the Government's motions *in limine*, the hearsay rules bar a defendant from introducing his own post-hoc statements characterizing earlier conduct. *See* Dkt. 77 at 20-22. And *third*, even if the defense could postulate a non-hearsay reason for introducing the statement, admission of the evidence would violate Rule 403 because it would be impossible,

as a practical matter, to prevent the jury from relying on it for the improper hearsay embedded within the message.

    Accordingly, the Government respectfully submits that the Court should rule the October 14 Tweet inadmissible before trial, so the parties can plan their respective strategies accordingly.

    Respectfully submitted,

    DAMIAN WILLIAMS
    United States Attorney

by: __/s_____
    Thomas Burnett
    Peter Davis
    Assistant United States Attorneys
    (212) 637-1064 / 2468

    Tian Huang
    Special Assistant United States Attorney
    (202) 598-2523