**TALKIN, MUCCIGROSSO & ROBERTS, L.L.P.**
ATTORNEYS AT LAW
40 EXCHANGE PLACE
18TH FLOOR
NEW YORK, NEW YORK 10005

(212) 482-0007 PHONE
(212) 482-1303 FAX
WWW.TALKINLAW.COM
EMAIL: INFO@TALKINLAW.COM

MARYLAND OFFICE:
5100 DORSEY HALL DRIVE
SUITE 100
ELLICOTT CITY, MD 21042
410-964-0300

NEW JERSEY OFFICE:
2500 PLAZA 5
HARBORSIDE FINANCIAL CENTER
JERSEY CITY, NJ 07311
201-342-6665

March 27, 2024

Honorable Arun Subramanian
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

**VIA ECF**

         Re:  <u>United States v. Avraham Eisenberg</u>
             23 Cr. 10 (AS)

Dear Judge Subramanian:

  Defendant Avraham Eisenberg ("Eisenberg") writes in partial opposition to the motion, ("Motion," Mot., Dkt. 107) filed yesterday, of Mango Labs LLC ("Mango Labs") to quash the March 4, 2024 Rule 17(c) subpoena ("Subpoena") he served on Mango Labs. For the reasons stated below, the Motion should be denied in part and the Subpoena should be modified.

  Federal Rule of Criminal Procedure 17(c) states, "A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates." Under *United States v. Nixon*, 148 U.S. 683, 699–700 (1974), "the party requesting the subpoena has the burden of showing 'that the materials requested are relevant, specifically identified, admissible, and not otherwise procurable by the exercise of due diligence.'" *United States v. Pena*, No. 15 Crim. 551, 2016 WL 8735699, at *2 (S.D.N.Y. Feb. 12, 2016).

  Evidence of bias is appropriately sought through a Rule 17 subpoena that is returnable the first day of trial. *See, e.g., United States v. Seabrook*, No. 16 Cr. 467 (ALC), 2017 WL 4838311, at *2-3 (S.D.N.Y. Oct. 23, 2017) ("[I]mpeachment evidence can be obtained by means of a Rule 17(c) subpoena at trial.") (citing *United States v. Murray*, 297 F.2d 812, 821 (2d Cir. 1962); *United States v. Yudong Zhu*, 13 Cr. 761 (VM), 2014 WL 5366107, at *5 (S.D.N.Y. Oct. 14, 2014) (denying in part government's request to quash Rule 17(c) subpoena because "documents relating to [defendant's former employer's] alleged bias are not only relevant, but also admissible"); *United States v. Carollo*, No. 10 Cr. 654 (HB), 2012 WL 1195194, at *2 (S.D.N.Y. Apr. 9, 2012) (denying in part government cooperator's motion to quash Rule 17(c) subpoenas because "[i]mpeachment may be the proper subject of a subpoena" and noting that requested documents "go[] beyond

simply demonstrating prior conduct in order to attack [cooperator's] character for truthfulness and may suggest bias or motive on the part of [cooperator] to cooperate with the government").

Tellingly, in its motion, Mango Labs makes the specious allegation that the purpose of the Subpoena is to somehow harm or "harass" Mango Labs. Mot. at 9 (section titled "The Subpoena Is an Oppressive Attempt to Harass a Non-Party Witness and Victim"). The claim is baseless and disingenuous. The undersigned made multiple attempts to contact Mango Labs to discuss both service of the Subpoena and its scope in an attempt to reach an amicable solution acceptable to both parties. Mango Labs proved uncooperative. After the Subpoena was issued, the undersigned spoke briefly to counsel for Mango Labs on March 6, 2024, and it was agreed that counsel for Mango Labs would speak to his client regarding acceptance of service and revert back.[1] That call was followed by an email the same day, to which Mango Labs did not respond.[2] Two days later, on March 8, 2024, the undersigned emailed again "following up on our discussion" and requesting that counsel for Mango Labs "[k]indly contact me with an update." When no update or return call came, the undersigned again emailed counsel for Mango Labs on March 16, 2024, to which counsel for Mango Labs did not respond. Finally, acknowledging that Mango Labs refused to communicate, Mr. Eisenberg was forced to serve Mango Labs at its office in Sheridan, Wyoming on March 22, 2024. Just five days later, and with no attempt at negotiation, Mango Labs filed this Motion.

