

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

April 2, 2024

Hon. Arun Subramanian
United States District Court
500 Pearl Street
New York, NY 10007

      Re:    <u>United States</u> v. <u>Avraham Eisenberg</u>, 23 Cr. 10 (AS)

Dear Judge Subramanian:

      The Government writes in response to the Court's March 29, 2024 Order (ECF No. 123) on "[t]he issue of whether market participants' ordinary assumptions are relevant here and to what extent, and the kind of 'hypothetical' question the Government would intend to ask." As set forth below, the parties agree that ordinary investors' expectations are not relevant to whether the defendant committed manipulation and that there should not be witness testimony on this point. The parties disagree, however, over whether a materiality requirement applies to the manipulation prong to Count One. As set forth in the Government's other filing today regarding outstanding issues with respect to the jury charge, there is no materiality requirement for the manipulation prong for commodities fraud. If the Court disagrees, and the Government must prove that the manipulation was material, then the Government has proposed types of questioning below to elicit appropriate testimony.

      **A.  Market Participants' Ordinary Assumptions Are Not Relevant to Whether the Defendant Committed Manipulation.**

      At the final pretrial conference, the Court asked the Government about the following jury instruction requested by the Government related to the manipulation element of commodities fraud: "Because market participants ordinarily assume that prices, such as the prices of cryptocurrencies or perpetuals, are determined by the natural interplay of supply and demand, an act is manipulative if it is designed to deceive or defraud others by sending a false pricing signal to the market." The proposed charge goes on to state, "[c]onsequently, conduct that is designed to deceive or defraud others by controlling or artificially affecting those prices is prohibited."

      The defense and the Government agree that market participants' assumptions are not relevant to whether the defendant engaged in manipulation and there should not be witness testimony on this topic. Instead, this sentence explains the rationale behind Congress's decision to prohibit the use of "manipulative or deceptive device[s] or contrivance[s]" under the Commodities Exchange Act, *see* 7 U.S.C. § 9(1), and the analogous provision of the Securities Exchange Act, *see* 15 U.S.C. § 78j(b). As such, judges have instructed juries on this background rationale. For example, Judge Liman, interpreting the CEA, provided this similar instruction in *United States v. Phillips*:

> Because market participants ordinarily assume that prices, such as exchange rates, are determined by the natural interplay of supply and demand – that is, the prices determined by available information and market forces – an act is manipulative if it is designed to deceive or defraud others by sending a false pricing signal to the market.

No. 22 Cr. 138 (LJL), Trial Tr. at 1350. And, in the context of the Exchange Act, Judge Cote provided a similar instruction in *Securities and Exchange Commission v. LEK Securities Corporation, et al.*

> Manipulation refers to intentional or willful conduct designed to deceive or defraud investors by controlling or artificially affecting the price of securities. Because market participants ordinarily assume that the price at which they purchase or sell securities is determined by the natural interplay of supply and demand, an act is manipulative if it sends a false pricing signal to the market or creates a false impression of supply and demand.

No. 17 Civ. 1789 (DLC), Trial Tr. at 2586.

Accordingly, the sentence regarding ordinary market participants' expectations is properly included as stated in Charge Six as context for the jury, but could be deleted if the Court is so inclined, and testimony on this issue would not be relevant at trial.

**B. If the Court Rules that the Manipulation Must be "Material," then the Government Should be Permitted to Ask Witnesses "If-You-Had-Known" Questions.**

As set forth in the Government's letter of today regarding outstanding issues with respect to the jury charge, there is no materiality requirement for the manipulation prong for commodities fraud. Nonetheless, if the Court rules that there is a materiality component to the manipulation prong, then the Government must be able to meet that burden with appropriate questioning. Accordingly, the Government would intend to ask hypothetical questions of witnesses who used Mango Markets intended to elicit relevant testimony as to whether the fact of the manipulation would have mattered to an investor's decision-making. Such questions would likely include:

- Would it matter to you if you knew that a person was intentionally moving the price of perpetuals on Mango Markets?

