

Waymaker LLP
515 S. Flower Street, Suite 3500
Los Angeles, California 90071
T 424.652.7800

April 4, 2024

**Brian E. Klein**
Direct (424) 652-7814
bklein@waymakerlaw.com

<u>*Via ECF*</u>

Honorable Arun Subramanian
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

Re:     <u>United States v. Avraham Eisenberg</u>
        **23 Cr. 10 (AS)**

Dear Judge Subramanian:

Per the Court's request during the March 28, 2024 final pretrial conference, defendant Avraham Eisenberg respectfully submits this letter to the Court to raise certain evidentiary objections in advance of trial. Defense counsel has met and conferred with the government in an attempt to resolve the below objections, including on April 3, 2024. Although the parties were able to narrow their disputes, a number still remain. Given the volume of the government's proposed exhibits and the 3500 materials (as well as the government's almost daily continuing productions of additional proposed exhibits and 3500 materials), the defense has been unable to review and formulate objections to every potential government exhibit. As such, what follows is not an exhaustive list of objections, but instead a good faith attempt to flag as many as practicable, and Mr. Eisenberg reserves the right to raise further objections at trial (*e.g.,* hearsay-related objections).

The defense also raises in this letter additional objections to two lines of anticipated government questioning that were discussed with the government in advance of submitting this letter. As with objections to the government's proposed exhibits, there may be other government questions that the defense will object to at trial, and Mr. Eisenberg reserves all his rights to do so (*e.g.*, foundation or hearsay-related objections). However, the defense flags these two issues in advance of trial in an effort to resolve them before it starts.

I.     **Bases for Objections**

**Federal Rule of Evidence 106**. Under Rule 106, as recently amended, "If a party introduces all or part of a statement, an adverse party may require the introduction, at that time, of any other part—or any other statement—that in fairness ought to be considered at the same time. The adverse party may do so over a hearsay objection." The government has offered many exhibits which are incomplete or selectively edited, including portions of chat messages as well as public tweets or other statements for which related statements provide necessary context.



**Federal Rules of Evidence 401 and 402**. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Many exhibits proffered by the government lack relevance to the issues at trial and are therefore inadmissible. Fed. R. Evid. 402 ("Irrelevant evidence is not admissible.").

**Federal Rule of Evidence 403**. Even relevant evidence may be excluded by a trial court "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Under Rule 403, "[e]vidence is considered prejudicial if it 'involves some adverse effect . . . beyond tending to prove the fact or issue that justified its admission into evidence.'" *Hart v. RCI Hosp. Holdings, Inc*., 90 F. Supp. 3d 250, 257 (S.D.N.Y. 2015) (citation omitted). As discussed further below, the government has marked many exhibits that violate the tenets of Rule 403.

**Federal Rule of Evidence 404(b)**. Pursuant to Rule 404(b), evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character. While it may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident, if such evidence is deemed admissible, an appropriate limiting instruction that the evidence is to be considered for a proper purpose only, and not as evidence of the defendant's propensity for wrongdoing or criminality, must be read to the jury. *United States v. Scott*, 677 F.3d 72, 79 (2d Cir. 2012) (citing *United States v. Huddleston*, 485 U.S. 681, 691 (1988)). In instances in which the government offers other act evidence to establish a defendant's knowledge or intent, the Second Circuit "requires that the government identify a similarity or connection between the two acts that makes the prior act relevant to establishing knowledge of the current acts." *United States v. Garcia*, 291 F.3d 127, 137 (2d Cir. 2002). Despite informing the defense that it did not intend to offer Rule 404(b) evidence, many of the government's exhibits are attempts at end-runs around Rule 404(b)'s provisions.[1]

## II.    Problematic Government Exhibits

What follows is a list of exhibits that have been discussed with the government along with defense's objections pursuant to Rules 106, 401, 403 and/or 404(b) that includes a brief explanation of basis for the objection(s). Defense counsel is prepared to discuss these objections in detail at Friday's status conference or at the Court's convenience, and may need to add to its explanations based on the government's arguments opposing the defense objections.

