

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

April 7, 2024

Hon. Arun Subramanian
United States District Court
500 Pearl Street
New York, NY 10007

Re:     United States v. Avraham Eisenberg, 23 Cr. 10 (AS)

Dear Judge Subramanian:

In its April 4 and 5, 2024 letters, the defense moved to preclude certain lines of questioning and exhibits, and to request a jury instruction on security-based swaps. This letter responds to efforts to exclude admissible testimony, provides the relevant legal principles for the defense's objections to exhibits, and objects to the defense's proposed jury instruction.

**A. Government Witnesses are Permitted to Use Ordinary Terms to Describe What Happened.**

First, the defendant seeks to hinder the presentation of evidence by preventing witnesses from using ordinary terms naturally used to describe events, such as manipulation or manipulative. Were these motions directed at the Government seeking to offer testimony through expert witnesses that elements of a charge had been met, the Government would have no objection, because it is well-settled that expert witnesses may not offer legal conclusions at trial. *See United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994). The defendant's motion, however, sweeps far more broadly and instead seek to impose a ban on any witness's use of the term "manipulation." That request is as impractical as it is improper.

The Government intends to call users and developers of Mango Markets to testify about what they observed during and after the October 11, 2022 attack by Mr. Eisenberg. When testifying, these witnesses should be permitted to use terms like "manipulation" that accurately describe the conduct they observed on Mango Markets. In doing so, they will not be expressing a "legal conclusion," but rather using the plain meaning of the term to describe what they saw. This type of testimony is routinely upheld by courts, and indeed admission of testimony using the terms "manipulation" or "manipulated" and even "artificially inflate[d]" has been affirmed by the Second Circuit.

For example, in *United States v. Discala*, the defendant argued on appeal that the district court erroneously permitted a cooperator "to repeatedly use the terms 'illegal' and 'manipulation'" and a law enforcement agent to provide improper opinion testimony, based on specialized knowledge, that evidence gathered in the investigation showed illegal manipulation. No. 22-675, 2023 WL 4118637, at *3 (2d Cir. June 22, 2023); see *United States v. Discala*, Oral Arg. at 14:00-

21:09 (June 5, 2023) (describing law enforcement agent's testimony).  The Second Circuit rejected the claim that the cooperator's testimony regarding manipulation was improper; to the contrary, in assessing whether admission of the law enforcement agent's opinion that evidence gathered in the case demonstrated illegal manipulation—which the government conceded should not have been admitted—was harmless (which it was), the Second Circuit relied on the testimony of multiple cooperating witnesses that they had "manipulated the price of certain stocks" and "artificially inflate[d] the price of the stocks" to show that the admissible evidence against the defendant was overwhelming. *Id*. at *4.  In other words, even if it was arguably improper for a law enforcement witness to opine that evidence gathered in the investigation demonstrated that charged conduct was illegal, it was perfectly admissible (indeed, highly probative) for a witness to describe conduct as manipulation or artificially inflating the price of a security. *Id*.; *see United States v. Offill*, 666 F.3d 168, 177-78 (4th Cir. 2011) (affirming the admission of lay-opinion testimony under Rule 701 in a securities-fraud case and held that the district court "acted well within its broad discretion" in admitting a cooperating witness's testimony describing his own conduct as "fraudulent," "securities manipulation," and "illegal"); *see also United States v. Farrell*, 921 F.3d 116, 144-45 (4th Cir. 2019) (attorney properly gave lay opinion testimony that certain conduct would contravene legal ethics rules where the testimony "was based on personal knowledge and on [the witness's] experience as a lawyer"); *United States v. Hoffecker*, 530 F.3d 137, 170-71 (3d Cir. 2008) (holding that lay witness properly opined under Rule 701 that the defendant's company was a "scam").

Here, the testimony or documentary evidence that the defendant seeks to prevent the jury from hearing is well within the scope of admissible evidence that the Second Circuit blessed in *Discala*.  The Government does not intend to elicit from these witnesses that any conduct was "illegal" or to have them define the term "manipulate." *See Discala*, 2023 WL 4118637, at *3. Rather, the witnesses or related records may reflect the percipient observation that certain acts were manipulative—a perfectly reasonable and useful way for a percipient witness to describe his or her observations, and one useful to the jury that does not instruct the jury on the legality of any action or the elements of a crime.  *See id*. at *4; *see also Offill*, 666 F.3d at 177 (analogizing a witness describing conduct as "fraudulent," "securities manipulation," and "illegal" to a witness stating "that she saw the victim on the floor with what looked like blood on his shirt, even though she was not an expert and had not tested the substance to confirm that it was blood").

