

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

April 14, 2024

**By CM/ECF**
Hon. Arun Subramanian
United States District Court
500 Pearl Street
New York, NY 10007

      Re:    <u>United States</u> v. <u>Avraham Eisenberg</u>, 23 Cr. 10 (AS)

Dear Judge Subramanian:

    The Government writes to request that the Court direct the defense to provide supplemental disclosures regarding newly noticed testimony that it seeks to elicit from its expert witness, Jeremy Sheridan, and, if appropriate, preclude that testimony and related exhibits as untimely. The Government also seeks to preclude the defense from offering through Mr. Sheridan a line of testimony that the Court has already deemed inadmissible.

    As to the first issue, yesterday evening, the defense confirmed for the Government that it intends to call Mr. Sheridan as part of the defense case-in-chief.[1] Later that night, the defense provided some Rule 26.2 material and exhibits, which included spreadsheets of some previously undisclosed data, and other data the authenticity of which the Government has not yet been able to confirm. The defense has yet to provide drafts of any demonstratives that may accompany Mr. Sheridan's direct testimony. In response to the Government's inquiry, the defense also disclosed for the first time that Mr. Sheridan plans to testify on the following topics that were not previously included in the defendant's expert notice:

1. How the smart contract executed the defendant's trades;
2. The subsequent repayment proposals and pause of Mango Markets;
3. Rebuttal testimony of Mr. Jain and Dr. Mordecai regarding "certain demonstratives and exhibits."

    The defense's disclosures regarding these new topics, which are attached as Exhibit A, are not sufficiently detailed for the Government to evaluate the admissibility of this newly noticed testimony or to determine with certainty whether it should have been noticed earlier. The defendant's late notice of his intent to offer expert testimony rebutting the opinions of the Government's experts might be excusable if the testimony is in fact responsive to evidence that was presented last week. But the defendant has not explained why he could not have previously anticipated the need to offer expert testimony on other topics, such as the pause of Mango Markets,

---

[1] The defense also confirmed that it will no longer seek to call Dafydd Durairaj.

or why he should be permitted to offer an entirely new (and unauthenticated) data set that was not provided to the Government before trial, as required under Rule 16. As the Second Circuit has recognized, while the defendant has a right to present witnesses in his own defense, he "must still comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence," including the "the procedural requirements associated with expert disclosures." *United States v. Ulbricht*, 858 F.3d 71, 117 (2d Cir. 2017) (affirming the district court's preclusion of late noticed defense expert).

As to the second issue, the defense has notified the Government that it plans to have Mr. Sheridan testify about the May 2022 audit, which the defense incorrectly claims it now is able to elicit, based on Mr. Smith's testimony. As discussed below, the Government has not opened the door to the audit testimony, and the Court should adhere to its prior ruling.

## I. The Defendant's Untimely Disclosures

### A. Testimony regarding the subsequent repayment proposals and pause of Mango Markets should be precluded.

Yesterday evening, the defense informed the Government for the first time that Mr. Sheridan plans to testify regarding subsequent repayment proposals and pause of Mango Markets. The defense has failed to provide notice to the Government regarding what Mr. Sheridan's proposed opinions on these topics will be—instead, only providing the broad category that he could testify on. The defense's expert notice thus does not comply with Rule 16(b)(1)(c) because it "merely identifies the general topics" about which the expert may testify, rather than identify the expert's actual opinions and the bases for those opinions. *United States v. Kaufman*, No. 19 Cr. 504 (LAK), 2021 WL 408523, at *19 (S.D.N.Y. Sept. 8, 2021) (collecting cases); *see also United States v. Valle*, No. 12 Cr. 847 (PGG), 2013 WL 440687, at *5 (S.D.N.Y. Feb. 2, 2013) (same).

