O4IVEIST

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

             v.                        23 Cr. 10 (AS)

AVRAHAM EISENBERG,

                  Defendant.           Trial

------------------------------x
                                       New York, N.Y.
                                       April 18, 2024
                                       9:30 a.m.


Before:

                    HON. ARUN SUBRAMANIAN,

                                       District Judge
                                        -and a jury-

                        APPEARANCES


DAMIAN WILLIAMS,
     United States Attorney for the
     Southern District of New York
PETER J. DAVIS
THOMAS S. BURNETT
TIAN HUANG
     Assistant United States Attorneys

WAYMAKER LLP
     Attorneys for Defendant
BRIAN E. KLEIN
ASHLEY MARTABANO
RILEY SMITH
     -and-
TALKIN MUCCIGROSSO & ROBERTS, LLP
SANFORD N. TALKIN
NOAM B. GREENSPAN

Also Present:  Brandon Racz, FBI
               Ryan Sears, Paralegal Specialist-USAO
               Jonathan Oshinsky, Paralegal Specialist-USAO
```

O4IVEIST

          (Deliberations resumed; jury not present)

          THE COURT: All right. So the Court has received a note from the jury dated today, and at 10:46 a.m., which reads:

          On page 28, can you define "pretense, representation, or promise."

          I make this part of the record as Court Exhibit D.

          The Court has furnished the parties with the note.

          Mr. Burnett or whoever is taking this on on the defense side, have you had a chance to consider the note and do you have any proposal on how to respond.

          MR. BURNETT: We do, your Honor.

          So we've considered the note. So our concern about answering it directly and just, like, defining these three terms for them is that we think that doing so would be based on a legally incorrect premise.

          So the key case here is, I think, *U.S. v. McNally*, which I have the cite, I believe, if you need it. It is 483 U.S. And I think the relevant -- no, no, this is not the right thing. Sorry. It is 459 F.3d 154. I'm sorry, I'm looking at *U.S. v. Males* from the Second Circuit. *McNally* also bears on this, but I think we should take it *Males* than *McNally* in the way to think about this.

          And what the Second Circuit says in *Males*, beginning at page 156, but primarily on page 157, is that it's wrong to treat the wire fraud statute as kind of being read in the

O4IVEIST

1  disjunctive, where it's like a scheme to defraud or for
2  obtaining property by false pretenses, representations, or a
3  promise.
4      And to kind of embody that idea, the jury instruction
5  that the Court approved is in the block quote on 157, which is
6  that:  The wire fraud statute covers any device or course of
7  action that deprives another of money or property by means of
8  false or fraudulent pretenses, representations or promises.  It
9  is, in other words, a plan to deprive another of money or
10 property by trick, deceit, deception, swindle, or overreaching.
11     So we think that "in other words" is what is
12 clarifying the meaning of scheme to defraud, including a scheme
13 to defraud by false pretenses, representations, or promises.
14     The other concern we have with giving too specific a
15 definition comes from *U.S. v. McNally*, which the citation there
16 is 483 U.S. 357.
17     THE COURT:  Can you give me that cite again.
18     MR. BURNETT:  483 U.S. 357.
19     And there, the Supreme Court, in discussing an older
20 opinion called *Durland v. United States*, explained that it's
21 historically been wrong to construe the wire fraud statute as
22 reaching something that would only, say, come under the
23 common-law definition of a term like "false pretenses"; and
24 instead is construed to "include everything designed to defraud
25 by representations as to the past or present, or suggestions

O4IVEIST

and promises as to the future."

So I think this all goes to say that the instruction the government would propose to the jury is not to define the three specific terms, but rather to give another instruction about the meaning of scheme or artifice to defraud or obtain money by false or fraudulent pretenses using the same language that the Second Circuit approved in *McNally* and the Supreme Court used in *Durland*.

And we have a paragraph to propose whenever the Court is ready, unless you have questions before I propose it.

THE COURT: All right.

What is the additional instruction?

MR. BURNETT: The wire fraud statute charged in Count Three prohibits any scheme or artifice to defraud or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises. This means it prohibits any plan to deprive another of money or property by trick, deceit, deception, swindle, or overreaching. It includes everything designed to defraud by representations as to the past or present or suggestions and promises as to the future.

