TALKIN, MUCCIGROSSO & ROBERTS, L.L.P.
ATTORNEYS AT LAW
40 EXCHANGE PLACE
18TH FLOOR
NEW YORK, NEW YORK 10005

(212) 482-0007 PHONE
(212) 482-1303 FAX
WWW.TALKINLAW.COM
EMAIL: INFO@TALKINLAW.COM

MARYLAND OFFICE:
5100 DORSEY HALL DRIVE
SUITE 100
ELLICOTT CITY, MD 21042

410-964-0300

NEW JERSEY OFFICE:
2500 PLAZA 5
HARBORSIDE FINANCIAL CENTER
JERSEY CITY, NJ 07311

201-342-6665

**BY ECF**

April 14, 2025

Honorable Arun Subramanian
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

                Re:    United States v. Avraham Eisenberg
                      23 Cr. 10 (AS)

Dear Judge Subramanian:

      Pursuant to the Court's invitation at the April 10, 2025 hearing, we write on behalf our client Avraham Eisenberg with a list of venue cases pertinent to or distinguishable from the venue issues in this case.

### A. Venue Dismissals with Analogous Facts

- *United States v. Smith*, 22 F.4th 1236, 1242-1243 (11th Cir. 2022) ("Smith was prosecuted for theft of trade secrets in the Northern District of Florida, but the parties agree that Smith remained in Mobile, which is in the Southern District of Alabama, during the commission of the crime. The parties also agree that the data was taken from servers located in the Middle District of Florida. . . . Venue was improper in the Northern District of Florida. The remedy for improper venue is vacatur of the conviction, not acquittal or dismissal with prejudice.") *aff'd on other grounds Smith v. United States*, 599 U.S. 236 (2023).[1]

- *United States v. Bezmalinovic*, 962 F. Supp. 435, 438 (2d Cir. 1997) ("Although the check from MHT was given to defendant in the Eastern District and deposited by Bezmalinovic in the Eastern District, the funds were not cleared until certain ministerial

---

[1] The Eleventh Circuit's holding in *Smith* that "[t]he remedy for improper venue is vacatur of the conviction, not acquittal or dismissal with prejudice," was affirmed by the Supreme Court. *Id.*

    acts occurred in the Southern District. But defendant did not intend those acts to take place in the Southern District, nor could he have foreseen that the acts would occur there. The crediting and debiting that occurred in Manhattan were purely ministerial acts that did not involve any decision-making; the decision to grant defendant a mortgage had already been made by MHT in the Eastern District.") (citations omitted).

- *United States v. Auernheimer*, 748 F.3d 525, 529 (3d Cir. 2014) ("New Jersey was not the site of either essential conduct element. The evidence at trial demonstrated that the accessed AT&T servers were located in Dallas, Texas, and Atlanta, Georgia. . . . In addition, during the time that the conspiracy began, continued, and ended, Spitler was obtaining information in San Francisco, California [], and Auernheimer was assisting him from Fayetteville, Arkansas []. No protected computer was accessed and no data was obtained in New Jersey.").

**B. Ministerial Acts Not Part of the Charged Scheme Insufficient to Establish Venue**

- *United States v. Greenhut*, 2016 WL 6652681, at *6-8 (C.D. Cal. Nov. 8 2016) ("Indeed, Gilliam could have received the gift card in the mail and successfully used the card at Safeway—taking advantage of the gift—*before* Carol Greenhut paid her bill. Whether Carol Greenhut paid her credit card bill is a matter between her and her bank, and does not affect the giving of the gift card. In addition, Carol Greenhut's possession of the credit card within the Central District of California is not an essential element of the offense. The government argues that without the payment of and ability to use a credit card located in the Central District of California, the crime charged in Count Three could not have been committed. . . . This misstates the test. The question is not whether *any* conduct within the district is a condition for the offense. The question is whether an '*essential* conduct element' of the offense begins in, continues into, or is completed in the charging district. The Court thus concludes that the government failed to prove by a preponderance of the evidence that the giving, offering, or promising of an illegal gratuity occurred in the Central District of California.") (emphasis in original) (internal quotations omitted).

- *United States v. Svoboda*, 347 F.3d 471, (2d Cir. 2003) (distinguishing (but upholding) "*Bezmalinovic*, 962 F. Supp. 435 [at 441], in which the court held that purely ministerial functions that are unintended and unforeseeable to a defendant are insufficient to establish venue" and noting that *Bezmalinovic* held "venue in bank fraud prosecution improper in the Southern District of New York where the defendant committed all relevant acts at banks in the Eastern District of New York and the only contact with the Southern District was the banks' cashing and payment of checks through their clearing houses in Manhattan").

