# EXHIBIT B

J. ALEXANDER LAWRENCE
ALawrence@mofo.com
MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019
Telephone: 212.468.8000
Facsimile: 212.468.7900

WILLIAM FRENTZEN (*pro hac vice* forthcoming)
WFrentzen@mofo.com
MICHAEL BURSHTEYN (*pro hac vice* forthcoming)
MBurshteyn@mofo.com
LARA MCDONOUGH (*pro hac vice* forthcoming)
LMcDonough@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105
Telephone: 415.268.7000
Facsimile: 415.268.7500

RAFAEL YAKOBI (*pro hac vice* forthcoming)
rafael@thecryptolawyers.com
THE CRYPTO LAWYERS, PLLC
848 Brickell Avenue, Penthouse 5
Miami, Florida 33131
Telephone: 619.317.0722

*Attorneys for Plaintiff Mango Labs, LLC*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- x

|  |  |  |
|---|---|---|
| MANGO LABS, LLC, | : | Index No. 23-cv-665 |
|  | : |  |
| Plaintiff, | : |  |
|  | : |  |
| -against- | : | **COMPLAINT** |
|  | : |  |
| AVRAHAM EISENBERG, | : | **JURY TRIAL DEMANDED** |
|  | : |  |
| Defendant. | : |  |
|  | : |  |
|  | : |  |

------------------------------------------------------------- x

Plaintiff Mango Labs, LLC ("Mango Labs" or "Plaintiff"), by and through its undersigned counsel, as and for its Complaint against Defendant Avraham Eisenberg ("Defendant"), states as follows:

## INTRODUCTION

1.     Mango Labs brings this action against Defendant for conversion, fraudulent misrepresentation, unjust enrichment, and a declaratory judgment to recover from harm caused by Defendant's brazen attack on Mango Markets.  Following his attack, Defendant's victims assigned their claims and rights related to the attack to Mango Labs.

2.     Mango Markets is a decentralized, non-custodial, cryptocurrency exchange and a pioneer in the decentralized finance ("DeFi") ecosystem.  Mango Markets launched in February 2021 and quickly became among the most utilized DeFi cryptocurrency protocols.  The organization that governs the protocol is the Mango Decentralized Autonomous Organization ("Mango DAO").  Mango Labs is an entity tasked with forward looking development for Mango Markets by the Mango DAO.

3.     On October 11, 2022, Defendant executed a malicious attack on Mango Markets. Specifically, he manipulated the value of the Mango token (MNGO) and, through fraud and deception, converted approximately $114 million from Mango Markets depositors into his own accounts.  Defendant bragged about his attack soon after on Twitter, describing his unlawful conduct as a "highly profitable trading strategy."

4.     In the days following his attack, Defendant schemed to protect his ill-gotten gains through further unlawful means.  He forced Mango DAO to enter into an unenforceable settlement agreement—under duress—purporting to release depositors' claims against him and precluding them from pursuing a criminal investigation.  Following the Mango DAO vote regarding Defendant's ultimatum, he returned approximately $67 million of the money he

unlawfully converted. He retained, and continues to retain, the remainder. Since the attack, Defendant has continued to plot to attack Mango Markets further, in public, and has used the converted funds to attack other cryptocurrency protocols as well.

5.      On December 23, 2022, the United States' Attorney's Office for the Southern District of New York filed a criminal complaint against Defendant. According to that criminal complaint, Defendant fled the country the day after his attack. Federal law enforcement then arrested Defendant when he flew back into the United States on December 26, 2022. Today he is detained pending trial in New York.[1] He has also been sued by the Commodities Futures Trading Commission and Securities and Exchange Commission in two separate civil actions.[2]

6.      To make Mango DAO and its token-holders whole and recover the funds that Defendant misappropriated, Mango Labs brings the following action.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000 and the parties are citizens of different States.

8.      Venue is proper in this District, pursuant to 28 U.S.C. § 1391(b)(1)-(2), because a substantial part of the events or omissions giving rise to Mango's claims, based on Defendant's conduct, occurred in New York. Defendant also owns property and has significant contacts with New York.

---

[1] In the January 4, 2023, order requiring Defendant's detention pending his criminal trial, the court stated that "defendant left the United States for two months after committing the offense" and "[t]he charged offense involves alleged appropriation of tens of millions of dollars of crypto currency, of which up to $40 million remain unaccounted for, giving the defendant, when combined with his duo citizenship and ties to a foreign country, the means and motivation to flee."

