**TALKIN, MUCCIGROSSO & ROBERTS, L.L.P.**
ATTORNEYS AT LAW
40 EXCHANGE PLACE
18TH FLOOR
NEW YORK, NEW YORK 10005
―――――
(212) 482-0007 PHONE
(212) 482-1303 FAX
WWW.TALKINLAW.COM
EMAIL: INFO@TALKINLAW.COM

MARYLAND OFFICE:
5100 DORSEY HALL DRIVE
SUITE 100
ELLICOTT CITY, MD 21042
―――――
410-964-0300

NEW JERSEY OFFICE:
2500 PLAZA 5
HARBORSIDE FINANCIAL CENTER
JERSEY CITY, NJ 07311
―――――
201-342-6665

**BY ECF**
Honorable Arun Subramanian                   April 25, 2025
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

                                                Re:      United States v. Avraham Eisenberg
                                                              23 Cr. 10 (AS)

Dear Judge Subramanian:

      Pursuant to the Court's Order ("Order," Dkt. 214), we write on behalf our client Avraham Eisenberg to explain why the issue of whether the MNGO Perpetual ("Perpetual") qualifies as a "mixed swap" under the definitions of the Commodities Exchange Act ("CEA") contained in 7 U.S.C. §§ 1a(47)(a)(iii) and 1a(47)(D) is a question of law (or, at most, a mixed question of law and fact) reserved for decision by the Court.

      As the Order notes, Mr. Eisenberg raised this issue in his April 1, 2025 pre-oral argument letter. Dkt. 207 at 7. The defense also previously discussed the matter in its Rule 29 and 33 reply brief, explaining "that the determination of whether an instrument is a mixed swap is a legal question more appropriately decided by the Court than the jury, just as Judge J. Paul Oetken determined" in *CFTC v Archegos Capital Mgmt. LP*, 2023 WL 6123102, 2023 U.S. Dist. LEXIS 166409, at *7 (S.D.N.Y. Sep. 19, 2023)." Dkt. 191 at 19.

      "[T]he phrase 'question of law' typically refers to 'an issue to be decided by the judge, concerning the application or interpretation of the law.'" *United States v. Gonzales-Flores*, 701 F.3d 112, 116 (4th Cir. 2012) (quoting Black's Law Dictionary 1366 (9th ed. 2009). "The interpretation of a statute is a question of law." *United States v. Bedi*, 15 F.4th 222, 225-26 (2d Cir. 2021). "An issue can be a 'question of law,' moreover, although it may turn on a factual point." *Gonzales-Flores*, 701 F.3d at 116. Because the determination of whether the Perpetual

1

was a "mixed swap" required a concentrated analysis of the CEA with negligible resolution of disputed facts, the issue qualifies as a question of law appropriately resolved by the Court.[1]

Moreover, the instructions given on the issue demonstrate both why this question should be resolved by the Court and why the conviction cannot stand. The jury was simply instructed that it should decide whether the Perpetual was "based in part on the value" of either USDC or the funding rate. Tr. 1466. While this is an accurate and literal reading of the statute, it is plainly insufficient in light of the guidance regarding the definition of mixed swaps, which is part of the statutory structure, provided by the SEC and CFTC. 77 Fed. Reg. 48208, 48264 (August 13, 2012) ("Joint Release). The Joint Release establishes that the determination of whether an instrument is a mixed swap turns on an analysis of the purpose of the instrument with a focus on the risk transfer. *See, e.g.*, Joint Release at 48266-67 ("[T]he scope of the mixed swap category of Title VII instruments is intended to be narrow and [] when variable interest rates are used for financing purposes incidental to counterparties' purposes, and risks assumed, in entering into a TRS, the TRS is a security-based swap and not a mixed swap."). Under the instructions it received, the jury was not required to find that there was any risk transfer related to USDC (or funding), and, indeed, the government argued that the Perpetual was a mixed swap due to its risk transfer of MNGO and because it was also based in part on the value of USDC/funding. Tr. 1434-35. The jury was also not instructed that an "incidental" risk transfer was insufficient to render an instrument a mixed swap. As the defense has repeatedly pointed out (with no meaningful contradiction from the government), the evidence is undisputed that the Perpetual's purpose was exclusively to trade the risk of price changes in MNGO—and that no risk related to USDC was exchanged, even incidentally.[2] *See* Dkts. 183 at 24, 191 at 15, 207 at 1. The Court should therefore grant the requested Rule 29 acquittal, or, alternatively, order a new trial under Rule 33 because the jury convicted without consideration of this fundamental question.[3]

Finally, that the issue of whether an instrument is a "mixed swap" is legal in nature is evident from the fact that, as the Joint Release states, "identifying a mixed swap may not always be straightforward," Joint Release at 48294, and thus "any person may submit a request to the Commissions to provide a public joint interpretation of whether a particular Title VII instrument is a . . . mixed swap." *Id.* at 48295. That the statutory framework recognizes the difficulty for laypersons to make this determination and thus calls upon regulators to do so demonstrates that the issue is one of law.[4] Furthermore, the fact that the Joint Release acknowledged the inability of even finance professionals to determine whether an instrument is a mixed swap demonstrates that the term is ambiguous and counsels in favor of the application of the rule of lenity.

---

[1] The purported factual dispute has been the government's counterfactual insistence that the base currency for Mango Markets is USDC despite the overwhelming evidence to the contrary. Because that argument is self-evidently frivolous, it cannot create a legitimate factual dispute.

[2] Because the Perpetual settled in USDC, both sides remained exposed to any USDC risk, rendering nonsensical any argument that purchasers had any intention of exchanging USDC risk exposure. The government even conceded during trial that, due to its peg, "holders of USDC do not expect profits from the token." Dkt. 145 at 2.

[3] Even if the mixed swap issue were a mixed question of law and fact, it would still not have needed to go to the jury because it was undisputed in this case that the purpose of the Perpetual was to bet on MNGO.

[4] The inquiry of whether an instrument is a mixed swap is fundamentally different from a determination of whether an asset is a security, which is a mixed question of law and fact that ordinarily goes to the jury, *see United States v. McKye*, 734 F.3d 1104, 1109 (10th Cir. 2013), because the former is based strictly on the characteristics of the instrument whereas the latter scrutinizes the expectations of investors and the efforts of third parties and promoters. *See SEC v. W. J. Howey Co.*, 328 U.S. 293 (1946). As noted, there were no non-frivolous factual disputes regarding the mixed swap determination in this case.

***

Thank you for Your Honor's consideration of this letter.

                                      Respectfully submitted,

                                      *Sanford N. Talkin*
                                      *Noam B. Greenspan*
                                      Sanford N. Talkin
                                      Noam B. Greenspan
                                      Talkin, Muccigrosso & Roberts, LLP

                                      -and-

                                      Brian E. Klein
                                      Ashley E. Martabano
                                      Riley P. Smith
                                      Waymaker LLP

                                      *Attorneys for Avraham Eisenberg*

                                      *cc: all counsel of record (by ECF)*