P51DEisS1

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4            v.                    24 Cr. 00251, 23 Cr. 00010 (AS)

5   AVRAHAM EISENBERG,

6                                           Sentence
                 Defendant.
7
    ------------------------------x
8
                                   New York, N.Y.
9                                  May 1, 2025
                                   3:00 p.m.
10

11  Before:

12                  HON. ARUN SUBRAMANIAN,

13                                     U.S. District Judge

14                         APPEARANCES

15  JAY CLAYTON
         United States Attorney for the
16       Southern District of New York
    THOMAS BURNETT
17  PETER DAVIS
         Assistant United States Attorney
18
    BRIAN KLEIN
19  SAM TALKIN
    NOAM GREENSPAN
20       Attorneys for Defendant

21  Also present:  Brandon Racz, Special Agent (FBI)
                   Megan Henriquez, U.S. Probation Officer
22

23

24

25

P51DEisS1

1          THE DEPUTY CLERK:  This is the matter of 23 CR 10,

2  *United States of America v. Avraham Eisenberg.*

3          Can the parties, starting with counsel for the

4  government, please state their appearance for the record?

5          MR. BURNETT:  Good afternoon, your Honor.  Tom

6  Burnett, for the government.  I'm joined here at counsel table

7  by AUSA Peter Davis, Special Agent Branden Racz, from the FBI,

8  and Probation Officer Specialist Megan Henriquez.

9          THE COURT:  Good afternoon.

10          MR. KLEIN:  Good afternoon, your Honor.  Brian Klein,

11  here with our client.

12          MR. TALKIN:  Sam Talkin.

13          MR. GREENSPAN:  Noam Greenspan.  Good afternoon.

14          THE COURT:  Good afternoon.

15          Good afternoon to you, Mr. Eisenberg.

16          All right.  We're here for sentencing.  There is an

17  open motion for acquittal and for a new trial in one of the

18  captioned actions, 23 CR 10.  There is a non -- zero chance

19  that I will grant that motion, in part or in full, but I need

20  extra time to reach a final decision on the motion.

21          However, we have a guilty plea in 24 CR 251, and

22  whether the motion for acquittal is granted or denied, the bulk

23  of any sentence of incarceration I would impose would be on the

24  charge in the '24 docketed case.

25          I also recognize that Mr. Eisenberg is currently at

P51DEisS1

1    the MDC, and I am aware of the conditions in that facility that

2    are reflected in the defendant's documents.  So, I'm prepared

3    to proceed to sentencing on the 24 docketed case at this time.

4    My intent would be to proceed on the charges in an ungrouped

5    form.

6            So, today we would proceed to sentencing on the 24

7    docketed case, with the correctly calculated guidelines range

8    on that charge.  This would also obviate the issue of the

9    acceptance of responsibility issue that was presented in the

10   papers.  Then, if a sentencing is warranted on the 23 docketed

11   case, we would proceed on the basis of the correctly calculated

12   guidelines range on those charges.

13           Now, do the parties have any objection to my

14   proceeding in that fashion?  I'll start with the government.

15           MR. BURNETT:  No objection.

16           MR. TALKIN:  May we just confer one second?

17           THE COURT:  Of course.

18           MR. TALKIN:  Thank you.

19           (Pause in proceeding)

20           MR. TALKIN:  Your Honor, we're ready to proceed, as

21   you asked.

22           THE COURT:  Do you need any more time to discuss it

23   with Mr. Eisenberg, or you are ready to go?

24           MR. TALKIN:  We are ready to go.  We had an

25   opportunity to discuss it with him.  Thank you.

P51DEisS1

1          THE COURT:  All right.  Hearing no objection, we will

2     proceed.

3          Let me first make sure I have the materials that were

4     submitted that are pertinent to the sentencing on the 24 docket

5     case:  A PSR December 17, 2024, and revised February 18, 2025;

6     I have the government's submission and attachments dated April

7     22, 2025; Mr. Eisenberg's submission and attached letters dated

8     March 27, 2025; I have an impact statement from Mango Markets

9     dated April 22, 2025, though it is not relevant for today's

10     proceeding; I also have three additional victim statements and

11     attached materials furnished to the Court yesterday from the

12     government.

13          Is there anything that I have not mentioned that is

14     relevant here, Mr. Burnett?

15          MR. BURNETT:  The parties just signed a consent

16     restitution order for the three victims that you received

17     papers for yesterday, so we can hand that up now.

18          THE COURT:  All right.  You may approach and hand it

19     to Mr. Hernandez.

20          All right.  Who is going to be handling the proceeding

21     on the part of the defendant?

22          MR. TALKIN:  I will, your Honor.

23          THE COURT:  Mr. Talkin, have you read the PSR and

24     discussed it with your client?

25          MR. TALKIN:  I have.

1          THE COURT:  Mr. Eisenberg, have you read and discussed

2     with Mr. Talkin, or any of your other lawyers, the presentence

3     report in this case?