Moreover, despite its assertions, Mango Labs is neither a victim nor a prospective witness. Indeed, Mango Labs, making clear that it is a distinct entity from the Mango DAO, even refers to itself as "a non-party entity that happens to possess the aggregated claims of Defendant's victims," citing the civil Complaint it filed against Mr. Eisenberg. Mot. at 1. Whether Mango Labs is ultimately able to step into the shoes of others in the civil matter is irrelevant to their status in this case. The government has not alleged that Mango Labs is a victim, and neither the government nor the defense has included Mango Labs on its respective witness list.

Turning to Mango Labs's assertion that the Subpoena is overly burdensome, it is notable that rather than engage in well-established practice in this, and most, districts to confer and discuss ways to narrow the Subpoena, Mango Labs, via counsel from a multinational firm, filed the Motion two business days after being served and then noticed the appearance of five attorneys. Had Mango Labs been willing to discuss the Subpoena with the undersigned, the scope of the Subpoena could have been reduced. Indeed, in light of the Court's rulings on the government's motions *in limine* and discovery received from the CFTC and SEC via the government, including communications between those agencies and Mango Labs, Mr. Eisenberg withdraws requests 1, 5, 6, and 7. What remains are three discreet and appropriate requests. By all appearances, despite

---

[1] The undersigned also asked counsel if they represent Dafydd Duriaraj ("Duriaraj"), the founder of Mango and a central figure in this case, and asked about acceptance of service of process as to him as well. Later disclosed 3500 materials confirmed that counsel does represent Duriaraj. However, counsel, to date, has failed to respond to these inquiries.

[2] Emails from the undersigned to counsel for Mango Labs are attached collectively as Exhibit 1.

Hon. Arun Subramanian
Page 3

its assertion to the contrary,[3] through its actions, Mango Labs' has demonstrated that its genuine concern clearly is not the conservation of resources. Furthermore, the 3500 materials reveal that counsel for Mango Labs has provided a large number of documents and electronic data to the government throughout the investigation of, and during, the pendency of this of this case. Counsel has also met and conferred with government on multiple occasions including as recently as yesterday. It appears Mango Labs definition of burdensome shift when working with the prosecution.[4]

As to the demands, Request 2 calls for documents on or after October 1, 2022 relating to Eisenberg and the two Mango Markets accounts he allegedly used to commit the charged conduct. Eisenberg agrees to limit the request to communications involving Mango founders Dafydd Durairaj and Max Schneider and include an end date of December 31, 2022. In other words, this request is now limited to Mango's founders, one of whom, Durairaj, as stated above, is expected to be a critical government witness, regarding Eisenberg and his accounts during the limited timeframe (three months) at issue in this case. These documents have not been produced in discovery or the 3500 materials to date, are limited in scope, and will likely be used as both direct evidence and impeachment of Durairaj, including as evidence of bias. *See Seabrook*, 2017 WL 4838311, at *3 (noting that evidence of bias "is almost always relevant and never collateral" and a proper request in a Rule 17(c) subpoena). Prior to this response, the undersigned was not afforded the opportunity by Mango Labs' counsel to offer the above concessions.

Request 3 seeks documents related to a pop-up on Mango Markets website in the v3 protocol that stated "The v3 protocol is in public beta. This is unaudited software, use it at your own risk." The pop-up, which the defense seeks to prove was shown to all Mango Markets users in October 2022, is direct evidence of Mr. Eisenberg's state of mind and intent and also the materiality of his alleged misrepresentations. This discreet request is for items not publicly available or in any materials disclosed by the government.

Request 4 calls for documents relating to the Terms of Service that Mango Markets published on March 6, 2023. The Court has already ruled that, subject to enumerated guardrails, the 2023 Terms of Service are relevant and admissible,[5] stating:

---

[3] Mango Labs complains that "Defendant is seeking to bury Mango Labs in impermissible and last-minute discovery to further deplete the resources behind efforts to recover the funds he stole from Mango Markets' users." Mot. at 9. In addition to the fact that Mango Labs made no effort to negotiate any tailoring of the Subpoena, it includes no information regarding the volume of discovery (even an estimate) called for by the Subpoena, and the steps taken by its team of high-priced lawyers from multiple law firms betrays none of the poverty the company asserts. Moreover, the baseless claim that Mr. Eisenberg asked for seven discrete categories of documents related to this prosecution as a means of interfering with Mango Labs's effort to recover funds makes no logical sense.