- Why would it matter to you if you knew that a person was intentionally moving the price of a perpetual on Mango markets?

These questions, which squarely address the materiality issue, are appropriate under Second Circuit caselaw. "The Federal Rules of Evidence allow the admission of fact testimony so long as the witness has personal knowledge, while opinion testimony can be presented by either a lay or expert witness." *United States v. Cuti*, 720 F.3d 453, 457-58 (2d Cir. 2013). "'[T]he distinction between statements of fact and opinion is, at best, one of degree.'" *Id.* (quoting *Beech*

*Aircraft Corp. v. Rainey*, 488 U.S. 153, 168 (1988)). "'All knowledge is inferential, and the combined effect of Federal Rules of Evidence 602 and 701 is to recognize this epistemological verity but at the same time to prevent the piling of inference upon inference to the point where testimony ceases to be reliable.'" *Id.* (quoting *United States v. Giovannetti*, 919 F.2d 1223, 1226 (7th Cir. 1990)) (alterations omitted).

In the Second Circuit, "a witness may testify to the fact of what he did not know and how, if he had known that independently established fact, it would have affected his conduct or behavior." *Cuti*, 720 F.3d at 459. "'[W]hat-if-you-had-known' questions that present withheld facts to a witness are especially useful to elicit testimony about the impact of fraud." *Id.* Nor is the rule in this Circuit an outlier: "other circuits have permitted the use of hypothetical questions to inquire into the effect of a fraud." *Id.* (collecting cases). The Second Circuit has repeatedly approved of the admission of testimony responding to hypotheticals based on other trial evidence. *See United States v. Block*, 797 F. App'x 668 (2d Cir. 2020) (affirming admission of what-if-you-had-known evidence elicited from auditor witnesses at trial concerning inflation of non-GAAP earnings metric); *United States v. Gramins*, 939 F.3d 429, 446 (2d Cir. 2019) (responses to hypothetical questions about "the truth" "can constitute sufficient evidence of materiality to support a conviction for securities fraud"); *Cuti*, 720 F.3d at 456 (affirming admission of testimony from two accountants "as to how they had accounted for the proceeds from the fraudulent transactions; how they would have accounted for the transactions had they been aware of the full facts; and how the material information that was withheld from them led to misstatements in the company's financial statements").

In *Cuti*, for example, two accountants testified, in a case involving accounting fraud, "as to how they had accounted for the proceeds from the fraudulent transactions; how they would have accounted for the transactions had they been aware of the full facts; and how the material information that was withheld from them led to misstatements in the company's financial statements." *Cuti*, 720 F.3d at 456. The Second Circuit observed that "the inference that [the accountants] were asked to make in answering the hypothetical questions was limited by the factual foundation laid in earlier admitted testimony and exhibits, the factual nature of the hypotheticals, and the witnesses' reasoning, which was based on undisputed accounting rules." As the Second Circuit reasoned:

> Each [witness] was a certified and experienced accountant personally familiar with the accounting of the transactions at issue. The hypothetical questions utilized facts that had been independently established in the record. If the facts as the witnesses had understood them were A and the true facts were B, it was not inappropriate to ascertain, from the very witnesses responsible for their accounting, whether B would have affected that accounting under the same, undisputed accounting rules. And, since the applicable accounting rules were explained in detail, the reasoning process that the witnesses employed in answering the hypotheticals was straightforward and transparent to the jurors, who could readily discern whether the responses given were reliable.

*Id.* at 458.

The same is true here. The Government intends to call witnesses who had deposits on Mango Markets at the time of the defendant's manipulation. These witnesses are personally familiar with and participated Mango Markets. They will answer questions utilizing facts that will be independently established from documents and the testimony of other witnesses during the course of the trial. Under Second Circuit precedent, it is permissible for these witnesses to testify about whether certain facts would have mattered to them as a market participant.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

by: __/s_____
Thomas Burnett
Peter Davis
Assistant United States Attorneys
(212) 637-1064 / 2468

Tian Huang
Special Assistant United States Attorney
(202) 598-2523