---

[1] On October 23, 2023, the government confirmed in an email to defense counsel that it would not seek to offer Rule 404(b) evidence at trial, which was the date for such notice when the trial was set for December 2023. Since then, the government has not given notice that its position has changed and even if it did not it would be too late.



| Exhibit No. | Objections | Brief Explanation |
|---|---|---|
| GX-101 | FRE 403; FRE 404(b) | This exhibit appears to have little, if any probative value: it is a chat that begins two weeks after the alleged events; it is unclear whether the messages are not at least partially in jest; the only purpose the exhibit appears relevant to is attempting to show that Mr. Eisenberg is the type of person who would flee or solicit a fake passport. In this instance, it is undisputed that Mr. Eisenberg purchased airline tickets in his own name and traveled using his own passport, both to and from the U.S. to Israel. The defense is also not aware of any possible evidence that Mr. Eisenberg ever traveled on a fake passport. Willingness to obtain or travel on a forged or fake passport weeks after the fact when Mr. Eisenberg had in fact traveled on his own passport has no bearing on any of the elements of the offenses charged in this case. Suggesting otherwise is unduly prejudicial with essentially no probative value in terms of establishing the elements of the offenses at issue here.<br><br>Seeking to obtain a forged or fake passport is evidence of another crime or wrongful act, of which the government has not given the required advance notice under Rule 404(b). |
| GX-102 | FRE 403; FRE 404(b) | This purported chat has no apparent probative value. It takes place more than two weeks after the events in this case, does not mention the transactions at issue yet suggests that Mr. Eisenberg is the kind of person who would be willing to "come to Miami and ride jet skis and commit financial crimes," and suggests that he has committed unrelated financial crimes in Miami. The exhibit includes messages where Mr. Eisenberg purportedly wrote, "Miami isn't the best jurisdiction for financial crimes. I speak from experience. I'm always down to hear fincrim pitches though." He also writes, "Should we rob a decentralized bank."<br><br>The government did not give the required advance notice under FRE 404(b). This purported chat has no |



| | | |
|---|---|---|
| | | bearing on the transactions at issue in this case, which were allegedly completed in a different jurisdiction, and only possibly bears on Mr. Eisenberg's purported character and propensity to commit similar crimes. |
| GX-103 & GX-104 | FRE 401; FRE 403; FRE 404(b) | These two exhibits are from the same purported chat thread. They are not relevant to this case and have essentially no probative value. The chats purport to show Mr. Eisenberg discussing shorting USDT, a transaction that is not at issue in this case. During a meet and confer, the government acknowledged that it was not certain it was going to seek to admit these exhibits, but it claimed they were relevant to establish that Mr. Eisenberg views a stablecoin (USDT, *not* USDC) as different from the U.S. dollar (and therefore presumably not a medium of exchange). The statement is s not evidence that is probative of the position that Mr. Eisenberg has that belief or understanding about USDC, a totally separate stablecoin. Furthermore, even if the statement did establish his willingness to short USDC or USDT, that does *not* shed any light on Mr. Eisenberg view as to whether either is a medium of exchange. These exhibits would cause a trial within a trial about the differences between USDC and USDT (which are significant) and will confuse and mislead the jury.<br><br>To the extent the government seeks to suggest there is something nefarious in Mr. Eisenberg's willingness to short cryptocurrencies or speak crassly, these exhibits were not properly noticed in advance under FRE 404(b). |
| GX-105 & GX-106 | FRE 401; FRE 403 | These exhibits are a press release relating to a CFTC penalty against a different DeFi project and the metadata establishing its foundation. The press release is about a case the CFTC settled against a DAO "for illegally offering leveraged and margined retail commodity transactions in digital assets; engaging in activities only registered futures commission merchants (FCM) can perform; and failing to adopt a customer identification program as part of a Bank Secrecy Act compliance program, as required of FCMs." This does not tend to establish |