Consistent with the analysis of the Second Circuit in *Discala*, courts in this District and around the country regularly allow cooperating witnesses to describe their own conduct as "fraudulent" and "illegal," recognizing that such testimony is "helpful to the jury because it shed[s] light, based on [the witness]'s personal knowledge of his own illegal conduct, on the nature and purpose of the conspiracy and [the defendant]'s interaction with [the witness] in furthering its illegal aims." *Offill*, 666 F.3d at 178.

Finally, the probative value of this testimony is not substantially outweighed by the risk of unfair prejudice. The Court will instruct the jury on the legal definition of market manipulation, and further instruct that whether or not the defendant committed market manipulation is for the jury to decide consistent with the Court's instructions. Moreover, if the defense requests, the Government has no objection to the Court providing an additional limiting instruction when a witness uses the term "manipulation" to remind the jury that the Court will instruct on the

definition of manipulation. These steps will adequately protect the defendant's rights at trial, while also ensuring that the Government can fairly present its case.

In short, the testimony that the defendant seeks to preclude is testimony that is helpful to the jury and explains to the jury the observations of a percipient witness using plain language. Defendant's attempt to prevent the jury from receiving useful and admissible evidence is not supported by the law of this Circuit. *Discala*, 2023 WL 4118637, at *4.

**B. That Mango Consulted a Ransomware Negotiator is Highly Probative and Rebuts any Defense Argument that Mr. Eisenberg and Mango Markets Negotiated an Arms' Length Transaction.**

The defense sees to preclude a Mango Markets witness, Dafydd Durairaj, from testifying to the fact that he consulted with a ransomware negotiator during the time period that Eisenberg was seeking to extract protection from criminal prosecution in exchange for returning some of the Mango users' money. That Mr. Durairaj consulted with a specialist in ransomware negotiations is highly probative of how Mr. Durairaj viewed Mr. Eisenberg's conduct and provides necessary context to Mr. Durairaj's actions and words in the days after Mr. Eisenberg's crime; and is relevant to rebut the defense argument that this was an arms' length negotiation.

Federal Rule of Evidence 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Federal Rule of Evidence 402, in turn, provides that "[a]ll relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority."

Federal Rule of Evidence 403 provides, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice." Evidence is "unduly prejudicial" under Rule 403, "only when it tends to have some adverse effect upon a defendant *beyond* tending to prove the fact or issue that justified its admission into evidence." *United States v. Avila*, 22-1010-CR, 2024 WL 413408, at * 2 (2d Cir. Feb. 5, 2024) (quoting *United States v. Kadir*, 718 F.3d 115, 122 (2d Cir. 2013)).

*First*, that Mr. Durairaj was consulting with a ransomware negotiator during the days after the defendant's crime is highly probative to explaining why Mr. Durairaj made certain concessions to Mr. Eisenberg in negotiating a return of some of the stolen funds. For instance, as part of Mr. Eisenberg's proposal to return some of the stolen money, Mr. Eisenberg sought assurances that the Mango DAO would not freeze any of the stolen funds and would not pursue criminal charges. The Mango DAO voted to approve this proposal and so did Mr. Durairaj. Mr. Durairaj also tried to appease Mr. Eisenberg during these negotiations so that Mr. Eisenberg would return at least some funds. That Mr. Durairaj was consulting with a ransomware negotiator during this time will help the jury understand why Mr. Durairaj appeased Mr. Eisenberg through his words and actions. Further, to the extent that the defense will cross-examine Mr. Durairaj on his concessions and language after the attack, the Government should be permitted to put those words and actions in the full context, including by informing the jury that Mr. Durairaj was consulting with a ransomware negotiator at the time.