As the defense's disclosure currently stands, the Government cannot assess the reliability and propriety of Mr. Sheridan's opinions or whether they should have been noticed earlier. Based on the high-level information we do have, it appears that these topics are far beyond what was disclosed in the defense's January 12, 2024 expert notice. When the Government raised this concern to the defense in an email over the weekend, the defense responded by citing language in the January 12 notice indicating that Mr. Sheridan would testify regarding "the changes to [the Mango Markets protocol] after Mr. Eisenberg's alleged trades," and the Court's ruling during the March 14 hearing that Mr. Sheridan could "testify concerning the market mechanics and whether or not what Mr. Eisenberg did was consistent with the code, and whether modifications to the code were undertaken or not," Tr. at 49. Under any plausible reading, the cited language did not give the Government notice of the topics that the defense now seeks to elicit. Changes to the Mango Markets protocol, and modifications to the code are not the same thing as efforts by Mango to elicit repayment from the defendant or the decision to shutter the platform. Absent a compelling justification from the defense about why these topics were not noticed earlier, testimony about them should be precluded.

### B. Testimony regarding how the smart contract executed the defendant's trades should be precluded.

In advance of trial, the defense gave notice of its intent to offer testimony from Mr. Sheridan regarding the fact that Mango Markets "was designed to in some instances, enable conduct, and in others, prevent it." The defense also provided notice that Mr. Sheridan would offer a discrete set of opinions of Mr. Eisenberg's trading, specifying that he would opine that the trading required no manipulation of the Mango Markets code and that the MNGO token had low liquidity. The Court held that such testimony was permissible in so far as Mr. Sheridan intended to offer an opinion about "market mechanics and whether or not what Mr. Eisenberg did was consistent with the code," without commenting on whether or not the defense's actions were a strategic utilization of the code or losses were natural consequence of Mango Markets' design. 3/14/2024 Tr. At 49.

Now, the defense has stated that Mr. Sheridan intends to testify about how the Mango Markets smart contract executed the defendant's trades. Neither the defendant's prior notice, nor the colloquy at the March 14 hearing gave any indication that Mr. Sheridan planned to testify regarding how the Mango Markets smart contract actually executed the defendant's trades, beyond the discrete opinions listed in the notice and approved by the court.

Because the defense has not provided sufficient detail regarding what opinions Mr. Sheridan may offer on this topic, the Government is left to speculate about what this testimony might be. To the extent Mr. Sheridan intends to testify about trade execution on Mango Markets, the Government questions his qualifications to do so. Based on the materials provided by the defense thus far, including 26.2 materials produced yesterday evening, it appears that Mr. Sheridan has not reviewed the actual smart contract code, making it unlikely that he could competently testify regarding how the smart contract executed the defendant's trades.

This concern is amplified by the fact that the Government has observed Mr. Sheridan speaking with the defendant during the trial. Rule 703 does not permit an expert witness "to circumvent rules prohibiting hearsay" by "relying on … conversations with non-testifying witnesses … in order to prove [the truth of the matter asserted.'" *United States v. Dukagjini*, 326 F.3d 45, 59 (2d Cir. 2003) (citing Fed. R. Evid. 801(c)). For that reason, Mr. Sheridan should not be allowed to testify on this subject if such testimony is based on the defendant's (or the defendant's agents') out of court statements to him. This is exactly the type of hearsay testimony from an expert that the Rules of Evidence are designed to prevent.

At a minimum, the Government should be permitted to conduct a brief voir dire of Mr. Sheridan to ensure that the testimony he will offer on this topic is in fact competent expert opinion based on an appropriate foundation and not simply the defendant's self-serving account. *See United States v. Chastain*, 1:22-cr-00305-JMF, ECF No. 137, at 730-41 (voir dire of defense expert Matthew Edman).

### C. Defense Exhibits 61 and 62 should be precluded.[2]

Yesterday evening, the defense provided Defense Exhibits 61 and 62; while the Government has seen some version of Defense Exhibit 61, yesterday evening was the first time it was sent Defense Exhibit 62. Defense Exhibit 61 appears to be data regarding liquidations of some of the MNGO Perpetuals, and Defense Exhibit 62 appears to be the FTX and AscendEX MNGO spot prices, beginning in around January 2022 through October 10, 2022.

Defense Exhibits 61 and 62 are inadmissible on multiple grounds. From the little information the defense has provided, it appears that DX61 is a spreadsheet created from data pulled from a website titled "mango-logs.whiskeyfries.xyz." The defense appears to have found that link because it was mentioned in a Mango Markets Discord chat. The defense has not offered any basis to authenticate the data from that website, and the data is clearly not self-authenticating. The defense also intends to introduce the spreadsheets for the truth of the matter asserted therein, but have not identified any applicable hearsay exception. Finally, DX61 should be excluded because it focuses exclusively on liquidations, which was not a noticed topic of Mr. Sheridan's proposed testimony. The proposed exhibit should, therefore, be excluded.