THE COURT: Okay. So you're taking the language in those two cases and merging them together to provide additional guidance to the jury.

MR. BURNETT: That's correct.

O4IVEIST

1      THE COURT:  Okay.
2      And what is the defense's response?  Are you in
3  agreement with the government as to that proposed addition?
4      MR. GREENSPAN:  Your Honor, everything up to the last
5  few words in the government's instruction is already in the
6  Court's instruction, including the --
7      THE COURT:  It is literally the language that follows
8  the three words that have been provided.
9      MR. GREENSPAN:  Follows and precedes, yes.
10     THE COURT:  The phrasing might be different; it might
11 not end with a period.  But I think "in other words," and then
12 that part of it is there.
13     MR. GREENSPAN:  Correct.
14     So our concern is not that the government's
15 instruction is legally wrong — we don't have a problem with
16 that.  But we're not sure that it answers the jury's question
17 or helps the jury complete their function.
18     And so our proposal was to actually define the terms
19 using either *Black's* or dictionary definitions that the parties
20 hopefully could agree to.  We don't think that either *Males* or
21 *McNally* prohibits that given the sections we saw.  It doesn't
22 suggest that they have to be read conjunctively or
23 disjunctively, it just defines them.
24     THE COURT:  Okay.  What is your proposal?
25     MR. GREENSPAN:  We would propose defining "pretense"

1    as a calculated act representing facts; "representation" as a

2    statement made to influence an action; and "promise" as a

3    declaration of what one will do.

4          THE COURT:  Do you have an objection to providing

5    those definitions along with the instruction that the

6    government proposed?

7          MR. GREENSPAN:  No, we wouldn't object to that.

8          THE COURT:  Okay.

9          Mr. Burnett, if I were to provide the guidance that

10   you -- or the instruction as you proposed it, and then add in

11   the defendant's definitions of those three terms, the position

12   being that while the common-law understandings of these terms

13   were perhaps foreclosed by these precedents, simply giving the

14   jury the dictionary definition of the three terms that they

15   asked about would be helpful to the jury and would not seem

16   inconsistent with the further guidance that the government has

17   proposed.

18         MR. BURNETT:  So the only reason I'm pausing is just

19   that I haven't had the time to like actually research like the

20   legal definitions of some of these terms.  And the particular

21   one that I'm hung up on is "representation," which I think the

22   way defense had defined it is limited to a statement.  And I

23   don't think — at least like in the common-sense use of the

24   term, "representation" is limited to statements.  Like you can

25   misrepresent something any number of ways.  So it could be like

O4IVEIST

1    if we modified that to a statement or act --
2            THE COURT:  Why don't you take like ten minutes, and
3    then why don't we come back, and then we can see if we -- the
4    parties should talk and see if there's a combined response to
5    the note that both sides would be comfortable with.  I think
6    the parties are coming up with a framework that may work.  You
7    need a little time to just think about this, but not too much
8    time.
9            So let's come back at 11:45 and see if we've got a
10   proposal we can take back to the jury.
11           MR. BURNETT:  Thank you.
12           (Recess)
13           THE COURT:  All right.  What have you got?
14           MR. BURNETT:  All right.  So we actually just hit
15   "send" on an email to you.  We have an instruction that we have
16   an agreement on everything, except for one sentence, which I've
17   highlighted in the email.
18           THE COURT:  The highlighted sentence is:  "As I have
19   instructed you, the wire fraud statute is not limited to false
20   or fraudulent pretenses, representations, or promises."
21           MR. BURNETT:  That's correct.
22           THE COURT:  I take it that's a suggestion from the
23   government that the defense disagrees with.
24           MR. BURNETT:  That's right.
25           THE COURT:  Okay.

1          And why wouldn't that -- doesn't that reintroduce a
2    form of the disjunctive issue that we get out of *Males*, that
3    *Males* said, Look, we don't look at this disjunctively.  And by
4    saying that, it is not limited -- so you're trying to reinforce