**C. Preparatory Acts Insufficient to Establish Venue**

- *United States v. Geibel*, 369 F.3d 682, 696 (2d Cir. 2004) ("The government failed to establish that defendants' trades, involving primarily the purchase of options, utilized the facilities of any New York-based securities exchange or brokerage firm. Indeed, the only connection that defendants had with the SDNY is the fact that Freeman initially

    misappropriated the information in New York. . . . [A]lthough Freeman's actions ultimately resulted in defendants' trades, his conduct was too anterior and remote to confer venue in the SDNY.").

- *United States v. Ramirez*, 420 F.3d 134, 141 (2d Cir. 2005) (As in *Beech-Nut*, Vitug's act of sending the LCA forms to the Manhattan branch of the U.S. DOL prior to assembling her Form I-129 package and submitting it to Vermont was 'preparatory to the offense,' not part of it.") (citing *United States v. Beech-Nut Nutrition Corp.*, 871 F.2d 1181, 1190 (2d Cir. 1989)); *id.* at 146 ("Just as Vitug was not charged with committing visa fraud by filing false LCAs with the U.S. DOL in Manhattan, she was not charged with mail fraud on that basis either. Rather, the mailing of the LCA forms was a separate event that occurred prior to the charged offense and in preparation for it.").

- *United States v. Tzolov*, 642 F.3d 314, 319 (2d Cir. 2011) ("Nor did Butler commit securities fraud by boarding a plane in the Eastern District. At most, catching flights from the Eastern District to meetings where Butler made fraudulent statements were preparatory acts. They were not acts 'constituting' the violation. We have cautioned that venue is not proper in a district in which the only acts performed by the defendant were preparatory to the offense and not part of the offense. . . . That is all we have here. In other words, going to Kennedy airport and boarding flights to meetings with investors were not a constitutive part of the substantive securities fraud offense with which Butler was charged.") (internal citations and quotations omitted).

- *Bezmalinovic*, 962 F. Supp. at 438 ("The government is correct that the acts taken in the Southern District of New York were necessary in a 'but-for' sense to the ultimate success of defendant's scheme. . . But defendant did not intend those acts to take place in the Southern District, nor could he have foreseen that the acts would occur there.").

- *United States v. Tomasetta*, 2012 WL 2064978 (S.D.N.Y. June 6, 2012) ("Even if Nu Horizon agreed to accept large stocking packages which 'set in motion a chain of events ultimately leading to' defendants' fraudulent disclosures, venue for a securities fraud charge cannot be based on preparatory acts alone.").

- *United States v. Bozza*, 365 F.2d 206, 220 (2d Cir. 1966). ("We deal here with objections to venue which are urged to require dismissal of three substantive counts of receiving stolen stamps. . . . The only acts shown to have occurred in the Eastern District of New York with respect to this count were DeLutro's making and receiving telephone calls on a visit to Brooklyn for an unspecified purpose, during which he agreed to buy the stamps stolen from Hillsdale and bargained about the price, and his driving from the point of the call to Manhattan to receive them."); *id.* at 122 ("The judgment convicting Bozza on this count must therefore be vacated and the count dismissed for improper venue.").

- *United States v. Mallory*, 337 F. Supp. 3d 621 (E.D. VA. 2018) ("In this case . . . the evidence relied on by the government does not rise to the level of beginning essential conduct; it is merely antecedent preparation. Defendant did not begin to transmit or to attempt to transmit NDI to his Chinese contact by scanning the NDI onto an SD card at the

> FedEx store and hiding the SD card in his home because, while these steps were necessary to enable defendant to engage in proscribed conduct, they were not part of the proscribed conduct.").

### D. Speculative Inferences Insufficient to Establish Venue

- *United States v. Purcell*, 967 F.3d 159, 188 (2d Cir. 2010) ("While it is possible that Vasquez traveled from the Eastern District of New York to or through the Southern District of New York at least once between November 10 and December 12, to conclude that she actually did so would be mere guesswork.")

- *Tomasetta*, 2012 WL 2064978, 2012 U.S. Dist. LEXIS 79419, *17-18 ("What the Government might have proved, but failed to, cannot establish venue for the securities fraud count. Defendants are not charged with holding investor meetings, but rather are charged with deceiving investors about Vitesse's revenue recognition and options practices and, therefore, Vitesse's true financial condition. On the face of this record, a reasonable juror could not conclude that the Defendants presented such fraudulent information at the investor meetings held in New York.").