[2] *CFTC v. Eisenberg*, 1:23-cv-173 (S.D.N.Y.); *SEC v. Eisenberg,* 1:23-cv-503 (S.D.N.Y.).

**THE PARTIES**

9.    Plaintiff Mango Labs is a Wyoming limited liability company whose sole member is domiciled in California.  Mango Labs' purpose is to conduct research and forward-looking development for Mango Markets.  Mango DAO funds Mango Labs from the Mango DAO treasury.

10.    Defendant of Suffren, New York and/or San Juan, Puerto Rico is a natural person currently in federal custody in connection with a criminal action pending in the Southern District of New York.[3]  Defendant's place of domicile is not in California such that complete diversity exists between the parties.

**FACTUAL BACKGROUND**

A.    **Mango Markets is a groundbreaking decentralized cryptocurrency exchange**.

11.    Mango Markets is a decentralized cryptocurrency exchange platform.

12.    Mango Markets launched in August 2021 to enable people to borrow, lend, and trade cryptocurrency and cryptocurrency derivatives.  It experienced rapid growth after launch. Within a year of launch, users transacted over $10 billion in funds through the protocol.

13.    Because Mango Markets is a decentralized exchange, it is governed by a Decentralized Autonomous Entity—Mango DAO.  Mango DAO makes key governance decisions about the protocol.  It maintains a treasury to fund research, development, and operations for Mango Markets.  Mango DAO also holds an insurance fund whose purpose is to help depositors recover from unexpected losses and attacks.  Mango DAO built up a significant

---

[3] *See United States v. Eisenberg*, 1:23-cr-10 (S.D.N.Y.).

insurance fund after launch.  By October 2022, Mango DAO held over $10 million in its treasury.

14.    The Mango DAO makes decisions based on votes by individuals who hold the MNGO token.  MNGO holders thus participate in decision making for the protocol itself.  This gives the community decentralized control over the platform.

15.    One derivative that users trade on Mango Markets relevant to Defendant's attack is called a perpetual contract.  These allow users to maintain positive or negative exposure to an underlying token without actual ownership of the token.  Perpetual contracts do not expire, and users can enter a perpetual position ("PERP position") on the Mango Markets order book.

16.    Mango Markets' perpetual contracts protocol also allows assets deposited on the platform to be cross-collateralized, meaning the value of a user's position is calculated across the user's deposits, borrowing, and perpetual positions.

17.    The value of a user's PERP position is marked by the oracle price of the token. The oracle price is the price of a token communicated to the blockchain based on an off-chain source of data, known as an "oracle."  The oracle collects price data for any given token on Mango Markets, thereby making the token available for use to determine the value of deposits, borrows, and PERP positions.  Mango Markets uses Pyth and Switchboard oracles.

18.    Mango Markets offers users the ability to buy a PERP position in MNGO.  For example, if MNGO sold at $1 and the oracle later reported that MNGO increased in value to $10, then any user who purchased a MNGO-PERP contract at $1 would receive $9 of profit.  These profits could then be used as leverage to borrow additional assets such as Bitcoin ("BTC"), Solana ("SOL"), or other tokens on Mango Markets.

**B.** **Defendant is a notorious cryptocurrency market manipulator.**

19.     Defendant is a notorious online personality.  A self-described "game theorist," he has a history of attacking multiple cryptocurrency platforms and manipulating cryptocurrency markets.

20.     Before attacking Mango Markets, Defendant made headlines for allegedly embezzling $14 million from Fortress DAO in February 2021.  Fortress is a separate decentralized finance project that employed Defendant as a developer.  There, Defendant allegedly abused the project's treasury redemption mechanism to misappropriate funds to himself as the DAO closed down operations.[4]

**C.** **Defendant conducted a malicious attack on Mango Markets to convert $114 million in depositors' assets in October 2022.**

21.     On October 11, 2022, Defendant engaged in a $114 million exploit of Mango Markets.  Attached as Exhibit 1 to this Complaint is the criminal complaint filed in the Southern District of New York on December 23, 2022.  Its paragraphs 9 through 18 detail Defendant's attack.