4          THE DEFENDANT:  Yes, Your Honor.

5          THE COURT:  All right.  The Court has reviewed the

6     unresolved objections to the presentence report, and as to the

7     objections to the factual recitation in the report, the Court

8     determines that ruling on those objections is unnecessary,

9     because the matter will not affect sentencing.

10         Now, under the approach that the parties have accepted

11    to proceed with the sentencing on the 24 docket case, the

12    objection that was raised to the failure to apply the

13    acceptance of responsibility credit is moot as the credit would

14    apply on an ungrouped analysis, and the Court will apply that

15    here.  To be clear, I'm not considering any statements of fact

16    in the presentence report concerning the alleged criminal

17    conduct related to the 23 CR 10 action in connection with the

18    present sentencing.

19         On that basis, is there any objection to my adopting

20    the presentence report?

21         MR. BURNETT:  Not from the government.

22         MR. TALKIN:  No, your Honor, with the understanding of

23    the amended guideline range.

24         THE COURT:  The Court will adopt the presentence

25    report and the factual findings therein subject to the

1   qualifications that I've expressed here on the record.  It will

2   be made part of the record on this matter and placed under

3   seal.  If an appeal is taken, counsel on appeal may have access

4   to the sealed report without further application to the Court.

5           I'm now going to go through the guidelines

6   calculation.  The Court has independently calculated the

7   applicable guidelines range and agrees the offense level is 28

8   and the Criminal History Category of I is correct, assuming

9   that the government agrees that the additional one point

10  decrease is warranted under 3E1.1(b).

11          MR. BURNETT:  Yes, your Honor.

12          THE COURT:  Does the government move for that?  Okay.

13          This produces an advisory guidelines range of 78 to 97

14  months of imprisonment.

15          I don't see a bases for a departure here.  I

16  understand that the parties will be arguing about whether a

17  variance is warranted in this case.

18          With that being said, are there any guidelines

19  arguments that I have not addressed?

20          MR. BURNETT:  No, your Honor.

21          MR. TALKIN:  No, your Honor.

22          THE COURT:  All right.  So we'll move to final

23  statements.

24          At this time, does the government wish to make a final

25  statement?

P51DEisS1

1          MR. BURNETT:  Yes, briefly, your Honor.  I think the

2     victim statements that the government submitted earlier this

3     week are helpful for thinking about the case, because I know

4     it's not something -- obviously we had a full trial, and other

5     issues.  It hasn't been as front of mind here.  But, obviously,

6     this is an issue that is very much front of mind to the

7     individuals who are in the images and the videos that

8     Mr. Eisenberg possessed, and has been in their mind and will be

9     for the future.  And it's because it has a continuing harm on

10     those victims.

11          The Court just heard from a small sample of them, but

12     as you know from the papers, there were I think over 1200

13     images on Mr. Eisenberg's devices gathered over the course of a

14     number of years.  Obviously, Mr. Eisenberg does not, to the

15     government's knowledge, have any role in creating or

16     distributing those images.  The plea was for the receipt of

17     those images and him possessing them.  But I think the language

18     from Congress and much of the case law that we cited in our

19     sentencing submission is helpful for sort of keeping in mind

20     that kind of that, by itself, is important, and does impart

21     harm to victims, because it creates a market for these types of

22     materials that otherwise wouldn't exist.

23          The reason these victims keep having their images

24     appear over and over again is because there are folks that will

25     download them, and that's because these harms will perpetuate

P51DEisS1

1    into the future.  So I think it is -- while I know it's not

2    been the focus of the conversation among the parties and the

3    Court in the course of this case, I do think, when thinking

4    about sentencing, it is important to keep in mind that while it

5    hasn't been front and center here, it certainly is front and

6    center for them.  And that this is conduct that took place over

7    an extensive period of time, with a large number of images, and

8    that should, I think, weigh heavily in the Court's sentence in

9    this case.

10           THE COURT:  All right.  Thank you.

11           Mr. Burnett, just one question, which is, in your

12    letter to the Court, you recommend a total term of 78 to 97

13    months imprisonment for both cases, and you request that the

14    Court indicate that, as to the child pornography charges in the

15    24 docket case, that I indicate that it's within or below the

16    guidelines range for purposes of the appeal waiver and the plea

17    agreement.  Has the government thought about, in its own

18    estimation, what portion of the recommended sentence would be

19    attributable to the 24 docket case?

20           MR. BURNETT:  So, candidly, we hadn't discussed it

21    internally about how to apportion, as between the two of them.

22    I think the way we were envisioning it is that there would be a

23    sentence of years that would be appropriate for the Mango

24    Markets piece of the case.  So I think at least, you know,

25    drafting the recommendation to the Court, what we were

1    envisioning was that the recommendation -- or the piece that

2    would be assigned to the child pornography offense would be

3    less than the 78 months.  Whether that was less by a year or

4    less by two years, it's a little hard to say, because we

5    weren't parsing it that finally, but I think what we were

6    envisioning is that that was kind of why we were getting to a

7    total mix that was in the 78 to 97 months range.