[4] By raising this point, Eisenberg in no way intends to implicate the government in Mango Labs' inconsistency.

[5] Mango Labs's assertion, without citation, that Request 4 "seek[s] information that his Court has

Hon. Arun Subramanian
Page 4

> THE COURT: Really what you're using this for is, you're making concrete for the jury what you mean by there were no terms of service at the time, by showing the jury, here's what happened afterward, just so you can see what could have been in place at the time but wasn't, all right? Is that a fair way to kind of put it? Like you're saying, it's abstract if we just say there were no terms of service and the jury doesn't understand what that means, but when you show them what terms of service could have been in place, by what they actually did, that emphasizes to the jury the lack of the terms——
>
> MR. KLEIN: Absolutely. . .

March 14, 2024 Hearing Tr. at 24:14-25. In rendering this ruling, the Court specifically rejected the argument, propounded in the Motion, that the documents "would be used by Defendant in an attempt to show that his victims deserved to have their assets taken." Mot. at 5.[6]

The Motion also includes a series of unpersuasive arguments unrelated to the specific documents. First, Mango Labs complains that the request is "last minute, days before the April 8, 2024 trial begins." Mot. at 9. As described above, Mango Labs has been avoiding service for almost three weeks. Moreover, the nature of trial subpoenas is that they are narrowly tailored—as this one is—and served shortly before trial—as this one was. And, Mango Labs' extensive collaboration with the government indicates that the requested information is currently at their ready.

Second, the motion, citing no authority, asserts that Eisenberg has not shown that Mango Labs possesses the requested items. Notably, Mango Labs, which knows what it does and does not have, does not claim that it lacks control over these items.

Third, the Motion incorrectly asserts that the Subpoena implicates Rule 17(h).[7] Rule 17(h) is meant to foreclose attempts to subvert Rule 26.2 and get early disclosure of statements in the government's possession, and is inapplicable where, as here, the statements are demanded in a trial subpoena after Rule 26.2 statements have been exchanged by the parties. See Fed. R. Crim. P. 17(h), advisory committee's note to 1979 amendment ("This addition to rule 17 is necessary in light of proposed rule 26.2, which deals with the obtaining of statements of government and defense witnesses."). Moreover, as noted above Mango Labs is not a victim and the requests do not implicate victim statements.

---

already ruled is irrelevant" is wrong. Mot. at 6.

[6] Eisenberg has been able to obtain a copy of this document from the public domain but requires delivery from Mango Labs for authenticity purposes.

[7] "No party may subpoena a statement of a witness or of a prospective witness under this rule. Rule 26.2 governs the production of the statement." Fed. R. Crim. P. 17(h).

Hon. Arun Subramanian
Page 5

Fourth, Mango Labs asserts that these requests should have been "directed to the government rather than a non-party." Mot. at 10. The very purpose of a Rule 17(c) subpoena is to supplement Rule 16 discovery received from the government. The limited requests in the Subpoena are directed at Mango Labs and not the government because Mr. Eisenberg believes that Mango Labs possesses the items and the government does not.

Finally, Mango Labs asserts, with no explanation, that Requests 1, 3, 4, and 5 implicate privilege issues. Requests 1, 4, and 5 have been withdrawn. Regarding Request 3, at a minimum, the Terms of Service themselves are public-facing documents and cannot be privileged. With regard to any other documents, Mango Labs should be required to produce a privilege log or otherwise explain the nature of the privilege it is claiming.

For all these reasons the Court should accept the narrowed requests and otherwise deny the Motion. Thank you for Your Honor's consideration of this letter.

                                                  Respectfully submitted,

                                                  *Sanford Talkin*
                                                  Sanford Talkin
                                                  Noam Greenspan

                                                  – and –

                                                  Brian Klein
                                                  Ashley Martabano
                                                  Riley Smith
                                                  Waymaker LLP

cc:     all counsel of record (by ECF)