| | | |
|---|---|---|
| | | that Mr. Eisenberg knew that the CFTC viewed USDC, MNGO or MNGO-Perpetuals as commodities specifically, or that his conduct was illegal or regulated by the CFTC more generally. At most they tend to show that he was aware of the CFTC bringing cases in the DeFi space. This CFTC case is distinct from Mr. Eisenberg's alleged actions and the fact that he may have viewed a website for an undetermined amount of time does not establish what he knew or understood about the CFTC's actions in the space, nor does it establish that it would apply to his actions.  Like other exhibits set out below, this collection of articles show that the federal government has inconsistently sought to regulate the crypto space and that in fact, there was an enormous amount of uncertainty in the space. The government has sought to prevent Mr. Eisenberg from suggesting any such thing in its briefing, and so seeks to both prevent important context and explanation while seeking to attribute malintent and knowledge of wrongdoing based on the same evidence. These exhibits do not have the probative value the government suggests and risk confusing and misleading the jury as to their significance, and would require a trial within a trial about the CFTC's allegations to distinguish them from this case. The prejudice substantially outweighs any probative value. |
| GX-107 | FRE 106 | This exhibit purportedly reflects a portion of Mr. Eisenberg's search history from his cellphone. Defense counsel let the government know that it will review other search histories from his cellphone and other devices and may seek to submit additional results pursuant to Rule 106. The government agreed to consider those, but this is not resolved yet so the defense is flagging it for the Court now. |
| GX-108 | FRE 106 | This exhibit is a chat that, as currently edited, includes Mr. Eisenberg discussing that he is out of the country and that he is only in Israel for a few weeks. The defense has requested that the government include additional information from a later chat exchange within the same thread, that bears on why he remained abroad, specifically, a group of |



| | | |
|---|---|---|
| | | messages beginning with "Back in PR?" and finishing with "[b]een a rough couple months." The government refused to add this additional context explaining Mr. Eisenberg's absence because the chats, as currently edited, end on October 30, 2022. The proposed additions are from December 12, 2022. The defense additions should be included in the exhibit pursuant to the rule of completeness. |
| GX-109 | FRE 106 | This exhibit is purportedly a chat between Mr. Eisenberg and an unidentified individual that includes Mr. Eisenberg referencing a statement he planned to issue the next day. Mr. Eisenberg did, in fact, release a statement the next day on Twitter. The defense believes that the entire Tweet statement (part of which is encompassed in his replies to his initial Tweet) should come into evidence pursuant to the rule of completeness, and the government has previously objected to it coming into evidence. |
| GX-111 | FRE 401; FRE 403 | This exhibit shows Mr. Eisenberg on September 30, 2022 allegedly saying that he did not plan to do anything for Yom Kippur, but says "might go back to chabad on sukkot." The government claims it wants to use this exhibit to show that Mr. Eisenberg did not purchase his ticket to Israel until after the trades at issue. There is ample, more direct evidence other evidence to prove this proposition that is not in dispute. As such, this exhibit offers little probative value that is not cumulative, and its prejudice vastly outweighs that minimal probative value because it leaves the impression that Mr. Eisenberg is a non-observant Jew or void of religious values, which could offend or unduly prejudice certain jurors. |
| GX-113 | FRE 106 | *See* GX-107 above. This document also purports to reflect search histories. |
| GX-114 | FRE 403; FRE 404(b); FRE 106 if admitted over objection | This exhibit includes a group chat that offers little probative value, is highly prejudicial, and is incomplete on its face. The chat includes a Mr. Barnett saying "I've seen mostly negative reviews of you so far" and then puts a string of links in the thread which are not viewable as currently marked as a potential exhibit. These could be highly negative, |