*Second*, if the defense suggests through argument or cross-examination asserts or suggests that the defendant's discussions with Mr. Durairaj after the crime were a normal settlement negotiation, and that Mr. Durairaj was not acting like a crime victim, the Government should be permitted to rebut that false claim. This was anything but a normal, arm's-length negotiation. The evidence will show that the defendant took all the cryptocurrency off of Mango Markets, wiping out the deposits of every single user of the platform. Then, he tried to extort Mango by offering to return some of those funds in exchange for Mango not freezing any of his stolen funds and not pursuing criminal charges. Mr. Durairaj and others at Mango Markets were effectively at the defendant's mercy, unsure of whether he was going to flee the country and move the stolen cryptocurrency in a way that would make it unrecoverable. They engaged in discussions with the defendant against that backdrop, not in the context of a typical settlement negotiation. The Government should be able to rebut any defense argument to the contrary, including by providing the fact that Mr. Durairaj did not view it as such and felt the need to consult with a ransomware negotiator.

Nor does the fact that Mr. Durairaj consulted expert ransomware negotiators suggest that "Mr. Eisenberg might have engaged in violence and physical threats." Mr. Durairaj will not suggest that. And the defense is free to make that clear to the jury. In short, this evidence is highly probative, directly rebuts multiple defense arguments and cross-examination points, and is admissible under Rule 403.

### C. Mango Witnesses Will Explain the Borrowing Feature on Mango Markets and How it Worked.

*Third*, the defense seeks to limit how witnesses will talk about the borrowing feature on Mango Markets. This motion is misguided because these lay witnesses will not be giving a legal opinion. Instead, they will properly explain how the borrowing function worked and the obligations that Mango users undertook when they borrowed—including, having enough collateral to support the borrow; keeping enough collateral to maintain their health ratio and to pay interest; and maintaining that collateral until they repaid or were liquidated. These are not legal opinions; they are explanations of what borrowing on Mango Markets entails. Testimony on that point is essential for the jury to understand borrowing on Mango Markets and how the defendant committed fraud by borrowing without ever intending to have sufficient collateral, pay interest or repay. The defense has not articulated any basis for exclusion.

### D. The Defense's Objection to Government Exhibits.

The Government intends to respond to the defense's objection to exhibits at the conference following jury selection. In anticipation of that conference, the Government writes to address two areas of law on which the defense heavily relies.

*First*, many of the defense's objections rest on Federal Rule of Evidence 403. That Rule allows courts to exclude otherwise relevant evidence only "if its probative value is *substantially* outweighed by the danger of *unfair* prejudice." Fed. R. Evid. 403 (emphasis added). "The term 'unfair prejudice' . . . speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief v. United States*, 519 U.S. 172, 180 (1997). "The question is not whether the evidence

was suggestive of guilt—as all relevant evidence offered against the defendant would suggest guilt—but rather, whether it tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justifies its admission into evidence." *United States v. Massino*, 546 F.3d 123, 132 (2d Cir. 2008).

Many of the defense's Rule 403 objections do not articulate any unfair prejudice, much less unfair prejudice that would substantially outweigh the probative value of the exhibit at issue. For example, many of the defense's Rule 403 objections are to exhibits that show the defendant was familiar with the law regarding market manipulation and fraud. This evidence strongly supports the inference that the defendant knew his conduct was unlawful, which, the Court has ruled, the Government must prove to establish guilt as to Count One. This evidence poses essentially no risk of inflaming the jury or risking a conviction for something other than the charged offense—the core prejudice with which Rule 403 is concerned, and is, on the other hand, highly probative of the defendant's willfulness. The defense's arguments about the closeness of the fit between the exhibits showing the defendant's knowledge of the law and his conduct in this case go only to weight and do not present any of the dangers Rule 403 is directed at preventing.

Second, many of the defense's objections invoke Federal Rule of Evidence 106, seeking to require the Government to expand exhibits to include the defendant's hearsay statements, or hearsay statements of other individuals. The defense's basic approach to Rule 106 is not consistent with the law.