Defense Exhibit 62 suffers from similar problems. DX62 purports to contain pricing data for MNGO tokens on FTX and AscendEx. The defense has not provided the underlying data sets from which those prices are drawn. As a result, the data in the exhibit cannot be authenticated, and the defense cannot establish that it fits the requirements of any hearsay exception. What is more, the data the defense seeks to offer is pricing data about MNGO running from the beginning of 2022 up to the day before the October 11, 2022 crime. The prices of Mango 10 months before the crime are not relevant, and even if they were, Mr. Sheridan should not be permitted to opine on those prices because he did not provide notice that he would testify about MNGO prices; he does not appear to have performed any analysis of those prices; and he is not an expert economics or trading who is qualified to testify about MNGO prices.

Finally, this afternoon, the defense identified two more exhibits—DX63 and DX64—which appear to be vote tallies from various Mango DAO votes, including votes from after the charged offense. The defense has not proffered a foundation for authenticating these documents, and it has not provided notice that Mr. Sheridan would delve into Mango DAO votes. Any such testimony would also be irrelevant and confusing.

Accordingly, Defense Exhibits 61 through 64, and the expert's reliance on them as a foundation for his testimony, should be precluded.

### D. Mr. Sheridan's late and inadequate disclosure also should preclude testimony in rebuttal to Mr. Jain and Dr. Mordecai's testimony.

---

[2] Shortly before the Government filed this letter, the defense informed the Government that it also plans on offering Defense Exhibits 63 and 64, which appear to suffer many of the similar issues discussed in this section and thus should be precluded.

The Government has complied with the Court's deadlines of providing Mr. Jain and Dr. Mordecai's notices and supplemental notices by February 22, 2024, as well as draft exhibits/demonstratives by the exhibit list deadline of March 24, 2024. Neither of the two experts deviated from their noticed opinions during their testimony. But now, the defense wants to present Mr. Sheridan as a rebuttal expert for both witnesses, and only disclosing that Mr. Sheridan will "rebut certain testimony that Messrs. Jain and Mordecai . . . gave when discussing certain demonstratives and exhibits." The defendant's disclosure is insufficient, per Rule 16(b)(1)(c)—at a minimum, the defense needs to provide the specific opinions that Mr. Sheridan plans to provide so that the Government as well as the Court can assess whether Mr. Sheridan, for example, is qualified to provide those opinions. Mr. Sheridan is not an economist, and thus, it is currently unclear to the Government whether Mr. Sheridan plans to opine on financial topics that Dr. Mordecai testified on, which would be far outside the scope of Mr. Sheridan's qualifications.

### E. Mr. Sheridan should be precluded from testifying on the May 2022 audit.

The defense claims that Mr. Sheridan is now able to testify regarding the May 2022 audit because of the Government's redirect of Brian Smith regarding the audit "open[ed] the door" to that testimony from Mr. Sheridan. That is incorrect. During the cross of Mr. Smith, defense counsel opened the door, asking the witness to read "The V3 protocol is in public beta. This is unaudited software. Use it at your own risk." Tr. 126:13-14. Based off of that cross, the Government thus redirected Mr. Smith on this point, and simply had the witness read a portion of the user manual, which was already in evidence, that stated that an audit had occurred. *Id.* at 135:5-22. In other words, the Government did not open the door for Mr. Sheridan to testify regarding that audit, as its redirect was elicited because of the defense's cross of Mr. Smith. Mr. Sheridan thus should be held to the Court's earlier ruling that he not be permitted to testify regarding the May 2022 audit. *See United States v. Lumiere*, 249 F. Supp. 3d 748, 759 (S.D.N.Y. 2017) (holding that "properly admitted evidence does not open the door to inadmissible evidence" by the defendant) (cleaned up).

        Respectfully submitted,

        DAMIAN WILLIAMS
        United States Attorney


   by: __/s_____
       Thomas Burnett
       Peter Davis
       Assistant United States Attorneys
       (212) 637-1064 / 2468

       Tian Huang
       Special Assistant United States Attorney
       (202) 598-2523