5    *Males* -- let me just make sure I have this right.  You're
6    trying to reinforce *Males* by making sure that the jury does not
7    have the misimpression from this instruction, this additional
8    instruction, that liability is limited to false or fraudulent
9    pretenses, representations, or promises, because that would be
10   the type of disjunctive understanding that *Males* foreclosed; is
11   that correct?
12          MR. BURNETT:  That's right.
13          *Our view is that wire fraud covers schemes to defraud,*
14   *it covers schemes by false pretenses, representations, or*
15   *promises; and it shouldn't be -- they shouldn't be focused on*
16   *just like one piece of it under Males*.  The
17   conjunctive/disjunctive often is like used more to describe
18   whether the, like, object as property applies to both scheme to
19   defraud and false or pretenses.  But the basic point is that
20   this covers broad -- sweeps more broadly than just the
21   pretenses, representations, or promises because of the
22   scheme-to-defraud language.  And this captures that.
23          THE COURT:  So I guess my question really is why is
24   that necessary given the first paragraph which the government
25   proposed, which makes sure that the jury understands in the

last two sentences that this means it prohibits any plan to deprive another of money or property by trick, deceit, deception, swindle, or overreaching; it includes everything designed to defraud by representations as to the past or present or suggestions and promises as to the future. That would seem to be consistent with both *Males* and *McNally*. It is consistent, that's why you proposed it.

And then the only thing that we're really adding is to provide definitions of the three words so that the jury, if they didn't literally understand what those three words meant, they would have some basis for understanding of those three words. However, it would not say that they would have to find those particular three things to have happened — one of them — in order to find liability; in fact, that would be inconsistent with what is said in the prior paragraph.

MR. BURNETT: I think if we were starting on a blank slate, we wouldn't think we needed this sentence, your Honor. I think our concern was that they have like focused in on these three works as sort of the talisman for the statute; so the extra sentence is legally correct and sort of helps reinforce that point. But I agree that the first paragraph serves the function.

THE COURT: Okay.

So I'm going to deliver this additional instruction without the highlighted sentence, if the defense wants to be

O4IVEIST

1 further heard on this.

2 MR. KLEIN:  Your Honor, thank you.

3 Just I would take out the word "however."

4 MR. BURNETT:  That makes sense.

5 MR. KLEIN:  You can just say "I can provide."

6 THE COURT:  Yes.

7 Okay.  So let me make sure that I have this right.

8 And do the parties have a view on whether this should
9 be delivered back in writing or whether we should bring the
10 jury out?  Does it make a difference to either side?

11 MR. BURNETT:  Because they have the instructions back
12 there in writing already, I figure it might make sense to just
13 give it to them.

14 MR. GREENSPAN:  We agree with that.

15 THE COURT:  Okay.

16 So we'll send this back with a letter from the Court.

17 So the letter will read:  "Dear Jury:  In response to
18 your question, the Court further instructs you as follows:

19 "The wire fraud statute charged in Count Three
20 prohibits any scheme or artifice to defraud or for obtaining
21 money or property by means of false or fraudulent pretenses,
22 representations, or promises.  This means it prohibits any plan
23 to deprive another of money or property by trick, deceit,
24 deception, swindle, or overreaching.  It includes everything
25 designed to defraud by representations as to the past or

O4IVEIST

1   present or suggestions and promises as to the future.
2       "I can provide the following definitions:
3       "A pretense is a calculated act representing facts; a
4   representation is a statement, whether verbal or written, or an
5   act made to influence an action; a promise is a declaration or
6   a pledge to do or refrain from doing the thing specified."
7       So we'll give that back.
8       Any objections from the defense to providing that
9   additional instruction?
10       MR. GREENSPAN:  No, your Honor.
11       THE COURT:  Okay.  Any issues from the government?
12       MR. BURNETT:  No, your Honor.
13       THE COURT:  Okay.  So we'll put that in a letter.
14       We'll provide it to the parties in advance just in
15   case we've made any mistakes, and then we'll have that sent
16   back to the jury.