- *Mallory*, 337 F. Supp. 3d at 628 ("[T]hese arguments fail because the Fourth Circuit has held that a trial jury is not permitted to speculate to establish venue. . . . Without direct evidence, the government must provide an 'evidentiary hook,' such as evidence of how or where defendant made similar transmissions in the past, to enable the jury to infer that defendant followed a similar method in this case.) (internal quotations and citations omitted).

### E. Distinguishable Venue Cases the Government Discussed at the Hearing

- *United States v. Buyer*, No. 23-7202, 2025 WL 855773, 2025 U.S. App. LEXIS 6390, at *14 (2d Cir. Mar. 19, 2025) ("Here, the government offered evidence that . . . execution, clearing, and settlement . . . took place at least in part in SDNY, offering testimony that (1) part of the process of clearing Buyer's trades took place at a data center located in Purchase, New York, and that (2) Buyer's trades were "completed" only once they were written to storage on the Depository Trust and Clearing Corporation ('DTCC') server located in Manhattan. The government also offered evidence that Buyer traded on the New York Stock Exchange ('NYSE'), headquartered in SDNY, which supports venue.") (internal citations omitted).

- *United States v. Chow*, 993 F.3d 125, 143 (2d Cir. 2021) ("[T]he evidence at trial included testimony and documentary evidence that the Southern District of New York is the district in which the NASDAQ is located, where the shares of Lattice stock were listed and traded, where the brokers for the sellers in a significant number of Yin's Lattice share purchases were located, and where Yin's purchases of Lattice shares were executed, cleared, and recorded.").

Honorable Arun Subramanian
Page 5

- *United States v. Khalupsky*, 5 F.4th 279, 292 (2d Cir. 2021) ("First, evidence suggested the defendants foresaw that some of their trades would be consummated with counterparties in the EDNY. The government's expert confirmed that 175 of the defendants' trades were in fact consummated with counterparties in the EDNY, and that 300 more may have been. . . . Second, the government introduced evidence that one of Korchevsky's brokerage accounts used J.P. Morgan Clearing Corporation, located in the EDNY, as its clearing agent. The account-opening forms Korchevsky signed listed the J.P. Morgan Clearing Corporation's address. So did the account's monthly statements. The jury was thus entitled to infer that Korchevsky knowingly used an EDNY-based clearing agent for the illicit trades from that account. . . . Counterparties and clearing agents are both crucial to the success of the scheme. Without them, there would be no completed sale of a security.") (internal citations omitted).

- *United States v. Kim*, 246 F.3d 186, 188 (2d Cir. 2001) ("In each scheme, payment of the inflated invoices approved by Kim was done by wire transfer. Upon receiving Kim's approval, the UNMIBH chief cashier would, by fax, direct its bank to pay the relevant entity. From July 1997 forward, the UNMIBH paid its travel vendors by wire transfer from the Chase Manhattan Bank in New York City. The UNMIBH cashier testified at trial that on at least two occasions during the time the schemes were ongoing, she told Kim that the invoices were being paid by Chase Manhattan."); *id.* at 192-93 ("[W]e reject the notion that the very wires which caused the fraud to bear fruit through payment by Chase Manhattan can be characterized as just passing through the Southern District").

- *United States v. Brown*, 293 Fed. App'x 826, 829 (2d Cir. Sep. 25, 2008) ("[T]he passage of the wire transfer [of fraud proceeds] through the Southern District of New York created venue for statutory purposes - the Southern District was clearly a 'district from, through, or into which such commerce, mail matter, or imported object or person move[d].") (citing 18 U.S.C. § 3237(a)).

- *United States v. Teman*, 465 F. Supp. 3d 277 (S.D.N.Y. 2020) ("[T]he Signature Bank review . . . was part of the scheme that the unauthorized checks be constructed so as to clear review by Bank of America and the drawee banks, including Signature Bank, and to enable Teman to gain access to the funds. To obtain the money he sought, it was necessary for Teman to deceive both banks.").

Thank you for Your Honor's consideration of this letter.

                                                            Respectfully submitted,

                                                            *Sanford N. Talkin*

                                                            *Noam B. Greenspan*

                                                            Sanford N. Talkin
                                                            Noam B. Greenspan
                                                            Talkin, Muccigrosso & Roberts, LLP

          -and-

          Brian E. Klein
          Ashley E. Martabano
          Riley P. Smith
          Waymaker LLP

          *Attorneys for Avraham Eisenberg*

cc: all counsel of record (by ECF)