22.     Defendant attacked Mango Markets by temporarily purchasing approximately 488 million MNGO tokens (of approximately 500 million tokens in circulation), taking out significant loans against the inflated collateral, and then cashing out once the currency's value inflated threefold.

23.     Doing so allowed Defendant to manipulate the value of his posted collateral—the platforms' native token, MNGO—to higher prices.  This drained Mango Markets' depositor smart contract and significant user assets.

---

[4] Allegations regarding Defendant's conduct with respect to Fortress DAO were reported at the following link: https://karlstack.substack.com/p/anatomy-of-an-alleged-dao-scam.

1.  **Defendant set up multiple accounts on Mango Markets and fraudulent accounts at third-party exchanges to trade with himself and manipulate MNGO's price.**

24.     To use Mango Markets, depositors must connect a blockchain wallet to the Mango Markets trading platform, create an account, and deposit assets into that account.

25.     To conduct the attack, Defendant opened two accounts on Mango Markets. He funded both accounts with $5 million USDC. USDC is a cryptocurrency stablecoin pegged to the value of the U.S. dollar. After Defendant opened his two accounts, he utilized them to open two corresponding contract bids.

26.     To fund the Mango Markets accounts Defendant used in his attack, Defendant used multiple accounts at other cryptocurrency exchanges. Defendant created at least one of these accounts, according to the criminal complaint filed against him, by fraudulently supplying a passport and personal information that appears to belong to a Ukrainian woman.

27.     Defendant used one of his other exchange accounts to send approximately $5,524,838 USDC on October 11, 2022, to a cryptocurrency wallet on the Solana blockchain. Mango Markets is built on the Solana blockchain. The same day, Defendant also sent approximately $4,999,999.95 USDC to another wallet on the Solana blockchain.

28.     Later that day, still October 11, 2022, Defendant sent approximately $5,000,100 USDC to a Mango Markets account from his first Solana wallet.

29.     On or around the same time, Defendant's second Solana wallet sent approximately $4,999,998.95 USDC to a different Mango Markets account.

2.  **Defendant used accounts on third-party exchanges to conduct trades that artificially inflated the price of MNGO by manipulating a third-party oracle.**

30.     Defendant used his accounts on other exchanges, including FTX, AscendEX, and Serum, to inflate the price of MNGO through a third-party oracle. Defendant did so by placing

large orders for MNGO tokens on these other exchanges at prices beyond what any market participant was paying on that date.

31.     By being on both sides of the transaction, Defendant caused the MNGO token to grow more than 10x in price from approximately $0.04 to $0.50 on Mango Markets, because the third-party oracle determined MNGO's price by reporting prices from these third-party exchanges.

While Mango Market's protocol has a fail-safe liquidation procedure in place to prevent users from taking advantage of unnatural jumps in token price, Defendant's price manipulation occurred so quickly that the mechanism could not stop him.

### 3.     Defendant used his two accounts on Mango Markets to drain all the collateral from Mango Markets, making off with $114 million in converted funds.

32.     The MNGO price inflation that Defendant caused boosted his collateral on Mango Markets.  This enabled Defendant to take massive loans from the Mango Markets platform.

33.     Defendant's conduct specifically increased the price of MNGO perpetuals on Mango Markets, which increased the value of the Long MNGO PERP position that Defendant previously opened.  Once Defendant borrowed more funds from the Mango Markets platform based on the inflated value of his MNGO collateral, he then withdrew it and siphoned it to accounts on other platforms.

34.     The criminal complaint against Defendant details how he did so:

- Specifically, at approximately 6:26 p.m. EDT, he submitted MNGO token orders (some of which he canceled) at incrementally higher prices on various crypto asset trading platforms.

- At 6:29 p.m. on October 11, 2022, one of Defendant's Mango accounts borrowed and withdrew approximately 50,000,000 USDC from Mango Markets and sent those assets to one of Defendant's Solana wallets.

- At 6:36 p.m., that same account also borrowed and withdrew approximately $400,000 SOL from Mango Markets and sent those assets to one of Defendant's Solana wallets.

- A minute later, Defendant's same Mango Markets account borrowed and withdrew approximately 798,000 mSOL (another token on Solana blockchain) and approximately 282.12 wBTC (a token designed to track the value of Bitcoin) from Mango Markets.