8           THE COURT:  All right.  Thank you.

9           Does the defense wish to be heard?

10          MR. TALKIN:  Yes, your Honor.

11          Since it's crowded, I'll go to the podium.

12          THE COURT:  That's fine.

13          MR. TALKIN:  Your Honor, there's no question that the

14   charges we're dealing with today are serious charges, but, in

15   order to understand how Mr. Eisenberg got there, how he was the

16   individual that committed and pled to those and accepted

17   responsibility for those charges, it's important to look into

18   his upbringing, and some of the conditions he suffers from, and

19   some of the things that happened to him.

20          And, honestly, your Honor, it's very difficult for me

21   to stand in a courtroom in front of a lot of people and talk

22   about this, and I'm sure for Mr. Eisenberg that's not easy, and

23   for his family, and for many of the people that are here in his

24   support.  But it's important enough that it has to be done.

25          And the first thing -- and we went through this, and I

1    will not repeat our sentencing memorandum, but we went through

2    this in a lot of detail in our sentencing memorandum for just

3    this reason.  He had an upbringing that was traditional in his

4    community, but not traditional in the community of this

5    country.  And within that upbringing, there's certain social

6    mores and things that happen that, in the intermingling among

7    the sexes, and the attitude toward sex, and the attitude

8    towards self gratification, all of those things are treated

9    very differently and very harshly in society as a whole.

10          And the result of that, unfortunately, is a

11    repression, an immaturity, and a lack of understanding of a lot

12    of the fundamental things that many people understand regarding

13    sex.  Where he ended up was in a situation -- while under that

14    influence, he was unfortunately placed in at least two

15    situations that we know of where he was the subject of pretty

16    much unthinkable -- the recipient of unthinkable activity, and

17    all of that combined together is part of what led him to where

18    he is.

19          But the other problem that he was dealing with is his

20    inability, just in general, to deal with individuals and others

21    socially in a normal fashion.  Part of that is the upbringing.

22    Part of that is the diagnosed condition that we talked about in

23    our paperwork.  And part of that is just him, from spending a

24    lot of time with him in a small room in a jail for many years

25    now, understanding him, and seeing how he deals with people.

P51DEisS1

1          But, out of all of that, and what's come from this

2    case, and what he articulated to you in his letter, and

3    probably, in my opinion, the most positive part of this entire

4    experience he's gone through, is that he's had the opportunity,

5    through this case, through this arrest, through this

6    prosecution, and, amazingly, through the process he went

7    through with Dr. Bardey and Fifth Avenue Forensics, to gain an

8    understanding about the conduct that he pled guilty to, to

9    understand that there are -- even though it's on a screen and

10   it doesn't seem real, there's real people behind that.  And to

11   understand that they -- those individuals suffer.

12         And we had a moment today that really brought it all

13   to a forefront, or to a conclusion, I'm not really sure.  But

14   it was a moment when last night or two nights ago the

15   government gave us those victim impact statements.  And, you

16   know, as is my obligation, I went to talk to him about them,

17   and much to my surprise, he wanted to hear them.  And the

18   reason he wanted to hear them was because he has gained an

19   understanding of what he did here, and he wanted himself to

20   have to hear from the people that he didn't even think about

21   when he committed this crime.  To me, that shows me how far

22   he's come in understanding that the conduct he did is wrong.

23         I think he, in his own way, in his letter to you, he

24   expressed that, but what happened earlier today really

25   crystallized that.  And why that's important is because you're

1    going to decide a couple things:   One, what's an appropriate

2    punish, and, in deciding that, you know, is he a risk for

3    recidivism.  Well, Dr. Bardey doesn't seem to think he's much

4    of a risk for recidivism, though he doesn't rule it out.  And

5    based on the development that he has done, the development that

6    I just articulated to you, but, more importantly, the

7    development that he articulated to you in his letter, it's

8    very, very unlikely there will be any recidivism.

9            As I said in our letter, we have talked about that

10   program in the BOP that he is willing to take, or he is willing

11   to take the program through probation, who will be supervising

12   him.  And he will continue, A, to be monitored, but, B, to

13   continue to understand what is expected of him, and to continue

14   to understand how his conduct was unacceptable.

15           Now, he's not going to speak to you today, because,

16   you know, the posture we were in before was you had a case

17   where he went to trial and a case where he pled, so it's a very

18   unusual situation, and, as a matter of fact, filing a letter is

19   even unusual.  But he and the defense team thought, as to this

20   offense, it was very important to file a letter, no matter

21   what.

22           I know you took a lot of time, I'm guessing you read

23   it more than once, but that letter on this issue -- and we'll

24   put all the financial crime issues to the side now -- I think

25   demonstrated to you, portrayed an individual who's ready to

P51DEisS1

1    move on from these offenses.