|  |  | facetious, or even positive, but there is no way to know and the jury could be mislead, confused, and unfairly assume the worst.<br><br>At the end of the exhibit, Mr. Eisenberg says "The loans were paid back though," and "Although my personal belief is that paying back loans is not a matter of morality. Except personal loans based on trust. I don't pay the banks either if I can get away with it." The message earlier suggests Mr. Eisenberg has or is willing to commit bank fraud. This is clear propensity/character evidence that seeks only to make Mr. Eisenberg look like someone who would defraud banks. This exhibit is unnoticed 404(b) evidence.<br><br>The defense may be open to considering certain redactions. And if the Court permits this exhibit, the defense would propose additional portions of the chat, pursuant to the rule of completeness, beginning earlier than where it currently begins, to provide important context. |
|---|---|---|
| GX-115 | FRE 410; FRE 403 | This exhibit appears to have little to no probative value. The government has said that the chat establishes that Mr. Eisenberg used a certain wallet, referenced in the chat, but the chat is otherwise wholly unrelated to the trades at issue and would confuse the jury. The defense has suggested stipulating to the fact that the wallet was Mr. Eisenberg's. The government said it would consider this. |
| GX-116 | FRE 401; FRE 403; FRE 404(b); FRE 106 if admitted over objection | This exhibit is a long purported chat between Mr. Eisenberg and an individual named Dimitry about buying companies for use in crypto transactions. Based on the chat, it looks like Mr. Eisenberg would be willing to violate potential sanctions against dealing with individuals in Russia, and that he is seemingly desperate to obtain access to nominee entities that are *not* the alleged nominee entities at issue in this case. The government has said that this chat establishes that Mr. Eisenberg was in control of the Bochenclean email account, but nothing else. As such, the probative value of the remainder of the chat, |



| | | |
|---|---|---|
| | | other than impermissibly making Mr. Eisenberg look like a person willing to engage in multiple uncharged transactions to conceal his identity, is *de minimis*. The defense has offered to stipulate to Mr. Eisenberg's control over this email account to resolve this dispute. The government has said they would consider this. |
| GX-201 | FRE 401; FRE 403; FRE 404(b); FRE 106 if admitted over objection | This is an excerpt of GX-116 and the defense objects for the reasons above. |
| GX-300 | FRE 401; FRE 403 | *See* GX-105 and GX-106 above. This exhibit also reflects a website visit suggesting Mr. Eisenberg was searching for information about government regulation of the crypto space. The defense's objections are similar to those articulated with respect to GX-105 and 106. |
| GX-301 | FRE 401; FRE 403 | *See* GX-105 and GX-106 above. This exhibit also reflects a website visit suggesting Mr. Eisenberg was searching for information about government regulation of the crypto space. The defense's objections are similar to those articulated with respect to GX-105 and 106. |
| GX-310 | FRE 401; FRE 403 | *See* GX-105 and 106 above. This exhibit also reflects a website visit suggesting Mr. Eisenberg was searching for information cases involving extradition. The defense's objections are similar to those articulated with respect to GX-105 and GX-106. |
| GX-313 | FRE 106 | This exhibit appears to be missing information that other similar exhibits contain. As such, the defense requests that the government confirm it is an authentic copy. Otherwise, this document, like prior exhibits that reflect internet searches, may be incomplete and the defense may submit additional searches run by Mr. Eisenberg to supplement the record. |
| GX-400 | FRE 401; FRE 403; FRE 404(b) | The government has said it does not intend to offer this exhibit into evidence, but it plans to use it for authentication purposes, which the defense does not |