Rule 106 provides: "If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part—or any other writing or recorded statement—that in fairness ought to be considered at the time." This requires admission only so much of a statement as necessary "to explain the admitted portion, to place it in context, or to avoid misleading the trier of fact . . . or to ensure a fair and impartial understanding of the admitted portion." *United States v. Marin*, 669 F.2d 73, 84 (2d Cir. 1982). It "does not, however, require introduction of portions of a statement that are neither explanatory of nor relevant to the admitted passages." *Id.*

As Judge Rakoff has explained, Rule 106 is not a vehicle to introduce material that is "context only insofar as they represent . . . self-serving attempts to shoehorn after-the-fact justifications for [a defendant's] actions." *United States v. Lumiere*, 249 F. Supp. 3d 748, 758 (S.D.N.Y. 2017); *accord United States v. Lesniewski*, 2013 WL 3776235, at *5 (S.D.N.Y. July 12, 2013), *aff'd sub nom United States v. Rutigliano*, 614 F. App'x 542 (2d Cir. 2015). Rather, the analysis a court must undertake is to examine the specific statements the Government intends to introduce and the reasons for introducing those statements, then examine whether the portions sought to be admitted under Rule 106 are necessary for the jury to fairly understand the admitted statement. For example, in *Lumiere*, the Government introduced portions of a recording to introduce certain "historical facts about the mechanics" of a mismarking scheme. *Lumiere*, 249 F. Supp. 3d at 758. Judge Rakoff rejected the defense's motion to introduce, under Rule 106, portions of the same recording in which the defendant suggested he had "semi-cogent explanations" for the marks. *Id.* As Judge Rakoff explained, "the admitted portions were a simple admission to participating in the mismarking scheme; the excluded portions were [the defendant's] improbable attempts to claim, long after the fact, that he had done so innocently." *Id.*

Similarly, in *United States v. Campos*, the Second Circuit affirmed a decision to preclude the defense from offering, under Rule 106, portions of recordings that the Government had offered. 763 F. App'x 97, 101 (2d Cir. 2019).  The Circuit explained that the Government had offered excerpts of the recording "for a limited purpose," namely, the falsity of a particular assertion.  *Id.* This did not open the door to using Rule 106 "as an end-run around the hearsay rule," by admitting other parts of the recordings that were not direct context for the specific statement at issue.  *Id.*; *see also United States v. Johnson*, 507 F.3d 793, 796 (2d Cir. 2007) (precluding admission of part of post-arrest interview under Rule 106); *United States v. Fawwaz*, 691 F. App'x 676, 678 (2d Cir. 2017) (same).

The Government will address the defense's Rule 106 objections at the next conference, and this case law will be important in that discussion.  The defense's Rule 106 objections proceed largely from the premise that, if the Government introduces some materials containing the defendant's statements, the Government must also introduce additional portions that the defense would like presented to the jury.  That is not the law.  The additional material must be necessary to explain or contextualize the admitted statement, to avoid misleading the jury.  Rule 106 is not an open-ended invitation to ignore the hearsay requirements and admit statements that do not serve that narrow purpose.

### E.  The Security-Based Swap Instruction.

Finally, the Government objects to the defense's proposed security-based swap instruction because it is plainly legally incorrect.  If the Court instructs on this issue, it should give the instruction offered by the Government in the original proposed jury instructions.

The Commodities Exchange Act defines a "mixed swap" as a security-based swap that is "also based on the value of 1 or more interest or other rates, currencies, commodities, instruments of indebtedness, indices, quantitative measures, or other financial or economic interest or property of any kind."  7 U.S.C. 1(a)(47)(D).  The defense's proposed instruction simply ignores the law and says a security-based swap is a mixed swap only if "USDC is a commodity and . . . MNGO Perpetuals were based on the value of USDC."  (Dkt. 131-1.)  This ignores all of the other ways that something can be a mixed swap.

By contrast, the Government's proposed instruction captured the full definition of mixed swap, instructing that the jury could reject the security-based swap exception if either: (1) "MNGO Perpetuals are based, in part, on the value of USDC and USDC is a commodity, currency, or a financial or economic interest or property of an kind," or (2) "MNGO Perpetuals are based in part, on any rate, index, or quantitative measure other than the price of MNGO, including a "funding" rate that is calculated based on the mid-price and asks on Mango Markets." (Dkt. 101, at 14.)  This accurately reflects the law on mixed swaps.


Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney


by: ___/s_____
      Thomas Burnett
      Peter Davis
      Assistant United States Attorneys
      (212) 637-1064 / 2468

      Tian Huang
      Special Assistant United States Attorney
      (202) 598-2523