17       All right.  Thank you very much.
18       (Recess pending verdict)
19       THE COURT:  All right.  We have a note from the jury
20   that they have reached a verdict.
21       Anything to address before we bring the jury in?
22       MR. DAVIS:  No, your Honor.
23       MR. KLEIN:  No, your Honor.
24       THE COURT:  All right.
25       Mr. Hernandez, let's bring in the jury.

O4IVEIST

1          THE DEPUTY CLERK:  Yes, your Honor.
2          (Jury present)
3          THE COURT:  Please be seated.
4          Members of the jury, we have received your most recent
5  note stating that you have reached a verdict from 12:30 p.m.
6          I'll ask the foreperson, is that Juror No. 5?
7          FOREPERSON:  Yes.
8          THE COURT:  Have you reached a verdict?
9          FOREPERSON:  Yes, we have, your Honor.
10         THE COURT:  Can you please provide the verdict form to
11 Mr. Hernandez.
12         Mr. Hernandez, can you please get the form.
13         THE DEPUTY CLERK:  Yes, your Honor.
14         THE COURT:  Mr. Hernandez, can you please provide the
15 form back to the foreperson.
16         To the foreperson, Mr. Hernandez will inquire as to
17 the verdict, and then we'll go through each of the jurors to
18 ensure that the verdict is each one of your verdicts.
19         Mr. Hernandez, you may proceed.
20         THE DEPUTY CLERK:  Yes, your Honor.
21         Can I ask the foreperson to please rise.
22         In the matter of *United States of America v. Avraham*
23 *Eisenberg*, case number 23 Cr. 10, the verdict form, reading
24 Count One, commodities fraud.
25         Does the jury find the defendant guilty or not guilty

O4IVEIST

on Count One?

FOREPERSON:  Guilty.

THE DEPUTY CLERK:  Proceeding to the next section.

If you find a verdict of guilty as to Count One, please select which of the three acts you find that the defendant committed.  You may select more than one, but all jurors must agree on each act selected.

No. 1:  Use or employ or attempt to use or employ any manipulative device, scheme, or artifice to defraud.

Does the jury select option one, yes or no?

FOREPERSON:  Yes.

THE DEPUTY CLERK:  No. 2:  Make or attempt to make any untrue or misleading statement of a material fact or to omit to state a material fact necessary in order to make the statements made not true -- made not untrue or misleading.

Does the jury select option two, yes or no?

FOREPERSON:  No.

THE DEPUTY CLERK:  No. 3:  Engage or attempt to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

Does the jury select option three, yes or no?

FOREPERSON:  Yes.

THE DEPUTY CLERK:  Count Two, commodities manipulation.

On Count Two, does the jury find the defendant guilty

<pre>                                                                        </pre>
<pre>Case 1:23-cr-00010-AS   Document 172   Filed 05/10/24   Page 14 of 18   1521</pre>

O4IVEIST

1 or not guilty?

2     FOREPERSON:  Guilty.

3     THE DEPUTY CLERK:  Continuing on Count Two, attempted
4 commodities manipulation.

5     Does the jury find the defendant guilty or not guilty?

6     FOREPERSON:  Guilty.

7     THE DEPUTY CLERK:  And Count Three, wire fraud.

8     Does the jury find the defendant guilty or not guilty?

9     FOREPERSON:  Guilty.

10     THE DEPUTY CLERK:  Thank you.

11     The foreperson may be seated.

12     I'm going to poll the jury, ask if this is their true
13 verdict, starting with Juror No. 1.

14     Juror No. 1, is this your verdict?

15     JUROR:  Yes.

16     THE DEPUTY CLERK:  Thank you.

17     Juror No. 2, is this your verdict?

18     JUROR:  Yes.

19     THE DEPUTY CLERK:  Juror No. 3, is this your verdict?

20     JUROR:  Yes.

21     THE DEPUTY CLERK:  Juror No. 4, is this your verdict?

22     JUROR:  Yes.

23     THE DEPUTY CLERK:  Juror No. 5, is this your verdict?

24     JUROR:  Yes.

25     THE DEPUTY CLERK:  Juror No. 6, is this your verdict?

<pre>            SOUTHERN DISTRICT REPORTERS, P.C.
                      (212) 805-0300</pre>

O4IVEIST

|    |                                                             |
|----|-------------------------------------------------------------|
| 1  | JUROR:  Yes.                                                |
| 2  | THE DEPUTY CLERK:  Juror No. 7, is this your verdict?       |
| 3  | JUROR:  Yes.                                                |
| 4  | THE DEPUTY CLERK:  Juror No. 8, is this your verdict?       |
| 5  | JUROR:  Yes.                                                |
| 6  | THE DEPUTY CLERK:  Can you repeat that please?              |
| 7  | JUROR:  Yes.                                                |
| 8  | THE DEPUTY CLERK:  Thank you.                               |
| 9  | Juror No. 9, is this your verdict?                          |