- At 6:41 p.m., one of Defendant's Mango Markets accounts borrowed and withdrew approximately $2,807,721 USDC and approximately $3,266,426 USDT (designed to track the value of the dollar) from Mango Markets. He sent those assets to one of his Solana wallet accounts.

- At 6:45 p.m., one of Defendant's Mango Markets accounts borrowed and withdrew approximately 2,354,260 SRM (the token for a platform called Serum) and approximately 32,409,565.06 MNGO from Mango Markets. He then sent those assets to one of his Solana wallet accounts.

The trading volume on the day of Defendant's manipulation was over 2,000% higher than the average volume for MNGO the preceding 10 days, and 2,018% higher than the average volume for the preceding 90 days. Defendant's trading accounted for as much as 90% of the trading volume on some exchanges on October 11, 2022.

35.     Although he purported to be "borrowing" assets on Mango Markets, Defendant's actions show he did not intend to repay those loans. Following the withdrawals, Defendant's

Solana wallets and other exchange accounts ceased purchasing MNGO and began to sell MNGO for USDC.

36.      In all, Defendant borrowed and withdrew cryptocurrency from the deposits and assets belonging to other Mango Markets investors.  Through his attack, Defendant withdrew effectively all available funds from Mango Markets and made off with approximately $114 million in converted assets through 19 separate transactions.

37.      Following Defendant's attack, the price of MNGO tokens fell below $0.04 to $0.02.

### 4.    Mango Markets suspended operations after Defendant's attack.

38.      Mango Markets learned of Defendant's attack on October 11, 2022.

39.      The next day, on October 12, 2022, a council delegated by the Mango DAO froze the Mango Markets program.

40.      On October 13, 2022, members of the Mango DAO posted on Twitter that the Mango Markets program was frozen, that Mango DAO contributors were working on recovery strategies, that much was still unknown, and that Mango DAO had a snapshot of the state of all Mango Markets accounts right before the exploit.



**D.** **Defendant coerced Mango DAO into voting for a governance proposal, under duress, regarding an unenforceable settlement and release agreement.**

41. A few hours after the attack and withdrawal, Defendant communicated to members of the Mango DAO that he would return some, but not all, of the funds if the Mango DAO voted for a proposal that purported to release claims against him.

42. The Mango DAO had no choice but to hold this vote, as Defendant had converted funds unlawfully from its depositors. In order to recover at least some of the funds, DAO members voted in favor of the proposal that Defendant demanded on October 14, 2022.

43.     The proposal read as follows:[5]



44.     As seen above, the proposal included the following unenforceable language:

*"By voting for this proposal, mango token holders agree to pay off the bad debt with the treasury, and waive any potential claims against accounts with bad debt, and will not pursue criminal investigations or freezing of funds once the tokens are sent back as described above."*

45.     The proposal passed, under duress, with 473,166,649 "yes" votes.

46.     Defendant then returned $67 million of the funds he converted to the Mango DAO treasury.

47.     After Defendant returned a portion of the funds to Mango DAO's treasury, depositors still were missing approximately $47 million taken by Defendant.

48.     To make depositors whole, Mango DAO turned to its insurance fund. From its insurance fund, Mango DAO provided depositors an option to recover approximately the amount

---

[5] https://dao.mango.markets/dao/MNGO/proposal/GYhczJdNZAhG24dkkymWE9SUZv8xC4g8s9U8VF5Yprne

of funds that they lost from Defendant's attack.  Mango Markets depositors could do so by going

to Mango Markets' website and clicking a "Claim Refund" button.

49.    Through the process where impacted depositors recovered funds from the Mango

DAO insurance fund, the depositors transferred their rights and claims against Defendant related

to the attack to Mango Labs.  Each depositor agreed to the following:

> "By clicking and accepting the tokens, I hereby irrevocably sell, convey, transfer and
> assign to Mango Labs, LLC all of my right, title and interest in, to and under all claims
> arising out of or related to the loss of my tokens in the October 2022 incident, including,
> without limitation, all of my causes of action or other rights with respect to such claims,
> all rights to receive any amounts or property or other distribution in respect of or in
> connection with such claims, and any and all proceeds of any of the foregoing (including
> proceeds of proceeds). I further irrevocably and unconditionally release all claims I may
> have against Mango Labs, LLC, the Mango Decentralized Autonomous Entity, its core
> contributors, and any of their agents, affiliates, officers, employees, or principals related
> to this matter. This release constitutes an express, informed, knowing and voluntary
> waiver and relinquishment to the fullest extent permitted by law."