2            When you take that situation, those particular history

3    and characteristics of Avi, and now you talk about the time he

4    has spent at the MDC -- he started out at Essex, which is no

5    picnic, but the MDC, as your Honor rightfully said, you're well

6    aware of the horrors.  But one of the things that's starting to

7    happen in this courthouse and across the river is that people

8    are becoming -- it's so pervasive, so terrible that people are

9    becoming desensitized, and there's been an opinion in this

10   courthouse that I flagged for your Honor, and the government

11   brought up in their sentencing memo about conditions.  And it

12   talks about "they're not so bad anymore," and I'm here to tell

13   you whatever information that's based on is incorrect.

14           I can tell you that not as Avi's lawyer but as

15   somebody who is in that jail two to three times a week.  I see

16   how the defendants are treated.  It's abusive.  I see how, when

17   the family visits, how they're treated.  It's abusive.  I feel

18   how we're treated when we go to visit, it's abusive.  And

19   that's what's out in the public for everyone to see.  But what

20   I also know is when I -- one of the things I ask every one of

21   my clients, whether they've been extradited from Europe,

22   whether they've been in upstate New York jails, jails in other

23   states, or Rikers Island, I always say, "how does this place

24   compare."  And it's not 99 percent, it's 100 percent, they all

25   say this is the worst place they've ever been.

1          This isn't ancient history.  This is this week I've

2    had that discussion.  I've had people say, give me more time;

3    just get me the heck out of here.  I see broken people every

4    day that are broken by the MDC.  So it cannot be stated enough

5    how much that the people who prepared these guidelines, the

6    people, the judges that are meting out sentences, have to --

7    did not take into account, without knowing how harsh those

8    conditions are.

9          We throw around -- it's actually through catchphrase,

10   harsh conditions, harsh conditions.  There's so much more

11   behind them.  And Mr. Eisenberg has lived through it for

12   closing in on I believe 20 months.  Now, look, he's there by

13   his own actions, that's for sure.  He takes responsibility for

14   those.  He's pled guilty to those in this case.  But nobody

15   should have to go through that inhuman treatment.

16         And the reason I'm bringing that up here for you, your

17   Honor, is, as you said, you're aware of the conditions, and

18   that is a personal history and characteristic that warrants a

19   downward variance and a large one, because an individual that

20   is in another facility, whether a camp, or even a low or a

21   medium, is not going to go through what Mr. Eisenberg has gone

22   through.

23         The last point I want to make on that:  Everything I

24   just said, imagine going through that as an individual -- as a

25   mentally strong person, an individual ready to cope socially.

P51DEisS1

1    Imagine going through that with the condition he has and how

2    much more that exacerbates the horrors that he's had to endure.

3         So, when you take that in combination with his

4    personal history, characteristics of his development, of how he

5    got to where he is, and you combine those with what he's

6    learned since and where he is, and the confidence you can have

7    with him going out in the future and not recidivating, this is

8    a case where 3553(a) warrants a sentence of no more than 36

9    months.

10        He has been in for a long time on this, and we

11   understand we have a whole other issue to deal with, and that's

12   out there.  That sentence serves all of the goals of 3553(a).

13   It serves specific deterrence.  It serves general deterrence,

14   which the government talks about.  General deterrence that was

15   probably satisfied the moment he was arrested in this case.

16   But does general deterrence increase after one year in jail,

17   two years in jail, three years in jail?  No.  The studies say

18   no and logic says no.

19        If you know you do this, you're going to get arrested,

20   you're going to go to jail, that's the general deterrent.  That

21   goal is satisfied.  The guidelines themselves, as we wrote in

22   our sentencing memorandum, are very high in these types of

23   cases, all these types of cases, my opinion is because these

24   were written before the advent of really a computer, of the

25   understanding of how computers are going to be the vehicle to

P51DEisS1

1    commit this crime.

2            There's an enhancement for using a computer, which

3    seems archaic, if not ridiculous, but there's also just the

4    number, you know, as the government talked about, rightfully

5    so, about the number of imagines.  Things are downloaded en

6    mass now.  Not every image is looked at or used or whatever,

7    but they are downloaded en mass, and individuals are subject to

8    that enhancement, and the guidelines come out very high.

9            I think the government recognizes that in their

10   sentencing recommendation to a certain extent, but, more

11   importantly, the Second Circuit has recognized that, even

12   saying in numerous cases that these guidelines for this crime

13   are archaic, and they just don't seem to be applicable to the

14   real world that we live in today.

15           That's the final piece as you decide whether to vary

16   below the guidelines.  However -- but, when it's time to

17   sentence him on this, your Honor, I'm asking you to take into

18   account what I just said to you.  And when you put them

19   together, the upbringing, the abuse, the time in jail, the lack

20   of understanding, and then, most importantly, the metamorphosis

21   into an individual that totally understands, I think the

22   sentence that I ask for is fair and just and satisfies all the

23   goals of sentencing.