|  |  | object to at this time. However, if the government subsequently seeks to offer the entirety of this exhibit, which purports to contain all of Mr. Eisenberg's Twitter direct messages, the defense would object on various grounds, including FRE 401, FRE 403, and FRE 404(b). |
| --- | --- | --- |
| GX-401 | FRE 106 | The defense has proposed supplements to this exhibit pursuant to the rule of completeness, which the government is still considering. |
| GX-403 | FRE 401; FRE 403; FRE 404(b); FRE 106 if admitted over objections | These chats discuss a completely unrelated transaction relating to Mr. Eisenberg's purported shorting of USDT. The defense understands that the government believes this is probative for the same reasons as GX-103 and GX-104. As such, the defense refers the Court to its position on those exhibits. If the Court permits this exhibit over those objections, the defense would proffer additional portions of the chats pursuant to the rule of completeness. |
| GX-404 | FRE 106 | The defense has proposed supplements to this exhibit, which the government is considering. |
| GX-405 | FRE 401; FRE 403; FRE 404(b); FRE 106 if admitted over objections | This chat is unrelated to the trades at issue and shows Mr. Eisenberg discussing a bug bounty program for an unrelated token weeks after the trades at issue. The government has proffered that this demonstrates Mr. Eisenberg knows how to follow a bounty program if he wants to. Given that this chat does not begin until eight days after trades at issue and Mr. Eisenberg does not respond until November 2, 2022, it establishes nothing about his knowledge of bug bounty programs prior to or at the time of the trades at issue. As such, it has *de minimis* probative value, and, if anything, may confuse the jury. The conversation also characterizes a Tweet of Mr. Eisenberg's generally in a way that suggests he may have a propensity toward activities similar to those at issue here without providing any specifics. The government's articulated relevance is not supported by the document itself and it risks both confusing the jury and suggesting Mr. Eisenberg has been or is willing to commit similar bad or improper acts for |



| | | |
|---|---|---|
| | | which the government did not give the required advance notice under Rule 404(b). |
| GX-501 | FRE 401; FRE 403; FRE 404(b) | The government has said it does not intend to offer this exhibit into evidence but merely use it for authentication purposes, which the defense does not object to at this time. However, if the government subsequently seeks to offer the entirety of this exhibit, which purports to contain all of Mr. Eisenberg's Discord messages with a given user, the defense would object on multiple grounds including Rules 401, 403, and 404(b). |
| GX-502 | FRE 401; FRE 403; FRE 404(b) | *See* GX-501 above. |
| GX-502A | FRE 404(b) | This exhibit is a Discord chat containing a discussions of trades in which Mr. Eisenberg was purportedly involved that are tied to the FODL token. The defense contends that it constitutes unnoticed alleged prior bad acts under Rule 404(b). This exhibit also has integrity issues because the defense understands some messages may be missing, which would be a basis to keep it out of evidence. The defense may consider redactions to this exhibit if the Court permits it into evidence. |
| GX-609 & GX-609A | FRE 403; FRE 404(b) | Please see the below discussion: "Waves Civil Complaint and Related Google Doc" |
| GX-700 Series | FRE 403; FRE 404(b); FRE 106 if admitted over objections | The defense has concerns about the integrity of the GX-700 series of exhibits, which are Signal chats with government witness Victor Li that Li recorded by video. Thus, there is a high likelihood for confusion and the exhibits' prejudice – at least in certain cases – vastly outweighs any probative value. Certain portions may consist of alleged prior bad acts evidence. Defense counsel is engaged in ongoing discussions with the government about these concerns. The defense is simply alerting the Court that there are potential issues here that it hopes to resolve without the assistance of the Court. |
| GX-800 & GX-800A | FRE 401; FRE 403 | These exhibits depict a purported Tweet by Mr. Eisenberg and the press release referenced in that |



|  |  | Tweet. The defense objects to these exhibits for reasons similar to those set forth in its objections to GX-105 and GX-106. |
|---|---|---|
| GX-801 & GX-801A | FRE 401; FRE 403 | These exhibits depict a purported Tweet by Mr. Eisenberg and the press release referenced in that Tweet. The defense objects to these exhibits for reasons similar to those set forth in its objections to GX-105 and GX-106. |
| GX-802 & GX-802A | FRE 401; FRE 403 | These exhibits depict a purported Tweet by Mr. Eisenberg and the press release referenced in that Tweet. The defense objects to these exhibits for reasons similar to those set forth in its objections to GX-105 and GX-106. |
| GX-820 | FRE 403; FRE 404(b) | Please see the below discussion: "Waves Civil Complaint and Related Google Doc" |
| GX-860 | FRE 403; FRE 106 if admitted over objections | This is a brief snippet of a podcast interview of Mr. Eisenberg in which the interviewer asks a very loaded and lengthy question about his alleged trades in this case to which he responds that he cannot talk about them because of the settlement agreement. As such, there is no probative value and it is extremely prejudicial. If the Court permits this exhibit to come in over defense objections, it should be supplemented pursuant to Rule 106 to include a prior snippet that provides the basis for the question Mr. Eisenberg is answering in the proffered clip. |