| 10 | JUROR:  Yes.                                                |
| 11 | THE DEPUTY CLERK:  Juror No. 10, is this your verdict?      |
| 12 | JUROR:  Yes.                                                |
| 13 | THE DEPUTY CLERK:  Juror No. 11, is this your verdict?      |
| 14 | JUROR:  Yes.                                                |
| 15 | THE DEPUTY CLERK:  And Juror No. 12, is this your           |
| 16 | verdict?                                                    |
| 17 | JUROR:  Yes.                                                |
| 18 | THE DEPUTY CLERK:  The verdict is unanimous, your           |
| 19 | Honor.                                                      |
| 20 | THE COURT:  All right.                                      |
| 21 | Counsel, is there any reason that I cannot now dismiss      |
| 22 | the jury?                                                   |
| 23 | MR. DAVIS:  No, your Honor.                                 |
| 24 | MR. TALKIN:  No, your Honor.                                |
| 25 | THE COURT:  All right.                                      |

O4IVEIST

Ladies and gentlemen, in a moment I'm going to excuse you, which means that, among other things, the restrictions that you've been operating under — namely, that you cannot talk to anyone about the case and that you can't research the case — will no longer apply.  So you may do those things.

Let me say one thing on that score.  It's up to you whether you wish to speak with anyone.  This is a case that now that I can, I will tell you, has gotten some press.  So it's possible that members of the press will ask you -- ask to speak with you.  It's entirely up to you whether you choose to speak to them or not.  My own personal recommendation is that you not, in part because our jury system has long been based on the notion that what happens in the jury room, stays in the jury room.  And in that regard, I think there's an important reason to respect the privacy of your deliberations.  But it is entirely up to you.

What I will ask is that if you do speak with the press or anyone about this case and your involvement in it, that you respect the privacy of your fellow jurors' deliberations and views.  In that regard, what happens in the jury room should stay in the jury room, but you can speak about your own views about the case, but don't speak about what your colleagues' views were or the deliberations.  But at the end of the day, it's up to you what you wish to do on that score.

I want to really thank all of you for all your hard

work, your patience, and your dedication here.  I know that you've given up a lot to be here for the last two weeks, and it's taken a tremendous sacrifice, but it's also very inspiring to all of us.  So on behalf of the parties, the court staff and, most of all, me, I want to really thank you for your service here these past two weeks.

Now, if you're willing to wait -- I know you've been deliberating for a while, you've been here for two weeks, and if you need to get out of here, I would totally respect that.  But I have to handle a few matters with the parties.  But after that, I'd love to come back into the jury room and personally thank you and see if you have any questions, happy to answer them, and to really thank you personally for all the hard work and sacrifice that you've put in.

So with that, I will excuse you for a second to the jury room, and then I'll be back there.  Just give me about five minutes.

Thank you very much.

All rise for the jury.

(Jury discharged)

THE COURT:  Please be seated.

Okay.  I'll hear the parties' views, but I'll send -- I'm going to set a sentencing date for July 29th at 2:30 p.m.

In accordance with my individual rules and practices, the defense submissions are due two weeks prior to sentencing;

O4IVEIST

1  the government's submissions are due one week prior to
2  sentencing.  I'll direct the government to provide its
3  statement of the offense to probation within seven days, and
4  defense counsel must arrange for the defendant to be
5  interviewed within the next two weeks.
6         The deadlines under the rules for any pretrial --
7  post-trial motions, if there is any request to extend those,
8  you should confer with one another and make a request.  But
9  until I say otherwise, the deadlines are whatever the rules
10 provide for.
11        With that, anything further from the government?
12        MR. DAVIS:  No, your Honor.  Thank you.
13        THE COURT:  Anything further from the defense?
14        MR. TALKIN:  No.  Thank you, your Honor.
15        THE COURT:  All right.  Thanks to both sides for a
16 very well-tried case.  I really appreciate it.
17        Thank you very much.  We are adjourned.
18        (Trial concluded)