50.    Above the assignment language was a disclaimer, stating:

> "Below is language explaining that you agree to assign your claims to Mango Labs, LLC
> as well as release claims against it, the DAO, and related entities and people. Mango
> Labs, LLC reserves its rights to enforce the assigned claims, and it intends to then
> transfer any proceeds, after costs, to the DAO."

51.    Below this language, depositors could click a button to "Claim Tokens."  Upon

doing so, another box popped up, stating: "By clicking 'I Agree' and claiming these tokens, I

understand and manifest my assent and agreement to be bound by this enforceable contract, and

agree that all claims under this agreement will be resolved exclusively under the laws of the State

of New York."  Depositors then clicked on another button stating "I Agree," prior to receiving

their refund.

52.    So far, depositors who lost assets as a result of Defendant's attack have agreed to

assign over 90% of their claims to Mango Labs to obtain the refund.

**E.    After the attack, Defendant bragged about his unlawful conduct online and continued to manipulate other markets until he was arrested on fraud charges.**

53.    Within days, Defendant took credit for the attack via his Twitter account.  He claimed it was a "profitable trading strategy" and not unlawful on October 15, 2022.

54.    Specifically, Defendant tweeted the following "[s]tatement on recent events":



55.    In the same Twitter thread,[6] Defendant wrote:

_____
[6] https://twitter.com/avi_eisen/status/1581326197241180160



56.     Defendant continued his brazen attacks on other protocols as well.  On information and belief, after attacking Mango Markets, Defendant used his ill-gotten gains to attack Aave, a decentralized crypto lending platform.[7]

57.     On December 23, 2022, the U.S. government issued an arrest warrant for Defendant on charges of commodities fraud and market manipulation.  He was arrested on December 26, 2022.  Defendant's case is now pending in the Southern District of New York, case No. 1:22-mj-10337-UA-1.

---

[7] A report on Defendant's conduct with respect to Aave is available here.  *See Feature or Flaw? Aave Left with $1.7M in Bad Debt*, Blockworks.co (Nov. 22, 2022), https://blockworks.co/news/aave-curve-bad-debt.

58.     The last tweet Defendant "liked" before his arrest continued his campaign of gloating over his unlawful conduct.  It stated: "Trading is for coping losers.  Exploiting protocols & hacking are for chads.  I don't make the rules."[8]



## FIRST CAUSE OF ACTION
### (Conversion)

59.     Mango Labs incorporates by reference as though fully set forth herein the allegations in all of the foregoing paragraphs.

---

[8] https://twitter.com/alex_bcg/status/1607893342922346496?s=20&t=Zthi1NrTFu5NX-vPpbL-Pg.

60. Defendant purports to exercise the right of ownership over cryptocurrency unlawfully taken from Mango Markets' depositors to the exclusion of their rights as rightful owners.

61. Defendant attacked Mango Markets and took $114 million in cryptocurrency assets from Mango Markets depositors without authorization.

62. Through his attack, Defendant took over $114 million in cryptocurrency. He exercised and continues to exercise dominion over it, despite it belonging to depositors who have assigned their claims to Plaintiff.

63. Plaintiff demanded all of the cryptocurrency back, but Defendant refused to give it all back. He only returned $67 million and retained $47 million unlawfully.

64. Defendant's conversion directly and proximately caused Mango Markets' depositors harm, including loss of their cryptocurrency assets, and loss of ability to leverage those assets in Mango Markets and other places.

65. As a result of Defendant's conversion, Mango Labs has suffered damages in an amount to be proven at trial, but in no event less than $47 million, plus interest from and after the time of conversion.

## SECOND CAUSE OF ACTION
### (Fraudulent Misrepresentation)

66. Mango Labs incorporates by reference as though fully set forth herein the allegations in all of the foregoing paragraphs.

67. Defendant made a series of false representations to Mango Markets depositors that they relied on, which enabled him to get away with his unlawful acts.

68.     Mango Markets depositors relied on Defendant's representations, through his trades, that he was a legitimate market participant.