24           THE COURT:  All right.  Thank you, Mr. Talkin.

25           I understand that Mr. Eisenberg is electing not to

1    speak, which is his right, and that's perfectly fine.

2              Is there anyone else from your side that wants to be

3    heard?

4              MR. TALKIN:  No, thank you.

5              MR. BURNETT:  So one thing, your Honor.  I think

6    Mr. Talkin may have put this in their sentencing submission.

7    I'm forgetting the footnote now.  But during the plea on the

8    child pornography offense, I think the Court, in reciting the

9    statutory maximum term of supervised release, had said three

10   years, instead of five years I think is what it is.

11             My understanding is that that would not make a

12   difference to whether Mr. Eisenberg would or would not have

13   accepted the plea here, but the government's request would be

14   just to confirm that with Mr. Eisenberg before the Court

15   proceeds to sentencing.

16             THE COURT:  All right.  Let me ask Mr. Talkin first.

17             The government has indicated, when we had the guilty

18   plea, there was an error by the Court as to the term of

19   supervised release that would apply to the offense of

20   conviction, that I said three years, as opposed to five years.

21   The government proposes that I essentially allocute

22   Mr. Eisenberg to confirm that he understands the difference,

23   and, despite the difference, would he like to proceed and not

24   make an application to withdraw his guilty plea.

25             Now, is that your understanding, and is Mr. Eisenberg

P51DEisS1

1    prepared to have that questioning?

2           MR. TALKIN:  Two things, your Honor:  First of all,

3    the error is ultimately made by the Court, but it was initially

4    my error.  That was also the supervised release in the plea,

5    plea agreement.  So there was a little bit of error.

6           THE COURT:  That's okay.  I can take the heat.

7           MR. TALKIN:  I understand.  I just want to be fair.

8           Secondly, I believe -- and probation can correct me --

9    it's actually -- it was a maximum of three, and now it becomes

10   a mandatory minimum of five.  I just want to doublecheck that.

11   That's my --

12          THE COURT:  That's my understanding.

13          MR. TALKIN:  All right.  As long as that -- we're

14   asking you to give him five, as far as when you actually

15   pronounce it.

16          But, as the third point and the most important point,

17   my understanding is that would not change that he -- that

18   Mr. Eisenberg wants to take the plea and that he wishes to

19   accept responsibility.  And I assume -- it seems you want to

20   allocute on that.  We don't have any objection to that.

21          THE COURT:  Would you like to discuss that with

22   Mr. Eisenberg, or had you already discussed that?

23          MR. TALKIN:  We have discussed it, but I will take

24   another minute just to doublecheck.

25          THE COURT:  Okay.

P51DEisS1

```
 1                 (Defense counsel conferred with defendant)
 2                 THE COURT:  All right.  Are you prepared to proceed,
 3    Mr. Talkin?
 4                 MR. TALKIN:  Yes.  Thank you, your Honor.
 5                 THE COURT:  Mr. Eisenberg, I want to make sure you
 6    understand what the parties have been talking about.  So, in
 7    your plea agreement, and when we had your guilty plea here in
 8    court, we discussed that the term of supervised release that
 9    would apply on the offense of conviction was three years, but
10    it is a mandatory minimum of five years.
11                 Do you understand that?
12                 THE DEFENDANT:  Yes, your Honor.
13                 THE COURT:  Now, despite -- you now know that, so the
14    request from Mr. Talkin is that I impose a term of five years.
15                 Do you understand that?
16                 THE DEFENDANT:  Yes, your Honor.
17                 THE COURT:  Knowing that, you wish to continue with
18    your plea of guilty, and to proceed to sentencing at this time?
19                 THE DEFENDANT:  Yes, your Honor.
20                 THE COURT:  Okay.
21                 MR. BURNETT:  Just one more very technical point, your
22    Honor.
23                 THE COURT:  Give it to me.
24                 MR. BURNETT:  Under Rule 32 I guess it's (I)(3) -- I'm
25    sorry, it's (I)(4)(iii), just, if Mr. Eisenberg wishes not to
```

P51DEisS1

1    speak at sentencing, I think you need to ask him directly.  I

2    have no doubt he will confirm what Mr. Talkin said, but just to

3    make sure that we've done this appropriately.

4              THE COURT:  Mr. Eisenberg, do you wish to be heard at

5    this time?

6              You do not need to say anything, but if you would like

7    to say something, I'm here to hear you out.

8              THE DEFENDANT:  No.  Thank you, your Honor.

9              THE COURT:  All right.  Mr. Burnett, anything else?

10             MR. BURNETT:  No.  Thank you.

11             THE COURT:  All right.  Mr. Talkin?

12             MR. TALKIN:  No.

13             THE COURT:  Anything further before we proceed to

14   sentencing?

15             MR. BURNETT:  No.  Thank you.

16             THE COURT:  I'm going to take a brief recess, meaning

17   like two minutes, and I'll be back.