**Waves Civil Complaint (GX-820) and Related Google Doc (GX-609).** The government seeks to offer into evidence the federal civil complaint Mr. Eisenberg's attorneys filed against Numeris Ltd. and Sasha Ivanov regarding the Waves protocol that includes claims of price manipulation under the CEA and fraudulent misrepresentation (GX-820) and a Google Doc purportedly discussing the Waves fraud (GX-609). The defense understands that the government believes that these exhibits help establish that Mr. Eisenberg understood that the CEA applied to his alleged actions at issue here. The defense objects to the exhibits pursuant to Rule 403; this would lead to a trial within trial about what is at issue in the Waves case and why it is distinct from this case. Moreover, if the Waves complaint were permitted into evidence it would implicate privileged discussions between Mr. Eisenberg and his attorneys who filed the complaint about what he understood about it and when. The jury is unlikely to understand the distinctions between the facts in the Waves case and the allegations here, particularly without the benefit of Mr. Eisenberg's counsel's testimony, which would require him to waive the attorney-



client privilege; something he should not be required to do. The jury could also wrongfully conclude that Mr. Eisenberg's lawyers advised him that his alleged trades on Mango Markets would be illegal and that he had a more sophisticated understanding of the law than he did. The prejudice would be severe, and the probative value of a complaint and purported analysis of an unrelated set of trades on another blockchain protocol is limited.

The defense will separately provide the Court with a copy of the proposed exhibits by e-mailing Chambers.

## III.     Problematic Government Lines of Lay Witness Questioning

The defense has met and conferred with the government about two lines of anticipated government questioning that are of concern, which the defense discovered when reviewing the 3500 materials. The lines of questioning would elicit testimony from: (1) Dafydd Durairaj, a founder of Mango Labs, that they consulted with a hostage negotiator in seeking to resolve the matter with Mr. Eisenberg; and (2) users and/or founders of Mango Markets claiming that borrowing on Mango Markets entailed a legal obligation to repay the borrowed funds.

Regarding the first, the fact that a hostage negotiator was consulted has no bearing on whether Mr. Eisenberg's actions were criminal and is utterly inflammatory because it implies Mr. Eisenberg might have engaged in violence and physical threats. This makes the prejudice heavily outweigh any probative value in violation of Rule 403.

As for testimony that borrowing on Mango Markets entailed a legal obligation or intent to repay, such testimony does not establish that using Mango Markets required an intent to repay, that Mr. Eisenberg believed that there was an obligation to repay, or intended to deceive others by "borrowing" without intending to repay. Instead, it speaks to an ultimate issue for the jury to decide and risks misleading the jury because it is a legal conclusion in violation of Rule 403.

There is one final issue that the defense wishes to raise with the Court that it has not yet had the chance to raise with the government. Based on the defense's review of the 3500 materials, it appears that the government may intend to ask non-expert witnesses if Mr. Eisenberg's alleged conduct constituted manipulation (which the Court has precluded the government from asking its two experts). If so, the defense objects to such a line of questions for the same reasons it objected to government experts testifying about that subject. Thus, for example, the government should not be permitted to ask its Ascendex witness if that exchange froze Mr. Eisenberg's funds because it believed he had manipulated the price of MNGO on its exchange.

***



Hon. Arun Subramanian
April 4, 2024
Page 13 of 13

We appreciate the Court's consideration of the above objections.

Respectfully submitted,

Brian E. Klein
Ashley E. Martabano
Riley P. Smith
Waymaker LLP

 -and-

Sanford N. Talkin
Noam B. Greenspan
Talkin, Muccigrosso & Roberts, LLP

*Attorneys for Avraham Eisenberg*