69.     In reality, Defendant was manipulating the price of MNGO through multiple third-party exchanges in order to advance his scheme.  He did so by fraudulent means, including by misrepresenting his identity as a Ukrainian woman to create one of the accounts that he used in his attack.

70.     Defendant omitted all these key facts, including highly relevant information that he had created two Mango Markets accounts to trade with himself.

71.     Traders on Mango Markets relied on Defendant's misrepresentations when they engaged in trades to which he was a counterparty.

72.     Defendant intended to deceive these traders and knew they were relying on his misrepresentations when he planned and executed his attack.

73.     Defendant's misrepresentations damaged Mango Markets participants, including by converting their assets and depriving them of those assets to leverage in trades on Mango Markets or elsewhere.

74.     As a result of Defendant's fraudulent misrepresentation, Mango Labs has suffered damages in an amount to be proven at trial, but in no event less than $47 million, plus interest from and after the time of misrepresentation.

## THIRD CAUSE OF ACTION
### (Unjust Enrichment)

75.     Mango Labs incorporates by reference as though fully set forth herein the allegations in all of the foregoing paragraphs.

76.     Defendant artificially inflated the price of the MNGO token, which allowed him to withdraw $114 million in cryptocurrency from Mango Markets.

77.     Defendant unjustly benefited from his attack on Mango Markets because he enriched himself with the converted assets.

78.     This was at the depositors' expense, as they lost the funds that Defendant converted.

79.     Defendant's conduct is wrong and unjust.  Equity and good conscience require restitution, as Mango Markets depositors were forced under duress to vote to deplete the Mango DAO treasury insurance fund after Defendant's attack.

80.     Defendant is further using the proceeds of his unjust enrichment to attack and manipulate other markets.  Equity thus demands that Defendant disgorge these unjust gains back to Mango Markets' depositors.

81.     As a result of Defendant's unjust enrichment, Mango Labs has suffered damages in an amount to be proven at trial, but in no event less than $47 million, plus interest from and after the time of unjust enrichment.

## FOURTH CAUSE OF ACTION
### (Declaratory Judgment)

82.     Mango Labs incorporates by reference as though fully set forth herein the allegations in all of the foregoing paragraphs.

83.     Defendant procured an agreement under duress with depositors through the Mango DAO based on a wrongful threat to retain all of the converted proceeds of his attack.

84.     Defendant's threat precluded Mango DAO members' exercise of free will because they had no choice but to vote for the governance proposal Defendant desired.

85.     Defendant consequently was not engaged in lawful bargaining.  He instead coerced and manipulated Mango Markets MNGO governance token-holders to agree to the purported settlement and release.

86.     In addition to putting Mango DAO under duress to pass Defendant's proposal, Defendant's conduct was also illegal and fraudulent.

87.     Because Defendant unjustly took advantage of those who have assigned their rights and claims to Plaintiff and threatened to do an unlawful injury, the settlement and release agreement is unenforceable.

88.     The Court should consequently issue a declaratory judgment rescinding the settlement and release agreement and declaring it unenforceable.

## PRAYER FOR RELIEF

NOW, THEREFORE, Mango Labs respectfully requests that this Court enter judgment in favor of Plaintiff as follows:

1.     For compensatory, incidental, and consequential damages, in an amount to be determined, for harms Mango Labs suffered by Defendant's unlawful conduct, including the $47 million in converted assets Defendant retains, additional harm to the assets Mango Markets depositors hold, and enforcement costs to stop Defendant's unlawful conduct;

2.     Punitive, exemplary, and any other damages authorized by law;

3.     For prejudgment and post-judgment interest on the full amount of damages;

4.     For the following declarations:

    a.   That the settlement and release agreement is invalid and unenforceable; and

    b.   That the settlement and release agreement is rescinded;

5.       For Mango Lab's attorneys' fees according to proof, and costs incurred, to the extent permitted by law; and

6.       For such other relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff Mango Labs hereby demands a trial by jury of all issues triable in this action.


Dated: New York, New York      MORRISON & FOERSTER LLP
       January 25, 2023

                      By:    */s/ J. Alexander Lawrence*
                              J. Alexander Lawrence
                              250 W. 55th Street
                              New York, New York 10019
                              Telephone: 212.468.8000
                              Facsimile: 212.468.7900
                              Email: ALawrence@mofo.com

                              *Attorneys for Plaintiff Mango Labs, LLC*