18             (Recess taken)

19             THE COURT:  Please have a seat.

20             Mr. Burnett, is there any reason why I can't recite

21   anything from the victim statements without referring to the

22   actual names?

23             MR. BURNETT:  No.  No reason.

24             THE COURT:  All right.  After calculating the

25   guidelines and potential departures, and hearing argument, I

P51DEisS1

1    must now consider the relevant factors set out in 18, U.S.C.,

2    section 3553(a) and ensure that I impose a sentence sufficient

3    but not greater than necessary to comply with the purposes of

4    sentencing.

5            Mr. Eisenberg is 29 years old.  He has no prior

6    criminal history.  As the materials note, he was diagnosed with

7    autism spectrum disorder and ADHD as a child.  He has strong

8    family ties.

9            As Mr. Talkin noted, he had a difficult upbringing in

10   many ways.  He has, as Dr. Bardey notes, significant

11   psychological trauma, and he has made efforts to address those

12   issues, as Mr. Talkin had noted.

13           On the other hand, the charged offense is serious.

14   Mr. Eisenberg possessed 1,274 pieces of child sexual abuse

15   material collected during an extended time period, 2017 through

16   2022.  From Dr. Bardey's report, submitted by the defense,

17   after review of the files, several videos and images show

18   prepubescent boys tied up, crying, in visible distress, and

19   being beaten.  Some of this content includes the use of ropes

20   and sex toys.  At least one video depicted a deceased,

21   mutilated, naked prepubescent boy.  Although most of the

22   content depicted prepubescent children between approximately

23   six and 12 years old, there were several images and videos of

24   children approximately zero to two years old.

25           An incarceratory sentence is required by the

1   seriousness of the offense, to promote respect for the law, and

2   to provide just punishment for the offense.  It's also needed

3   to promote deterrence, especially given the nature of the

4   charges.

5           While I hear Mr. Talkin on the issue concerning

6   general deterrence, I think that, in this specific area,

7   general deterrence has more weight than it might otherwise

8   have, because, as is reflected in the victims' statements, and

9   as is reflected in the literature and the materials that have

10  been submitted, this is an incredibly difficult to detect

11  crime.  These images are distributed through the internet.  It

12  is often impossible for investigators to find the extent which

13  these images have traveled.  The only way to try to stem the

14  tide of distribution of this material is to make sure that when

15  sentences are imposed, they are sentences that reflect

16  appropriately the seriousness of the offense.

17          The Court must also consider the other criteria in the

18  statute, including the kind of sentences available, the

19  guidelines, and the need to avoid unwarranted sentence

20  disparities among defendants with similar records who have been

21  found guilty of similar conduct.  Along these lines, the Court

22  has considered Mr. Eisenberg's arguments based on *United States*

23  *v. Dorvee*, 616 F.3d 174 (2nd Cir. 2010).  There's a lot in

24  *Dorvee* that, consistent with Mr. Talkin's arguments, councils

25  for potential variance from the guidelines range here.

P51DEisS1

1    The Court has also considered available data

2  concerning sentencing for individuals in comparable situations

3  as Mr. Eisenberg.  Now, there's a limit to what you can read

4  from the data, because the available data to the courts and to

5  the parties is extremely limited, which is a separate issue

6  that should be resolved by the Sentencing Commission.  The data

7  is out there, and it cannot be easily accessed, but what we

8  have is some information about averages and medians.

9    So I'll just tell you what information I have, to the

10  extent that it's relevant in trying to avoid disparities.  For

11  defendants convicted under 18, U.S.C., section 2252(a),

12  subsection (a)(5)(B) -- that doesn't include -- or just include

13  people who are also convicted under (b)(2) -- with the

14  sentencing guidelines range of 78 to 97 months, and a Criminal

15  History Category score of I, and in the same age range of 21 to

16  30, the average length of imprisonment imposed was 49 months

17  and the median sentence was 48 months.  However, the sentences

18  varied widely, from one day to 120 months.

19    In cases where the Court varied or departed from the

20  guidelines range not at the request of the government, the

21  average length of imprisonment was 43 months and the median was

22  48 months, although sentences ranged from one day to 75 months.

23    Limited to solely defendants who are 29 years old on

24  the date of sentencing, there are 11 cases meeting that

25  criteria, and the average length of imprisonment was 46 months,

P51DEisS1

1    and the median, 48 months.

2    The Court has also considered the victims of

3    Mr. Eisenberg's offense.  In *United States v. Miller*, 665 F.3d

4    114 (5th Cir. 2011), the Court addressed *Dorvee* and noted the

5    district court in that case's rejection of the argument that,

6    in effect, child pornography offenses necessarily inflict

7    lesser harm than a physical encounter with a child.  The

8    district court there observed, "every image of a child, every

9    image of a non-adult engaged in any type of sexual activity

10   constitutes an additional case of victimizing a child.  Without

11   a demand for that type of information, and that type of viewing

12   from persons like this defendant, we don't know how many child

13   abuse cases we could prevent.  And as long as there is a demand

14   to purchase images of child pornography; there is going to be

15   an unending stream of child abuse of people, children who are

16   forced into these roles."

17   The circumstances of *Miller* were different than this

18   case, but the general principle that there are real victims in

19   cases like these is sound and I think accepted by both the

20   government and the defense in this case.

21   The Court has further considered some of the victims

22   of Mr. Eisenberg's own criminal conduct, and without

23   referencing the names, I think it's important to permit these

24   victims to be heard as part of this sentencing.  One victim was

25   a preschool-aged little girl when her abuse began, and it

P51DEisS1

lasted for three years.  The images and videos distributed

online show the extreme sexual abuse of this little girl,

including being sodomized, vaginally penetrated, and urinated

on.  Those images of her horrific abuse are traded throughout

the world.

        The letter goes on to say, each defendant is a

participant in the cycle of the victim's abuse.  She can never

escape the reality that her images are being circulated online

for the perverted gratification of others.  With those images

circulating throughout the world, she lives in fear of being

recognized.  She has no control over who sees her images.  Each

new case notification is a reminder that there is someone out

there seeking pleasure from the images of her sexual abuse, and

she is re-traumatized every time she is notified that her

images are in the possession of another perpetrator.

        Another victim, "I was only seven when my predator

began molesting me and photographing me.  It went on for two

years before they found him on the internet sending pictures of

me to men.  Then they found me after arresting him, but my life

has never been the same.  I live my life uncomfortable with men

and boys around.  I am always conscious of my clothing and

making sure no one can see any parts of me.  I worry about the

pictures of me that are out there, and I hate that others see

them.  It has been so hard to trust anyone, even family and

friends sometimes, since he did those things to me.  I went to

P51DEisS1

therapy for a while, but I stopped because I just wanted to forget it.  With all the pictures out there, I still can't."

Another victim, "I was just a toddler when one day fate stabbed itself upon me.  With the help of various child sexual abuse material, I was conveniently raped by my abuser over and over again.  Based on evidence collected by law enforcement, it could possibly be determined that I was raped and sexually assaulted on a daily basis.  I was between the ages of anywhere from three to six years old.  And after the downloading and distribution of images, my smile, my laughter, and my innocence have all been taken from me."

(Continued on next page)

P51BEISS2

1          THE COURT:  How I am portrayed in those pictures and

2      videos is not how I want to be perceived.  That little girl is

3      dead.

4          The Court is considered all the factors under Section

5      3553(a)(2), I will now state the sentence that I intend to

6      impose, but the attorneys will have a final opportunity to make

7      legal objections before the sentence is finally imposed.  In

8      light of all the factors I've discussed, both the presentation

9      made by the government, and also the presentation made by the

10     defense, the statements here from Mr. Talkin, the Court imposes

11     a sentence of 52 months of imprisonment.  Mr. Talkin, is there

12     a recommendation as to where Mr. Eisenberg will serve his

13     sentence.

14          MR. TALKIN:  Yes, we'll ask for FCI Otisville.

15          THE COURT:  The Court will make a recommendation that

16     Mr. Eisenberg serve his time of incarceration at FCI Otisville.

17     The defendant is to be placed on supervised release for a term

18     of five years.  The Court will impose the mandatory standard

19     and special conditions of supervised release exactly as they

20     are stated in the presentence report.

21          Mr. Talkin, do you wish that I read the conditions out

22     loud in court?

23          MR. TALKIN:  No, your Honor.

24          THE COURT:  All right.  Now as to the special

25     conditions, the Court has reviewed the special conditions.  And

P51BEISS2

1    as to the search condition, that is justified under the 3553(a)

2    factors given the offense in question, possession of child

3    pornography; that is true as well as to the evaluation and

4    outpatient offender condition; that is true as well as to the

5    condition relating to the installation of software allowing the

6    probation office to monitor activity; that is also true as to

7    the condition relating to the restrictions on viewing any

8    sexually explicit material.

9            And as to the condition relating to participation in

10   outpatient treatment program approved by the probation office,

11   that is justified given the history of marijuana and stimulant

12   abuse.  As to the other conditions relating to financial

13   information and lines of credit, those are warranted given the

14   restitution obligations and forfeiture obligations that are

15   associated with the offense of conviction.

16           I'm going to stop there for a moment.  Mr. Talkin, do

17   you have any questions about the conditions?

18           MR. TALKIN:  I don't.  Well, I'll wait to the end.  I

19   have a couple of requests.

20           THE COURT:  Of course.  As to the fine.  As I

21   understand it, there's no application for a fine relating to

22   the '24 conviction.  Is that correct, Mr. Burnett.

23           MR. BURNETT:  That's correct.  We make a request on

24   page 44 of the PSR of the assessments.

25           THE COURT:  I'll get to that.  All right.  So there's

P51BEISS2

1    no fine here.  As to restitution, I have a consent order of

2    restitution that has been signed by Mr. Burnett, Mr. Eisenberg

3    and Mr. Talkin dated May 1, 2025, so today.

4            And Mr. Eisenberg, did you see this consent order of

5    restitution today?

6            THE DEFENDANT:  Yes.

7            THE COURT:  And did you review it before you signed

8    it?

9            THE DEFENDANT:  Yes, your Honor.

10           THE COURT:  Did you discuss this order with your

11   attorneys?

12           THE DEFENDANT:  Yes, your Honor.

13           THE COURT:  All right.  And did you understand this

14   order before you signed it?

15           THE DEFENDANT:  Yes, your Honor.

16           THE COURT:  At this time I'll sign the consent order,

17   and it will be made part of the judgment in this case.  As for

18   forfeiture. Pursuant to 18 U.S.C. Section 2253, any and all

19   property real and personal constituting or traceable to gross

20   profits or other proceeds obtained from the offense, and any

21   and all property real or personal used or intended to be used

22   to commit or promote the commission of the offense or traceable

23   to such property; including but not limited to a sum of money

24   in U.S. currency representing the amount of proceeds traceable

25   to the commission of the offense will be subject to forfeiture.

P51BEISS2

1    There's a special assessment of $100.  As well there is a

2    $5,000 assessment under 18 U.S.C. Section 3014, and a $17,000

3    assessment under Section 2259(a).  Let me stop there.

4           Now, anything else, Mr. Burnett, in terms of the

5    sentence?

6           MR. BURNETT:  No, thank you.

7           MR. TALKIN:  Your Honor, I'm going to ask you to hold

8    off on the recommendation, if you allow me to file a letter

9    tomorrow asking for a recommendation.  With it broken up, I

10   needed to figure out -- I'm not sure how getting two judgments

11   and that will affect the recommendation, and more importantly,

12   the sentencing -- excuse me, the time can affect where he's

13   eligible for not, as well as the programs.  I'm prepared to ask

14   your Honor to recommend the RDAP program.  But the other

15   program that I talked about in my papers, that has a lot to do

16   with the length of the sentence.  So I have to do a little

17   research about whether it makes sense to do that or just ask

18   for the same type of program generally as opposed to that

19   specific program.

20          THE COURT:  All right.  Get me the letter and I'll

21   make the recommendation that you want.

22          MR. TALKIN:  Thank you.

23          THE COURT:  Do either counsel know of any legal reason

24   other than those already argued why the sentence should not be

25   imposed as stated, Mr. Burnett?

P51BEISS2

1           MR. BURNETT:  No, your Honor.

2           THE COURT:  Mr. Talkin?

3           MR. TALKIN:  No, your Honor.

4           THE COURT:  I order the sentence be imposed as stated

5    subject to the recommendation that I'll receive from

6    Mr. Talkin.  There are no open counts in the information in

7    24CR251.  Is that correct, Mr. Burnett?

8           MR. BURNETT:  That's correct.

9           THE COURT:  Mr. Eisenberg, to the extent you have not

10   given up the right to appeal your sentence through your plea of

11   guilty and the agreement you entered with the government in

12   connection with that plea, you have the right to appeal your

13   sentence.  If you are unable to pay the cost of an appeal, you

14   may apply for leave to appeal *in forma pauperis*.  You may also

15   apply for court-appointed counsel.  A notice of appeal must be

16   filed within 14 days of the judgment of conviction.

17          And to both sides, are there any other objection that

18   you have that I have not addressed, Mr. Burnett?

19          MR. BURNETT:  No.  Thank you.

20          THE COURT:  Mr. Talkin?

21          MR. TALKIN:  No, your Honor.

22          THE COURT:  Anything else that either side wishes to

23   raise?

24          MR. BURNETT:  No.

25          THE COURT:  All right.  So, Mr. Eisenberg, I was moved

P51BEISS2

1    by Mr. Talkin's statements about your recent efforts to repair

2    what's been done.  Both to yourself in the way that you

3    interact with others and your conduct moving forward, and also

4    in the way that you perceive the conduct that's at issue here

5    and your understanding that there are real victims here.  And

6    so I want you to understand that that is exactly what you're

7    supposed to be doing, helping to repair the world.  And you are

8    part of that and you're going to continue to do that and I have

9    faith that you will do that.

10          And this is, while it might seem like a sentence, a

11   dark tunnel that you're going to have to go through, it is the

12   beginning.  It is not the end.  And if you need any reminder of

13   what you have to look forward to, it's in the letters that

14   Court has read multiple times, including from your mother who

15   says that Avi has always been the pride and joy of my life.

16   From your father who said, Our family is incomplete without

17   him.  From Leah your sister, No one can replace Avi and

18   everything he means to me.  And from your brother Manakin, The

19   entire community awaits his return, and you will return.

20          Thank you.  We are adjourned.

21          (Adjourned)

22

23

24

25